# LAW OFFICE OF DAVID R. LURIE, PLLC

*194 President Street*
*Brooklyn, New York 11231*

*Phone: 347-651-0194*
*E-mail:david@davidlurielaw.com*

November 20, 2019

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/25/19
```

Marshall H. Fishman, Esq.
Goodwin Proctor LLP
620 Eighth Avenue
New York, New York 100018

Re: Rohan Ramchandani v. Citgroup Inc., et al.,
Civil Action No. 1:19-cv-9124-VM

Dear Mr. Fishman:

We write in response to your letter dated November 11, 2019. Contrary to Citi's assertions, Ramchandani's allegations, many of which are drawn directly from statements by the DOJ and Citi itself, amply state a claim for malicious prosecution under New York law.

This Action arises out of knowing and materially false statements Citi made to the Government regarding Ramchandani's work as a foreign exchange ("FX") Spot market trader for Citi and participation in a related "chatroom." The DOJ avowedly relied on Citi's false account in charging Ramchandani with felony violations of the United States antitrust laws.

Citi fabricated, and then pled guilty itself to, a case grounded solely upon putative misconduct by Ramchandani, despite the fact that Citi knew that Ramchandani was not culpable, as squarely stated by a lawyer for the bank, as well as Ramchandani's manager. Citi also represented to the sentencing court, and to regulators, that Ramchandani was the sole supposed wrongdoer in the entire institution. In recent testimony on behalf of the government before this Court, however, a former Citi trader who pled guilty to felonies explained that Citi knew that, unlike Ramchandani, he had engaged in serious Forex-related misconduct.

By formulating a case for the government grounded solely upon false allegations against Ramchandani, Citi avoided any criminal liability for all of its other actual Forex Spot market misconduct, shielded itself from potentially catastrophic regulatory consequences, limited its civil liability and served to insulate its senior management.

As Citi's criminal defense lawyer acknowledged, Ramchandani suffered "collateral damage" from Citi's self-interested strategy, because the bank's scheme rendered Ramchandani's indictment all but inevitable. And as Citi expected, Ramchandani was charged, in an indictment that closely mirrored Citi's plea. But after grounding a case against Ramchandani on Citi's mendacious assertions, the DOJ was utterly unable to prove the charges at trial; the jury found Ramchandani not guilty after deliberating for about four hours.

Contrary to your assertions, the Complaint's allegations amply satisfy each element of a malicious prosecution claim under New York law, including: (i) commencement of the proceeding; (ii) the absence of probable cause and; (iii) malice.

Marshall H. Fishman, Esq.
Page 2

<u>Citi commenced a criminal proceeding against Ramchandani</u>. In its effort to challenge Ramchandani's detailed allegations that Citi initiated the criminal proceeding, Citi relies on *Dantas v. Citgroup*, 779 Fed. Appx 16 (2nd Cir. 2019), a case whose sole similarity to the one at bar is the name of the defendant.

According to the Second Circuit, the *Dantas* plaintiffs failed even clearly to allege that Citi furnished information to a criminal authority, let alone induced it to bring charges. Plaintiffs asserted only that Citi influenced the contents of a purportedly false report issued by a Brazilian legislative committee that lacked any law enforcement authority. By contrast, Ramchandani alleges that Citi not only worked hand-in-glove with the Government, but indeed directly induced the DOJ to ground a case on a wholly false account of Ramchandani's conduct manufactured by Citi.

As the DOJ averred in a court submission, the government generally relies on the cooperation of insiders when attempting to build antitrust cases, but because of the complex and hermetic nature of the Forex Spot markets, it was "especially" reliant on Citi to explicate the conduct of its own personnel. Thus, the DOJ relied upon Citi to identify "only the most appropriate chatrooms and currencies." And, out of a plethora of chatrooms and traders, Citi identified Ramchandani and his chatroom. The DOJ also represented to the Court that, because the chat transcripts were jargon filled and referenced highly technical trading strategies, the DOJ had to rely upon Citi to "defin[e]" and "decod[e]" Ramchandani's chats, sometimes on a "line-by-line" basis. In sum, on the DOJ's own account, it relied on Citi both to single out Ramchandani, and to "decode" for prosecutors the putative meaning of the very statements forming the basis for DOJ's criminal charges. Complaint ¶¶ 161-71.

