UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROHAN RAMCHANDANI,

Plaintiff,

v.

CITIGROUP, INC., CITICORP and
CITIBANK, N.A.,

Defendants.

No. 1:19-cv-9124 (VM)

## ANSWER AND AFFIRMATIVE DEFENSES

Defendants Citigroup Inc., Citicorp, and Citibank, N.A. ("Defendants" or "Citi"), by and through their undersigned attorneys, Goodwin Procter LLP, hereby answer the Complaint (the "Complaint") filed by plaintiff Rohan Ramchandani ("Plaintiff" or "Ramchandani").  Except as expressly admitted herein, each and every allegation in the Complaint is denied.

## PRELIMINARY STATEMENT

In January 2017, the United States Department of Justice ("DOJ") obtained a grand jury indictment of Rohan Ramchandani, Citi's former head of Europe, Middle East and Africa ("EMEA") G10 Spot foreign exchange ("FX") trading in London, and two other traders (collectively, the "Traders") employed at multiple banks including JP Morgan, Barclays, and the Royal Bank of Scotland.  The indictment charged the three Traders with participating in a conspiracy to suppress and eliminate competition for the purchase and sale of the Euro/U.S. Dollar currency pair in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).[1]

The DOJ's investigation of the banks and their Traders began in 2013 after the press reported on potential manipulation in the FX market in chatrooms that were sometimes referred to

---

[1]   *U.S. v. Usher et al.*, 17-cr-019 (S.D.N.Y. Jan. 10, 2017), ECF No. 1 ¶ 18 (the "Indictment").

as the "Cartel," the "Bandits Club," the "Dream Team," and the "Mafia" and involved an antitrust leniency applicant, UBS, that represented to the DOJ that the Traders entered into a conspiracy to engage in anti-competitive conduct.  The DOJ conducted a four-year investigation of the FX market, that included the cooperation of a member of the Traders' chatroom who worked at UBS, the DOJ's analysis of trading records, expert analysis of trading data, as well as the Traders' chatroom communications.

Based upon the evidence collected by the DOJ, including from UBS and its cooperating trader, and Ramchandani's participation in the chatrooms at issue, Citi pled guilty to one count of a conspiracy to violate the Sherman Act, which included Citi paying a fine of $925 million.  Each of the other banks that employed a Trader—JPMorgan, the Royal Bank of Scotland, and Barclays—similarly pled guilty to conspiring to violate the Sherman Act.

After obtaining the indictment of the Traders, the DOJ prosecuted and tried Ramchandani and the two other Traders before a jury in the Southern District of New York in October 2018. The Traders were each acquitted.[2]

Ramchandani now brings this action, speculating that the DOJ prosecution resulted not from his own conduct with the Traders as testified to by the cooperating trader, but from Citi's initiation of his prosecution, based on alleged unspecified "fabricated" evidence it provided to the DOJ.  (Complaint ¶ 5.)  But Ramchandani's conclusory allegations are without merit.

First, Citi was not the complaining witness against Ramchandani.  The DOJ's scrutiny of alleged FX market manipulation began in 2013 when UBS sought leniency under DOJ guidelines by self-disclosing "evidence of potential collusion" involving numerous other banks in the U.S.,

---

[2]     The Office of the Comptroller of the Currency ("OCC") also commenced a separate enforcement action against Ramchandani (and another member of the relevant chatroom) seeking to impose a $5 million penalty and permanently bar those Traders from the industry for violations of banking safety and soundness policies.  Plaintiff's OCC action is scheduled for hearings in September 2021.

UK, Europe and elsewhere.  *See U.S. v. UBS AG*, 15-cr-00076-SRU (D. Conn. Nov. 23, 2016), ECF No. 34 at 9.  As publicly reported, UBS provided "scores of significant in-person or telephonic meetings[], [and] synthesized factual information" for the DOJ.  *Id.*  In the DOJ's own words, the information provided by UBS "led to prosecutions of several other financial institutions" with respect to FX market manipulation.  *Id*. at 10.

Second, Citi did not fabricate evidence against Ramchandani; the Complaint fails to specify what information was allegedly fabricated or by whom.  As part of Citi's cooperation with the DOJ, Citi, through its outside law firm, including a former acting United States Attorney for the Southern District of New York, and former acting Chief of the Criminal Division and Chief of the Complex Frauds Unit of that office, truthfully relayed information to the DOJ for the DOJ to decide what, if any action, to take.

Third, Citi, through its counsel, did not act with malice against Ramchandani when it agreed to cooperate with the DOJ.  By January 2014, Citi concluded that Ramchandani's participation in the chatrooms violated Citi policy and thus terminated him for "gross misconduct." Indeed, Ramchandani has already litigated and lost his claim that he engaged in no wrongdoing and that Citi "fired Ramchandani without cause."  (Complaint ¶ 3.)  Ramchandani asserted this theory in a wrongful termination lawsuit he filed in the United Kingdom for "unfair dismissal." The United Kingdom Employment Tribunal ("Employment Tribunal") issued a publicly-available judgment ("Employment Judgment") finding that Ramchandani was dismissed due to, among other things, his "culpable acts of misconduct in breach of his contract of employment in his chats," and his "foolish, blameworthy behaviour."  *See Ramchandani v. Citibank N.A.* (2020) ET, No. 3200403/2014 ¶ 142 (Eng.).