Citi also cites *Dantas* for the uncontroversial proposition that merely making a misrepresentation to the government does not constitute the initiation of a prosecution. But Citi omits the corollary rule of New York law, that liability <u>will</u> lie if defendant "knew [the information] to be false, yet still gave it" to a prosecutor. *Lupski v. County of Nassau*, 32 A.D.3d 997 (2nd Dep't 2006) (cited and relied upon in *Dantas*). That is just what Ramchandani alleges Citi did here. Under the law of this State, a malicious prosecution claim will also stand where the "defendant played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act." *Id*. Once again, that is just what Ramchandani alleges here.

<u>Ramchandani was prosecuted without probable cause</u>. Citi's assertion that Ramchandani has failed to plead the absence of probable cause is equally make weight. Citi once again relies upon a singularly inapposite precedent. In *Delamota v. City of New York*, 683 Fed. Appx. 65 (2nd Cir. 2017), plaintiff grounded a malicious prosecution <u>solely</u> on a police officer's "subpar" conduct of a photo array. The Court held that the claim failed, given the absence of any allegation of bad faith or knowing falsity. Here, by contrast, Ramchandani squarely alleges the "evidence" Citi provided to the DOJ, which the government used to formulate its defective case, was knowingly fabricated, and therefore the patent product of bad faith.

Marshall H. Fishman, Esq.
Page 3

The Complaint quotes both Ramchandani's manager and a Citi in-house lawyer, each of whom were responsible for reviewing Ramchandani's conduct on behalf of the bank, and each of whom volunteered that Ramchandani did not engage in intentional wrongdoing, let alone misconduct that could give rise to criminal antitrust liability. The Citi lawyer was so confident in Ramchandani's lack of culpability that he recommended him for a job in the FX industry. Complaint ¶¶ 129-35. The manager volunteered to Ramchandani: "Citi facilitated the criminal charges by testifying in writing to the government that you were the single and sole violator of Citi's rules and that you committed a criminal act which they pled guilty to. This wasn't true at the time and certainly isn't with further evidence that has come through since the time of the plea." Complaint ¶ 195.

Citi not only wholly ignores Ramchandani's allegations, it misstates them. According to Citi, Ramchandani fails to allege that Citi "communicated with the DOJ" about him, despite DOJ's avowed reliance on Citi in building its (failed) case. Citi also asserts that the Complaint fails to allege bad faith, when, as explained, Citi's own agents have squarely acknowledged that Citi knew the bank's purported "decoding" of Ramchandani's statements to bear badges of intentional wrongdoing was squarely false.

<u>Citi acted with malice</u>. Perhaps Citi's most absurd assertion is that Ramchandani has failed to allege that Citi acted with malice, i.e., for the purpose of self-interest, not the furtherance of justice.

The day that Citi fired Ramchandani, it implemented a scheme to "dirty" him up as a putative wrongdoer. Citi's PR department engineered a "no fingerprints" scheme to systemically "leak" a statement identifying Ramchandani as being at the "center" of a potentially criminal scheme, although the scheme went awry when one reporter attached Citi's name to the statement. Citi likewise called law enforcement authorities to plant suggestions that Ramchandani had been fired for wrongdoing. Citi went on to provide the DOJ with the "cooperation" constituting the framing of Ramchandani, leading up to Citi's own plea to a case grounded solely upon Ramchandani's putative misconduct.

As detailed in the Complaint, by pleading to a charge based solely upon the misconduct Citi wrongfully attributed to Ramchandani, Citi (i) wholly avoided any further criminal charges, (ii) drastically limited its civil litigation damages exposure; (iii) maintained its lucrative regulatory licenses; and (iv) provided Citi's senior management with substantial protection from potential liability. On the day of Citi's plea, the bank's defense counsel characterized Ramchandani as the "collateral damage" of Citi's self-serving strategy, given that Citi had rendered it all but inevitable that Ramchandani would be indicted based on the false account Citi provided to the government, and that it just what happened. Complaint ¶¶ 11-13, 154-59.

Sincerely,

David R. Lurie

SO ORDERED, The Clerk of Court is directed to enter the letter above from plaintiff in the public docket of this action.

11-25-19
DATE     VICTOR MARRERO, U.S.D.J.

Marshall H. Fishman, Esq.
Page 4

cc: Honorable Victor Marrero
    United States District Court for the
      Southern District of New York
    (via facsimile: 212-805-6382)