In short, the criminal case against Ramchandani resulted from the DOJ's own determination of wrongdoing concerning the Traders, and the grand jury's determination of probable cause to believe Ramchandani and his fellow Traders had committed a crime.  His claim for malicious prosecution based on the allegation that Citi "fabricated" a case against him lacks any legal or factual basis.

<u>Nature of the Action</u>[3]

1.      Defendants deny the allegations contained in Paragraph 1 of the Complaint.

2.      Defendants deny the allegations contained in Paragraph 2 of the Complaint except admit that Plaintiff was employed as a trader with Defendant Citibank, N.A. from July 2002 until January 2014.

3.      Defendants deny the allegations contained in Paragraph 3 of the Complaint and state that Ramchandani was terminated for gross misconduct on or about January 10, 2014.

4.      Defendants deny the allegations contained in Paragraph 4 of the Complaint.

5.      Defendants deny the allegations contained in Paragraph 5 of the Complaint.

6.      Defendants deny the allegations contained in Paragraph 6 of the Complaint and refer to the DOJ's publicly available December 1, 2016 sentencing memorandum (the "DOJ Sentencing Memorandum") for its complete contents.

7.      Defendants deny the allegations contained in Paragraph 7 of the Complaint.

8.      Defendants deny the allegations contained in Paragraph 8 of the Complaint and refer to the April 3, 2019 email communication from Jeffrey Feig ("Feig") to Plaintiff for its complete and accurate contents.

---

[3]      Section headings set forth in the Complaint are repeated herein for ease of reference.  Defendants do not admit (and expressly deny) the characterizations in Plaintiff's section headings set forth herein.

9.      Defendants deny the allegations contained in Paragraph 9 of the Complaint except admit that Defendant Citicorp entered into a Plea Agreement with the DOJ on or about May 20, 2015 (the "Plea Agreement") and refer to that Agreement for its complete and accurate contents.

10.     Defendants deny the allegations contained in Paragraph 10 of the Complaint.

11.     Defendants deny the allegations contained in Paragraph 11 of the Complaint.

12.     Defendants deny the allegations contained in Paragraph 12 of the Complaint.

13.     Defendants deny the allegations contained in Paragraph 13 of the Complaint.

14.     Defendants deny the allegations contained in Paragraph 14 of the Complaint and refer to the publicly available DOJ Sentencing Memorandum for a description of Citicorp's cooperation in the DOJ's investigation.

15.     Defendants deny the allegations contained in Paragraph 15 of the Complaint.

16.     Defendants deny the allegations contained in Paragraph 16 of the Complaint.

17.     The allegations set forth in Paragraph 17 of the Complaint purport to draw legal conclusions and conclusions regarding DOJ policies to which no response is required, and to the extent any response is required, Defendants state that they lack knowledge or information sufficient to form a belief as to the truth of the allegations.

18.     Defendants deny the allegations contained in Paragraph 18 of the Complaint.

19.     Defendants deny the allegations contained in Paragraph 19 of the Complaint, and refer to the publicly available transcript of Citicorp's (and Barclays PLC's, JPMorgan Chase & Co.'s and the Royal Bank of Scotland PLC's) January 10, 2017 sentencing hearing for the complete statements made by the Court, including the Court's statement that the prosecution of individual defendants is "obviously a decision for the government to make."

20.     Defendants deny the allegations contained in Paragraph 20 of the Complaint except admit that on or about January 10, 2017, Plaintiff was indicted by a federal grand jury and refer to the publicly available Indictment for a complete and accurate statement of its contents.

21.     Defendants deny the allegations contained in Paragraph 21 of the Complaint, and refer to the DOJ's publicly available press release dated January 10, 2017 for the contents of the DOJ's statement related to its indictment of three traders which states, among other things, that a "federal grand jury returned an indictment" against Plaintiff and two traders at other banks who, as further set forth in that DOJ press release "conspired to fix prices and rig bids for the euro-U.S. dollar currency pair" and referred to themselves as "the Cartel" or the "the Mafia" in "near-daily conversations in a private electronic chat room."

22.     Defendants deny the allegations contained in Paragraph 22 of the Complaint, but admit that Plaintiff was acquitted on October 26, 2018 following a jury trial.

23.     Defendants admit that Plaintiff was acquitted on October 26, 2018 following a jury trial, deny that the DOJ's allegations were drawn from Citi's purported "decoding" of Plaintiff's chats, and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 23.

24.     Defendants deny the allegations contained in Paragraph 24 of the Complaint, and refer to the publicly available trial testimony and evidentiary record for the complete contents of witness testimony in Plaintiff's criminal trial.

25.     Defendants deny the allegations contained in Paragraph 25 of the Complaint, but admit that Plaintiff was acquitted on October 26, 2018 following a jury trial.

26.     Defendants deny the allegations contained in Paragraph 26 of the Complaint.

27.     Defendants deny the allegations contained in Paragraph 27 of the Complaint.

28.     Defendants deny the allegations contained in Paragraph 28 of the Complaint except admit that Plaintiff filed the Complaint in this action.

<u>Parties</u>

29.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 29 of the Complaint except admit that Plaintiff was employed by Citibank, N.A. from July 2002 until January 10, 2014.

30.     Defendants deny the allegations contained in Paragraph 30 of the Complaint, and state that Citigroup Inc. is a Delaware corporation with its principal place of business in New York, New York.

31.     Defendants deny the allegations contained in Paragraph 31 of the Complaint, and state that Citicorp (now known as Citicorp LLC) is a Delaware limited liability company that is wholly-owned by its sole member Citigroup Inc.

32.     Defendants deny the allegations contained in Paragraph 32 of the Complaint, and state that Citibank, N.A. is a national bank organized under the laws of the United States with its main office in Sioux Falls, South Dakota.

<u>Jurisdiction and Venue</u>

33.     Paragraph 33 of the Complaint contains a legal conclusion to which no response is required.

34.     Paragraph 34 of the Complaint contains a legal conclusion to which no response is required.

<u>Background</u>

35.     Defendants deny the allegations contained in Paragraph 35 of the Complaint except admit that Plaintiff began working at Citi in July 2002, and Defendants refer to Plaintiff's contract

of employment, as amended, for its complete and accurate contents.

36.     Defendants deny the allegations contained in Paragraph 36 of the Complaint except admit that Plaintiff began working in Citi's London offices on the FX Spot market trading desk starting in or around April 2004 and that, prior to his termination, Plaintiff was the Head of Citi's EMEA G10 Spot FX trading in London.

37.     Defendants deny the allegations contained in Paragraph 37 of the Complaint except admit that during his employment with Defendants, Plaintiff placed trades on behalf of Citi and its customers in the FX Spot Market.

38.     Defendants admit the allegations contained in Paragraph 38 of the Complaint.

39.     Defendants admit the allegations contained in Paragraph 39 of the Complaint.

40.     Defendants deny the allegations contained in Paragraph 40 of the Complaint except admit that Plaintiff's trading was primarily conducted in euros and U.S. dollars ("EUR/USD").

41.     Defendants deny the allegations contained in Paragraph 41 of the Complaint except admit that trading in EUR/USD is one of the most widely traded currency pairs, and refer to the publicly available Plea Agreement for its complete contents.

42.     Defendants deny the allegations contained in Paragraph 42 of the Complaint except admit that Jeff Feig ("Feig") was Plaintiff's supervisor and that Feig's title was Citi's Global Head of G10 Foreign Exchange.

43.     Defendants deny the allegations contained in Paragraph 43 of the Complaint, but admit that Feig was Citi's Global Head of G10 Foreign Exchange from 2004 until 2014, and was experienced in the EUR/USD FX Spot market.

44.     Defendants deny the allegations contained in Paragraph 44 of the Complaint except admit that Citi's FX Spot market traders, including Plaintiff, communicated in electronic chatrooms, including ones hosted on the Bloomberg platform.

45.     Defendants deny the allegations contained in Paragraph 45 of the Complaint, except admit that Citi's FX Spot market traders at times used electronic chatrooms in order to lawfully facilitate trades.

46.     Defendants deny the allegations contained in Paragraph 46 of the Complaint, except admit that Citi's FX Spot market traders at times used electronic chatrooms for lawful purposes.

47.     Defendants admit the allegations contained in Paragraph 47 of the Complaint.

48.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 48 of the Complaint except admit that Plaintiff was a member of the chatrooms groups that were comprised of traders employed at other large financial institutions who also participated in the EUR/USD FX Spot market.

49.     Defendants deny the allegations contained in Paragraph 49 of the Complaint and refer to the Plea Agreement for its complete and accurate contents.

50.     Defendants deny the allegations contained in Paragraph 50 of the Complaint.

51.     Defendants deny the allegations contained in Paragraph 51 of the Complaint.

52.     Defendants deny the allegations contained in Paragraph 52 of the Complaint.

53.     Defendants admit the allegations contained in Paragraph 53 of the Complaint.

54.     Defendants admit the allegations contained in Paragraph 54 of the Complaint.

55.     Defendants admit the allegations contained in Paragraph 55 of the Complaint.

56.     Defendants admit the allegations contained in Paragraph 56 of the Complaint.

57.     Defendants admit the allegations contained in Paragraph 57 of the Complaint.

58.     Defendants deny the allegations contained in Paragraph 58 of the Complaint.

59.     Defendants deny the allegations contained in Paragraph 59 of the Complaint except admit that FX Spot market traders were permitted to use electronic chatrooms for lawful purposes.

60.     Defendants admit the allegations contained in Paragraph 60 of the Complaint.

61.     Defendants admit the allegations contained in Paragraph 61 of the Complaint.

62.     Defendants deny the allegations contained in Paragraph 62 of the Complaint, except admit that press reports regarding regulators' investigations into the FX Spot market continued to be published and refer to those press reports for their complete and accurate contents.  Defendants further state that, on October 15, 2013, the Financial Conduct Authority ("FCA") imposed restrictions on any further interviewing of Plaintiff by Citi, and by November 14, 2013, the FCA prohibited Citi from further interviewing Plaintiff until the FCA had done so.  Defendants further state that Plaintiff refused to be interviewed by the FCA.

63.     Defendants admit the allegations in Paragraph 63 of the Complaint and further state that following Citi's October 15, 2013 interview of Plaintiff, Citi did not question Plaintiff further regarding his participation in electronic chatrooms due to the FCA imposed restrictions on any further interviewing of Plaintiff by Citi.  Defendants further state that, on October 15, 2013, the FCA imposed restrictions on any further interviewing of Plaintiff by Citi, and by November 14, 2013, the FCA prohibited Citi from further interviewing Plaintiff until the FCA had done so. Defendants further state that Plaintiff refused to be interviewed by the FCA.

64.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 64 of the Complaint.

65.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 65 of the Complaint.

66.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 66 of the Complaint.

67.     Defendants deny the allegations contained in Paragraph 67 of the Complaint except admit that, on October 15, 2013, the FCA placed restrictions on Citi's ability to further interview Plaintiff, including requiring recordings of any interviews, and by November 14, 2013, the FCA prohibited Citi from further interviewing Plaintiff until the FCA had done so.  Defendants further state that Plaintiff refused to be interviewed by the FCA.

68.     Defendants deny the allegations contained in Paragraph 68 of the Complaint except admit that Citi placed Plaintiff on paid leave on or around October 30, 2013 pending an investigation into Plaintiff's conduct and that Plaintiff's paid leave was extended until his termination on or around January 10, 2014.

69.     Defendants deny the allegations contained in Paragraph 69 of the Complaint, and refer to Citi's October 30, 2013 letter to Plaintiff for its complete and accurate contents.

70.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 70 of the Complaint.

71.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 71 of the Complaint, except admit that Citi's October 30, 2013 letter to Plaintiff contains the quoted language and refer to the October 30, 2013 letter for its complete and accurate contents.

72.     Defendants deny the allegations contained in Paragraph 72 of the Complaint, and refer to Citi's October 30, 2013 letter to Plaintiff for its complete contents.

73.     Defendants deny the allegations contained in Paragraph 73 of the Complaint except admit Citi sent Plaintiff an October 30, 2013 letter and refer to that letter for its complete contents.

74.     Defendants deny the allegations contained in Paragraph 74 of the Complaint except admit that Citi and Plaintiff entered into a November 21, 2013 letter agreement and refer to that letter agreement for its complete contents.

75.     Defendants deny the allegations contained in Paragraph 75 of the Complaint except admit that the FCA sent Citi a letter dated November 8, 2013 and refer to that letter for its complete contents.

76.     Defendants deny the allegations contained in Paragraph 76 of the Complaint except admit that Citi sent the FCA an email dated November 26, 2013 and refer to that email for its complete contents.

77.     Defendants deny the allegations contained in Paragraph 77 of the Complaint except admit that Citi sent the FCA an email dated November 26, 2013 and refer to that email for its complete contents.

78.     Defendants deny the allegations contained in Paragraph 78 of the Complaint.

79.     Defendants deny the allegations contained in Paragraph 79 of the Complaint except admit that press reports in the fall of 2013 referenced regulatory inquiries into Citi and other financial institutions with regards to the FX Spot markets, and refer to those press reports for their contents.

80.     Defendants admit that Paragraph 80 of the Complaint accurately quotes a November 14, 2013 New York Times article but refer to that article for its complete contents.

81.     Defendants admit that Paragraph 81 of the Complaint accurately quotes a November 14, 2013 New York Times article but refer to that article for its complete contents.

82.     Defendants admit Paragraph 82 of the Complaint accurately quotes a November 14, 2013 New York Times article but refer to that article for its complete contents.

83.     Defendants deny the allegations contained in Paragraph 83 of the Complaint.

84.     Defendants deny the allegations contained in Paragraph 84 of the Complaint.

85.     Defendants deny the allegations contained in Paragraph 85 of the Complaint.

86.     Defendants deny the allegations contained in Paragraph 86 of the Complaint except admit that Citi terminated Ramchandani for gross misconduct on or around January 10, 2014.

87.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 87 of the Complaint except admit that Feig and a representative from Citi's Human Resources Department notified Plaintiff via telephone on or around January 10, 2014 of Citi's decision to terminate Plaintiff.

88.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 88 except admit that Feig informed Plaintiff that he participated in the review of Plaintiff's chatroom communications and in the decision to terminate Plaintiff arising from Plaintiff's chatroom communications.

89.     Defendants deny the allegations contained in Paragraph 89 of the Complaint except admit that Feig was Citi's Global Head of FX and was knowledgeable about the FX Spot market, including in the EUR/USD market, and state that Feig was in favor of terminating Plaintiff (for cause) based on his review of Plaintiff's chats.

90.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 90 except admit that, in the course of terminating Plaintiff, Feig referred to his belief that Plaintiff was a "good person" but further stated that Plaintiff's chatroom communications were "shockingly" different than other communications Feig had reviewed, were "grounds for termination" of Plaintiff and were "disappointing," "hurtful," "completely inappropriate" and "consistent over time."

91.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 91 of the Complaint.

92.     Defendants deny the allegations contained in Paragraph 92 of the Complaint except admit that, in the course of terminating Plaintiff, Feig stated that Plaintiff's chatroom communications were "shockingly" different than other communications Feig had reviewed, were "grounds for termination" of Plaintiff and were "disappointing," "hurtful," "completely inappropriate" and "consistent over time."  Defendants further state that Citi was prohibited by the FCA from sharing with Plaintiff the chats which Citi had produced to the FCA, and that, when the FCA agreed that Citi could release certain chats to Plaintiff in early March 2014 and mid-April 2014, Citi promptly provided those chats to Plaintiff.

93.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 93 of the Complaint.

94.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 94 of the Complaint.  Defendants further state that Citi was prohibited by the FCA from sharing with Plaintiff the chats which Citi had produced to the FCA, and that, when the FCA agreed that Citi could release certain chats to Plaintiff in early March 2014 and mid-April 2014, Citi promptly provided those chats to Plaintiff.

95.     Defendants deny the allegations contained in Paragraph 95 of the Complaint, except admit that Citi's Human Resources Department sent a letter to Plaintiff dated January 10, 2014 and refer to that letter for its complete contents.

96.     Defendants deny the allegations contained in Paragraph 96 of the Complaint, except admit that Citi's Human Resources Department sent a letter to Plaintiff dated January 10, 2014,

that such letter stated "a number of your communications have been found to be wholly unacceptable" and refer to that letter for its complete contents.

97.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 97 of the Complaint.

98.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 98 of the Complaint except admit that subsequent to Feig's employment at Citi, Feig sent an email to Plaintiff dated April 3, 2019 and refer to that email for its complete contents.

99.     Defendants deny the allegations contained in Paragraph 99 of the Complaint.

100.     Defendants deny the allegations contained in Paragraph 100 of the Complaint except admit that Feig and Citi's Human Resources Department informed Plaintiff that Citi would pay Plaintiff three months' basic salary in accordance with Plaintiff's employment contract and further states, and the UK Tribunal Judgment found, that Citi paid Plaintiff this amount because the FCA's ongoing investigation prevented Citi from following its disciplinary procedure for terminating employees.

101.     Defendants deny the allegations contained in Paragraph 101, and Defendants refer to Plaintiff's employment contract, as amended, for its complete contents.

102.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 102.

103.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 103.

104.    Defendants deny the allegations contained in Paragraph 104 of the Complaint, except admit that Citi's Human Resources Department sent a letter to Plaintiff dated January 10, 2014 and refer to that letter for its complete contents.

105.    Defendants deny the allegations contained in Paragraph 105 of the Complaint.

106.    Defendants deny the allegations contained in Paragraph 106 of the Complaint.

107.    Defendants deny the allegations contained in Paragraph 107 of the Complaint.

108.    Defendants deny the allegations contained in Paragraph 108 of the Complaint.

109.    Defendants deny the allegations contained in Paragraph 109 of the Complaint.

110.    Defendants deny the allegations contained in Paragraph 110 of the Complaint and refer to the news reports referenced therein for their complete contents.

111.    Defendants deny the allegations contained in Paragraph 111 of the Complaint except admit that Citi's representative Jeff French ("French") was quoted in a Bloomberg article dated January 10, 2014 and refer to that article for its complete contents.

112.    Defendants deny the allegations contained in Paragraph 112 of the Complaint except admit that a January 10, 2014 Bloomberg article referred to Plaintiff's participation in a chatroom referred to as "the Cartel" and refer to that article for its complete contents.

113.    Defendants deny the allegations contained in Paragraph 113 of the Complaint and refer to French's January 10, 2014 communication for its complete contents.

114.    Defendants deny the allegations contained in Paragraph 114 of the Complaint and refer to press articles referencing Plaintiff dated January 10, 2014 for their complete contents.

115.    Defendants deny the allegations contained in Paragraph 115 of the Complaint except admit that Citi cooperated with regulatory investigations regarding FX trading.

116.    Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 116 of the Complaint.

117.    Defendants deny the allegations contained in Paragraph 117 of the Complaint.

118.    Defendants deny the allegations contained in Paragraph 118 of the Complaint.

119.    Defendants deny the allegations contained in Paragraph 119 of the Complaint.

120.    Defendants deny the allegations contained in Paragraph 120 of the Complaint except admit that Citi sent limited internal email distribution to senior management and Citi's Board of Directors on January 10, 2014 and refer to that email communication for its complete contents.

121.    Defendants deny the allegations contained in Paragraph 121 of the Complaint and refer to Citi's internal email dated January 10, 2014 for its complete contents.

122.    Defendants deny the allegations contained in Paragraph 122 of the Complaint and refer to Citi's internal email dated January 10, 2014 for its complete contents.

123.    Defendants deny the allegations contained in Paragraph 123 of the Complaint and refer to Citi's internal email dated January 10, 2014 for its complete contents.

124.    Defendants deny the allegations contained in Paragraph 124 of the Complaint and refer to Citi's internal email dated January 10, 2014 for its complete contents.

125.    Defendants deny the allegations contained in Paragraph 125 of the Complaint.

126.    Defendants deny the allegations contained in Paragraph 126 of the Complaint.

127.    Defendants deny the allegations contained in Paragraph 127 of the Complaint.

128.    Defendants deny the allegations contained in Paragraph 128 of the Complaint.

129.    Defendants deny the allegations contained in Paragraph 129 of the Complaint.

130.    Defendants deny the allegations contained in Paragraph 130 of the Complaint.

131.    Defendants deny the allegations contained in Paragraph 131 of the Complaint except admit that, during a meeting with Plaintiff, Ferguson told Plaintiff that Citi determined that his conduct violated Citi policies and that, from his own personal standpoint, he would like the matter to blow over.

132.    Defendants deny the allegations contained in Paragraph 132 of the Complaint and refer to the referenced press reports for their contents, and Defendants further deny knowledge or information sufficient to form a belief as to the truth of the allegation that Plaintiff requested a meeting with Ferguson in or around October 2014.

133.    Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 133 of the Complaint except admit that Ferguson met with Plaintiff on or around October 10, 2014.

134.    Defendants deny the allegations contained in Paragraph 134 of the Complaint.

135.    Defendants deny the allegations contained in Paragraph 135 of the Complaint except admit that Ferguson said, in the context of discussing publicly reported issues faced by another bank, that banking entities typically cannot plead guilty to criminal conduct.

136.    Defendants deny the allegations contained in Paragraph 136 of the Complaint.

137.    Defendants deny the allegations contained in Paragraph 137 of the Complaint.

138.    Defendants deny the allegations contained in Paragraph 138 of the Complaint.

139.    Defendants deny the allegations contained in Paragraph 139 of the Complaint except admit that Ferguson facilitated an introduction of Plaintiff to a potential business contact on or around October 30, 2014.

140.    Defendants deny the allegations contained in Paragraph 140 of the Complaint.

141.    Defendants deny the allegations contained in Paragraph 141 of the Complaint.

142.    Defendants deny the allegations contained in Paragraph 142 of the Complaint insofar as they purport to provide an example of the allegations in Paragraph 141 of the Complaint and admit that it was publicly reported that UBS Group AG ("UBS") was reportedly seeking to take advantage of the DOJ's Antitrust Division immunity program and refer to the February 7, 2014 Reuters article for its complete contents.

143.    Defendants deny the allegations contained in Paragraph 143 of the Complaint.

144.    Defendants deny the allegations contained in Paragraph 144 of the Complaint except admit that a former Citi trader other than Plaintiff resigned from Citi, was publicly indicted by the DOJ and subsequently pleaded guilty to federal criminal antitrust violations.

145.    Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 145 of the Complaint, and refer to the May 20, 2015 Remarks of Attorney General Lorretta Lynch at a Press Conference on FX Spot Market Manipulation and the trial record for their complete contents.

146.    Defendants deny the allegations contained in Paragraph 146 of the Complaint.

147.    Defendants deny the allegations contained in Paragraph 147 of the Complaint.

148.    Defendants deny the allegations contained in Paragraph 148 of the Complaint.

149.    Defendants deny the allegations contained in Paragraph 149 of the Complaint.

150.    Defendants deny the allegations contained in Paragraph 150 of the Complaint.

151.    Defendants deny the allegations contained in Paragraph 151 of the Complaint.

152.    Defendants deny the allegations contained in Paragraph 152 of the Complaint.

153.    Defendants deny the allegations contained in Paragraph 153 of the Complaint except admit that Citicorp entered into the Plea Agreement with the DOJ on or about May 20, 2015 and refer to that Agreement for its complete and accurate contents.

154.     Defendants deny the allegations contained in Paragraph 154 of the Complaint except admit that Citicorp entered into the Plea Agreement with the DOJ on or about May 20, 2015 and refer to that Agreement for its complete and accurate contents.

155.     Defendants deny the allegations contained in Paragraph 155 of the Complaint except admit that Citicorp entered into the Plea Agreement with the DOJ on or about May 20, 2015 and refer to that Agreement for its complete and accurate contents.

156.     Defendants deny the allegations contained in Paragraph 156 of the Complaint except admit that Citicorp entered into the Plea Agreement with the DOJ on or about May 20, 2015 and refer to that Agreement for its complete and accurate contents.

157.     Defendants deny the allegations contained in Paragraph 157 of the Complaint except admit that Citicorp entered into the Plea Agreement with the DOJ on or about May 20, 2015 and refer to that Agreement for its complete and accurate contents.

158.     Defendants deny the allegations contained in Paragraph 158 of the Complaint except admit that Citicorp entered into the Plea Agreement with the DOJ on or about May 20, 2015 and refer to that Agreement for its complete and accurate contents.

159.     Defendants deny the allegations contained in Paragraph 159 of the Complaint except admit that Citicorp entered into the Plea Agreement with the DOJ on or about May 20, 2015 and refer to that Agreement for its complete and accurate contents.

160.     Defendants deny the allegations contained in Paragraph 160 of the Complaint.

161.     Defendants deny the allegations contained in Paragraph 161 of the Complaint and refer to the DOJ's publicly available December 1, 2016 Sentencing Memorandum for its complete contents.

162.     Defendants deny the allegations contained in Paragraph 162 of the Complaint and refer to the DOJ's publicly available December 1, 2016 Sentencing Memorandum for its complete contents.

163.     Defendants deny the allegations contained in Paragraph 163 of the Complaint and refer to the DOJ's publicly available December 1, 2016 Sentencing Memorandum for its complete contents.

164.     Defendants deny the allegations contained in Paragraph 164 of the Complaint and refer to the DOJ's publicly available December 1, 2016 Sentencing Memorandum for its complete contents.

165.     Defendants deny the allegations contained in Paragraph 165 of the Complaint and refer to the DOJ's publicly available December 1, 2016 Sentencing Memorandum for its complete contents.

166.     Defendants deny the allegations contained in Paragraph 166 of the Complaint and refer to the DOJ's publicly available December 1, 2016 Sentencing Memorandum for its complete contents.

167.     Defendants deny the allegations contained in Paragraph 167 of the Complaint and refer to the DOJ's publicly available December 1, 2016 Sentencing Memorandum for its complete contents.

168.     Defendants deny the allegations contained in Paragraph 168 of the Complaint and refer to the DOJ's publicly available December 1, 2016 Sentencing Memorandum for its complete contents.

169.     Defendants deny the allegations contained in Paragraph 169 of the Complaint and refer to the DOJ's publicly available December 1, 2016 Sentencing Memorandum for its complete contents.

170.     Defendants deny the allegations contained in Paragraph 170 of the Complaint and refer to the DOJ's publicly available December 1, 2016 Sentencing Memorandum for its complete contents.

171.     Defendants deny the allegations contained in Paragraph 171 of the Complaint.

172.     Defendants deny the allegations contained in Paragraph 172 of the Complaint.

173.     Defendants deny the allegations contained in Paragraph 173 of the Complaint and refer to Citi's publicly available December 1, 2016 Sentencing Memorandum for its complete contents.

174.     Defendants deny the allegations contained in Paragraph 174 of the Complaint and refer to Citi's publicly available December 1, 2016 Sentencing Memorandum for its complete contents.

175.     Defendants deny the allegations contained in Paragraph 175 of the Complaint and refer to Citi's publicly available December 1, 2016 Sentencing Memorandum for its complete contents.

176.     Defendants deny the allegations contained in Paragraph 176 of the Complaint and refer to Citi's May 20, 2015 letter to the Securities and Exchange Commission ("SEC") for its complete contents.

177.     Defendants deny the allegations contained in Paragraph 177 of the Complaint except admit that Citi representatives did not say that Citi was terminating Ramchandani for illegal activity on January 10, 2014, and state that Citi terminated Ramchandani for gross misconduct.

178.    Defendants deny the allegations contained in Paragraph 178 of the Complaint.

179.    Defendants deny the allegations contained in Paragraph 179 of the Complaint and refer to the Deputy Attorney General's 2015 memorandum alleged in the Complaint for its complete contents.

180.    Defendants deny the allegations contained in Paragraph 180 of the Complaint.

181.    Defendants deny the allegations contained in Paragraph 181 of the Complaint.

182.    Defendants deny the allegations contained in Paragraph 182 of the Complaint and refer to the publicly available transcript of the January 5, 2017 sentencing hearing for its complete contents.

183.    Defendants deny the allegations contained in Paragraph 183 of the Complaint except admit that a grand jury indicted Plaintiff, Richard Usher and Christopher Ashton on January 10, 2017 and that the DOJ issued a press release regarding the Indictments on the same date.

184.    Defendants admit the allegations contained in Paragraph 184 of the Complaint that the DOJ press release dated January 10, 2017 refers to the chatroom participants having referred to themselves as the "Cartel" and the "Mafia" and refer to the January 10, 2017 press release for its complete contents.

185.    Defendants deny the allegations contained in Paragraph 185 of the Complaint and refer to the DOJ's January 10, 2017 press release for its complete and accurate contents.

186.    Defendants deny the allegations contained in Paragraph 186 of the Complaint.

187.    Defendants deny the allegations contained in Paragraph 187 of the Complaint.

188.    Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 188 of the Complaint and refer to the publicly available trial record for the contents of witness testimony in Plaintiff's criminal trial.

189.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 189 of the Complaint except admit that, after Feig was no longer employed by Citi, he sent an email to Plaintiff dated October 26, 2018, and refer to that email for its complete contents.

190.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 190 of the Complaint except refer to an email that Feig sent to Plaintiff dated October 26, 2018 for its complete contents.

191.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 191 of the Complaint except refer to an email that Feig sent to Plaintiff dated October 26, 2018 for its complete contents.

192.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 192 of the Complaint except refer to an email that Feig sent to Plaintiff dated October 26, 2018 for its complete contents.

193.     Defendants deny the allegations contained in Paragraph 193 of the Complaint except admit that Plaintiff, Richard Usher and Christopher Ashton were acquitted following a jury trial on or around October 26, 2018.

194.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 194 of the Complaint except refer to an email that Feig sent to Plaintiff dated April 3, 2019 for its complete contents.

195.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 195 of the Complaint except refer to an email that Feig sent to Plaintiff dated April 3, 2019 for its complete contents.

196.     Defendants deny the allegations contained in Paragraph 196 of the Complaint.

First Cause of Action
(Malicious Prosecution)

197.    Defendants hereby incorporate by reference, as if fully set forth herein, their answers and responses to Paragraphs 1 through 196 of the Complaint, inclusive.

198.    Defendants state that the allegations contained in Paragraph 198 of the Complaint call for a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations contained in Paragraph 198 of the Complaint.

Defendants deny that Plaintiff is entitled to any judgment against Defendants, including, but not limited to any judgment sought by Plaintiff in sub-parts (a)-(e) on page 33 of the Complaint.

Defendants deny that Plaintiff is entitled to a right to trial by jury and reserve all rights to move to strike the Complaint's jury demand.

## **AFFIRMATIVE DEFENSES**

### **First Affirmative Defense**

The Complaint fails to state a claim upon which relief may be granted.

### **Second Affirmative Defense**

Plaintiff's claim for relief is barred, in whole or in part, by the DOJ's independent investigation and its decision to obtain the grand jury indictment and prosecute Plaintiff.

### **Third Affirmative Defense**

Plaintiff's alleged damages, if any, were caused by his own misconduct, breaches of his duty of loyalty, fiduciary duties, employment agreement and/or breaches of Citi's policies and procedures.

### **Fourth Affirmative Defense**

Plaintiff fails to rebut the presumption of probable cause created by the grand jury indictment.

**Fifth Affirmative Defense**

Plaintiff's claim for relief is barred, in whole or in part, because Citi was not a complaining witness against Plaintiff and/or Plaintiff fails to plead that Citi overtook the volition of the DOJ.

**Sixth Affirmative Defense**

Plaintiff's claim for relief is barred, in whole or in part, by the doctrines of collateral estoppel and/or res judicata.  By way of example:

On March 18, 2014, Ramchandani filed a claim for unfair dismissal with the Employment Tribunal for the United Kingdom ("UK Employment Tribunal").  On July 14, 2020, the UK Employment Tribunal issued a publicly available judgment, *Ramchandani v. Citibank N.A.* (2020) ET, No. 3200403/2014 (Eng.), available at https://assets.publishing.service.gov.uk/media/5f217876e90e071a54ff1a1a/Mr_R_Ramchandani _-v-_Citibank_NA_-_3200403_2014_-_Judgment.pdf, concluding that, among other things:

- Ramchandani "committed culpable acts of misconduct in breach of his contract of employment in his chats" on various dates and Ramchandani engaged in "foolish, blameworthy behaviour which caused his dismissal."  (Ex. R ¶ 142.)

- Ramchandani engaged in "misconduct" and "breach[ed] his employment obligations," and that Ramchandani was aware of his employment obligations.  (*Id.* ¶ 139.)

- Citi's "belief that [Ramchandani] had engaged in serious misconduct in his chats and that the misconduct was sufficiently serious to cause a breakdown in trust and confidence was both genuine and not irrational."  (*Id.* ¶ 113.)

- Ramchandani "was not dismissed as a scapegoat because of unwelcome press coverage, rather the principal reason for dismissal was the conduct in the chats which then gave rise to regulatory scrutiny and adverse press coverage."  (*Id.* ¶ 104.)

**Seventh Affirmative Defense**

Plaintiff's claim for relief is barred, in whole or in part, by the doctrines of unclean hands and/or in pari delicto.

**Eighth Affirmative Defense**

Plaintiff's claim for relief is barred, in whole or in part, by Plaintiff's failure to mitigate damages.

**Ninth Affirmative Defense**

To the extent that the Court finds that Plaintiff is entitled to any alleged damages, such damages must be offset by damages incurred by Citi as a result of Plaintiff's breaches of the fiduciary and other duties he owed to Citi.

**Tenth Affirmative Defense**

Plaintiff's claim for relief is barred, in whole or in part, because Plaintiff fails to plead with particularity a knowing misstatement, fraud or bad faith under Fed. R. Civ. P. 9(b).

**Eleventh Affirmative Defense**

Plaintiff's claim for relief is barred, in whole or in part, because Citi acted in good faith, with a reasonable basis, and without malice.

**Twelfth Affirmative Defense**

Plaintiff's claim is barred, in whole or in part, because no action or inaction by Citi is the cause, in law or fact, of any injury Plaintiff suffered, and Plaintiff's alleged losses were not actually or proximately caused by Citi.

Defendants do not waive any applicable affirmative defenses and reserve the right to rely upon such other defenses and affirmative defenses as may become available or arise during discovery or at trial, and hereby reserve the right to amend their Answer to assert any such defense or affirmative defense.

**WHEREFORE**, having fully answered the Complaint, Defendants respectfully request that this Court enter judgment in their favor, deny Plaintiff's request for relief, award Defendants

reasonable costs incurred in the defense of this action, and grant Defendants such other and further relief as this Court deems just and proper.

Date:   April 23, 2021
        New York, New York

Respectfully submitted,

GOODWIN PROCTER LLP

/s/ Marshall H. Fishman
Marshall H. Fishman
Samuel J. Rubin
William J. Harrington
Lindsay E. Hoyle

The New York Times Building
620 Eighth Avenue
New York, New York 10018
Tel (212) 813-8800
Fax (212) 355-3333
MFishman@goodwinlaw.com
SRubin@goodwinlaw.com
WHarrington@goodwinlaw.com
LHoyle@goodwinlaw.com

*Attorneys for Defendants*

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on April 23, 2021, I filed and therefore caused the foregoing document to be served via the CM/ECF system in the United States District Court for the Southern District of New York on all parties registered for CM/ECF in the above-captioned matter.

/s/ Marshall H. Fishman_____
Marshall H. Fishman
