```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF NEW YORK


In re:                             :
                                       Docket #1:19-cv-09124-
 RAMCHANDANI,                      : VM-SDA

                    Plaintiff,     :

  - against -                      :

 CITIBANK NATIONAL ASSOCIATION,    : New York, New York
 et al.,                             October 7, 2021
                                   :
                    Defendants.
----------------------------------- : TELEPHONE CONFERENCE


                    PROCEEDINGS BEFORE
              THE HONORABLE STEWART D. AARON,
               UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Plaintiff:          SALTO SORENSON LURIE LLP
                        BY:  DAVID LURIE, ESQ.
                        565 Fifth Avenue,
                        New York, New York  10017

                        GARY GREENBERG, ESQ.
                        666 Fifth Avenue, 27th Floor
                        New York, New York  10103
```

```
Transcription Service: Carole Ludwig, Transcription Services
                       155 East Fourth Street #3C
                       New York, New York 10009
                       Phone:  (212) 420-0771
                       Email:  Transcription420@aol.com

Proceedings conducted telephonically and recorded by
electronic sound recording;
Transcript produced by transcription service.
```

APPEARANCES - CONTINUED:

```
For Defendants:          GOODWIN PROCTER, LLP
                         BY:  SAMUEL RUBIN, ESQ.
                              MARSHALL FISHMAN, ESQ.
                              WILLIAM HARRINGTON, ESQ.
                              ALLISON FUNK, ESQ.
                         620 Eighth Avenue
                         New York, New York  10018-1405


For The Department of    UNITED STATES ATTORNEY'S OFFICE, SDNY
Justice:                 BY:  JEFFREY OESTERICHER, ESQ.
                              SARAH OLDFIELD, ESQ.
                         86 Chambers Street
                         New York, New York  10007-2632
```

## INDEX

### E X A M I N A T I O N S

| Witness | Direct | Cross | Re-Direct | Re-Cross |
|---|---|---|---|---|
| None | | | | |

### E X H I B I T S

| Exhibit Number | Description | ID | In | Voir Dire |
|---|---|---|---|---|
| None | | | | |

```
1                          PROCEEDINGS                    4

2               HONORABLE STEWART D. AARON (THE COURT):   This is

3     Magistrate Judge Aaron, this s the matter of Ramchandani

4     against Citibank National Association, 19cv9124. This line

5     is being recorded.  If I could have the parties identify

6     themselves, please, for the record, starting with the

7     plaintiff.

8               MR. DAVID LURIE:  Yes, Your Honor, David Lurie,

9     L-U-R-I-E, and Gary Greenberg, on behalf of Rohan

10    Ramchandani.

11              THE COURT:  Good afternoon.

12              MR. SAMUEL RUBIN:  For the defendant, Sam

13    Rubin from Goodwin Procter, and on the line with me

14    are Marshall Fishman, Bill Harrington and Allison

15    Funk.

16              THE COURT:  Good afternoon.  Are there any

17    representatives from the Department of Justice on the

18    line with us?

19              MR. JEFF OESTERICHER:  Yes, Your Honor, this

20    is Jeff Oestericher, O-E-S-T-E-R-I-C-H-E-R, from the

21    US Attorney's Office, Southern District of New York,

22    and with me is Sarah Oldfield, as well, from the

23    Department of Justice.

24              THE COURT:  Good afternoon.  Is there anyone

25    else on the line who is representing any other
```

```
 1                         PROCEEDINGS                    5

 2    interested party who would like to note an appearance

 3    for the record?  All right.

 4          So why don't I just turn to the Department of

 5    Justice issues first since they're on the line and,

 6    obviously, they're welcome since it's a public

 7    proceeding to stay on the line as long as they like,

 8    but at least deal with whatever issues there are. I

 9    had issued an order, as requested by the Department of

10    Justice, for a document to be provided to me for in

11    camera review in order for me to determine whether to

12    grant the defendants' request that was made pursuant to

13    Federal Rule of Criminal Procedure 6(E). I obviously intend

14    on reviewing the documents once I get them and to

15    analyze them and see whether the required showing has

16    been made under relevant Supreme Court precedent. But

17    obviously I'm happy to hear anything that the

18    government would like to say with respect to that or

19    any other issue.

20          MR. OESTERICHER:  Your Honor, this is Jeff

21    Oestericher, we did receive the order, we appreciate

22    that, we will provide that document today, I believe,

23    and we have no objection. I also, just on the

24    tangential issue, have spoken with the parties about a

25    protective order and protective order treatment and I
```

```
1                        PROCEEDINGS                6
2  believe we're going to be able to work that issue out
3  as well.  So from the government's perspective there
4  is no issue.
5           THE COURT:  Okay.  And I saw a reference in
6  plaintiff's correspondence with respect to objecting
7  to attorneys' eyes only treatment. I am, we are going
8  to start with attorneys' eyes only treatment, assuming
9  I rule that the testimony ought to be produced. And
10 then if plaintiffs, the plaintiff can make or
11 plaintiff's counsel can make a showing to me with
12 articulable reasons why particular portions of the
13 testimony needs to be shown to Mr. Ramchandani with
14 articulable reasons, I, of course, will give the
15 government an opportunity to be heard on that, but I will
16 consider that at that time. But certainly for initial
17 purposes, if I do order that the grand jury testimony be
18 produced, in the first instance it will be attorneys' eyes
19 only subject to future application from plaintiff's
20 counsel. Any questions about that?
21          MR. OESTERICHER:  None from the government.
22          MR. LURIE:  If I may, Your Honor, this is David
23 Lurie on behalf of Mr. Ramchandani, that is fine with
24 me. I did have the opportunity, after submitting the
25 letter to the Court, to confer with Mr. Oestericher about
```

```
 1                        PROCEEDINGS                    7
 2  that and my understanding, if I have it correct, Mr.
 3  Oestericher, is that the government would not have an
 4  objection to allowing a limited number of party
 5  representatives to review the documents, if that's, am I
 6  correct on the government's position on that?
 7         MR. OESTERICHER:  That is, that is correct. To
 8  the extent there's a need, that is correct. And we thought
 9  that Mr. Ramchandani likely could show such a need and
10  that there was a possibility that there could be a very
11  limited number of representatives of the defendants who
12  might also be able to show such a need.
13         MR. LURIE:  I just wanted to inform the Court of
14  that, but the procedure that you have proposed, Your
15  Honor, is fine with plaintiff.
16         THE COURT:  Yes, and I should say that if the
17  parties, and I'm including Department of Justice even
18  though they are not technically a party to the case,
19  but if you work out a protective order and agreement
20  that certain persons can view the documents, I'm not
21  going to get in the way of that, I'll so order that.
22  And obviously you can bring any disputes to me on that
23  subject.
24         All right, anything else we need to deal with,
25  with respect to issues relating to the Department of
```

```
 1                        PROCEEDINGS                8
 2   Justice?
 3             MR. RUBIN:  None from the defendants.
 4             MR. LURIE:  Or from plaintiff, Your Honor.
 5             THE COURT:  Okay.  So, as I said, Mr.
 6   Oestericher, you and your colleague are welcome to
 7   stay on the line since it's a public line, but you're
 8   also welcome not to. So now I'm going to move on.
 9             I wanted to address, this conference is
10   obviously about certain outstanding discovery
11   disputes.  What I would first like to understand and
12   perhaps, Mr. Lurie, you can speak first, what's been
13   done discovery wise in this case?  The case was filed
14   in October of 2019. I know that Judge Marrero's
15   decision with respect to the motion, what he construed
16   to be a motion to dismiss, wasn't issued until March
17   of 2021 but, in any event, why don't you tell me
18   what's been done with respect to discovery. I did move
19   the discovery cutoff, but it was October 1st, so I'm
20   trying to understand what happened prior to October 1st
21   that I'm not already aware of. I've obviously seen the
22   document requests that were served some time ago. I
23   saw the interrogatories that were served in mid-
24   September, but tell me what else has been done,
25   please?
```

```
 1                        PROCEEDINGS              9

 2           MR. LURIE:  Well, Your Honor, what has

 3  occurred is that the parties have exchanged discovery

 4  requests.  Plaintiff has agreed to produce all

 5  materials, virtually all materials that defendants have

 6  requested, and has responded fully to their interrogatories.

 7  So and we're prepared to produce our documents, you know,

 8  expeditiously.

 9           Unfortunately, as recounted in the

10  correspondence that you've seen, and as, we've spent

11  several weeks in a fruitless effort to reach agreement

12  with the defendants on the scope of their production.

13  So there hasn't been a document production yet because

14  of that. And we were hoping to, that we could reach an

15  accommodation, you know, with defendants. We've had a

16  series of discussions with them but we've been unable to. So

17  that's the state of play.

18           I would also note, Your Honor, that in addition

19  to Citibank propounding discovery requests to the

20  government, we have done the same, and the

21  government's agreed to produce the materials that we

22  have sought, which are not Rule 6(E) materials.

23           THE COURT:  Yes, I saw that in your

24  correspondence, right.

25           MR. LURIE:  Yes.  So that's what's occurred,
```

1                        PROCEEDINGS                    10

2   Your Honor.  Certainly, there hasn't been document

3   production yet and I would submit that that is

4   definitely not the plaintiff's, you know, fault in

5   this case. The plaintiff has agreed to produce

6   virtually all documents that are being sought by the

7   defendants and, likewise, provided all the materials they

8   requested in interrogatories.

9           So now we are at the point, Your Honor, of

10  trying to, you know, move the case forward.  You know,

11  it's obviously, it is a complex case and I, you know,

12  I think both parties did not anticipate that we'd be,

13  you know, that we would actually be able to complete

14  it by October, but we would like to move the case

15  forward expeditiously and so that's why we made our

16  application to the Court.

17          THE COURT:  And I suppose it goes without

18  saying that no depositions have been taken?

19          MR. LURIE:  That is correct, Your Honor.

20          THE COURT:  Okay.  So when I read the joint

21  letter that came in, thank you for providing it, and

22  just a quick housekeeping matter, it was filed at ECF

23  41, plaintiff's position states that plaintiff

24  incorporates by reference his September 7th letter. I

25  assume that's just a typo, you meant to say the

```
 1                          PROCEEDINGS             11
 2   September 27ᵗʰ letter that was filed at ECF 39?
 3             MR. LURIE:  Correct, Your Honor, my apologies,
 4   the September 27ᵗʰ letter is what we meant to refer to.
 5             THE COURT:  Okay.  So I saw plaintiff's
 6   position, I saw defendants' position, and then I got to
 7   plaintiff's reply, and then I got to A and B, I got to
 8   proposed resolution --
 9             MR. LURIE:  Correct.
10             THE COURT:  And then what I was hoping to see
11   after that was Citibank's response to the proposed
12   resolution since this was a joint letter, and so has Citi
13   responded to the proposed resolution yet?
14             MR. RUBIN:  Your Honor, we have not responded
15   to the proposed resolution. I'd note that the proposed
16   resolution was included as a, as a reply submission
17   that was provided to us the day the letter was due.
18   That said, I do think that the proposed resolution
19   still seeks all documents, very broad discovery beyond
20   what we would submit are the relevant parameters of
21   the case which has focused on the DOJ, the DOJ's
22   prosecution of Ramchandani and the grand jury
23   indictment.
24             So we did not respond to it in the joint
25   letter, we only saw it the day that the joint letter
```

```
 1                      PROCEEDINGS                  12
 2  was due. But it still does seek discovery that we
 3  think is beyond the relevant scope for the one claim
 4  that is advanced in the complaint and at issue in the
 5  case.
 6            THE COURT:  Okay, so (B)(1) the first sentence
 7  says, "Citi should be directed to produce those
 8  documents in its possession, custody and control," I
 9  assume plaintiff intended the word or instead of and
10  because that would be limiting --
11            MR. LURIE:  Yes.  I did -- yes, Your Honor.
12            THE COURT:  "Concerning FX spot market
13  investigations whether by the DOJ or by other
14  governmental or self-regulatory agencies that concern
15  Ramchandani or his actual or alleged conduct."  Does
16  City have any objection to producing documents in
17  response to that sentence?
18            MR. RUBIN:  So our position and what we tried
19  to lay out in the letter is that the one claim in the
20  case is concerning the alleged malicious prosecution
21  by the DOJ of Mr. Ramchandani based on allegedly false
22  information that was given to the DOJ.  So we have
23  tried to construct a scope of relevance that would be
24  streamlined to those issues. In other words, to be
25  relevant something has to be information that was
```

1                          PROCEEDINGS                    13

2    provided to the DOJ and it should have to concern

3    Ramchandani.

4            The first sentence that Your Honor just read

5    in the proposal that Mr. Lurie gave us is the DOJ or

6    any other governmental or self-regulatory agencies, I

7    think that that is, I think that's impermissibly broad

8    based on the one claim which is concerning the DOJ's

9    malicious prosecution, alleged malicious prosecution

10   of Mr. Ramchandani.

11           THE COURT:  Okay, so let's take out the

12   clause, "or by other governmental or self-regulatory

13   agencies," and let's, I'll read the way that would

14   read for a second, and what that would say is that

15   City should be directed to produce those documents in

16   its possession, custody or control concerning FX spot

17   market investigations by the DOJ that concern

18   Ramchandani or his actual or alleged conduct, does

19   Citi have objection to producing that?

20           MR. RUBIN:  So if I'm understanding, it's to

21   the DOJ and that concern Ramchandani, I don't believe

22   we'd have an objection to that, but I'd note, Your

23   Honor, I believe that's the position that Citi has

24   already taken in its current responses and objections

25   to Mr. Lurie's document requests and in the letter

1                           PROCEEDINGS                    14

2    that we, that the guiding principle of what should be

3    relevant in this case are things that were produced to

4    the DOJ that concern Ramchandani.

5           THE COURT:  Okay.  Now what, did Citi produce

6    documents to the DOJ in connection with the

7    investigation, this FX spot market investigation that

8    do not concern Ramchandani?

9           MR. RUBIN:  Yes, Your Honor, there was an

10   investigation and in 2015 a guilty plea by Citicorp

11   and other financial institutions, and then

12   subsequently, about a little less than two years

13   later, Mr. Ramchandani and other individuals were

14   indicted.  But Citi produced documents in response  to

15   that original investigation that culminated in the

16   May, 2015, guilty plea.

17          THE COURT:  What's the quantum of documents

18   roughly that were produced to the DOJ?

19          MR. RUBIN:  My understanding is it's

20   approximately in the order of 140,000 documents.

21          THE COURT:  Documents or pages?

22          MR. RUBIN:  Documents.

23          THE COURT:  The problem that I have with

24   limiting the documents that were given, that Citi gave

25   to the DOJ to those that, and I'm now reading from the

PROCEEDINGS                        15

proposal, and I also obviously read it in Citi's
letter, but that concern Ramchandani or his actual
alleged conduct, there are judgment calls that need to
be made and context is eliminated. And those judgment
calls, from my experience, as everyone I think is
aware, I was 33 years in private practice, the
judgment calls oftentimes are made by paralegals or
contract attorneys and who aren't familiar with the
lingo and the context, and by trying to slice and dice
in that way things are lost. And, you know, the
allegation, the allegations are, and obviously they
haven't been proven but they're merely allegations in
paragraph 85 of the complaint, is that there was a
campaign to identify Ramchandani to both government
investigators and the press that's uniquely culpable.
And if there's evidence in what was produced to the
DOJ that would implicate others by way of example,
that presumably would be probative of malice. That
Citi, and I'm not suggesting that this is the case, of
course, I'm merely commenting on the problem with Citi
holding back, for lack of a better term, the full set
of what was given to DOJ as opposed to what it is that
Citi or its designees determined concern Ramchandani
or his actual or alleged conduct.

```
1                        PROCEEDINGS              16

2              By the way, I feel differently, until I hear

3    more about other governmental or self-regulatory

4    agencies, because this case, as I understand it, is

5    about the malicious, the purported malicious

6    prosecution by DOJ of Ramchandani. That's not to say

7    that I'm foreclosing any arguments or inquiry into

8    what other sets of documents there are and all that,

9    but honing in on the DOJ documents, the problem I have

10   is drawing the lines. And that there's a protective

11   order in place, and that this is "ancient history,"

12   and I'm using that term in quotes, and you can create

13   in the first instance some attorneys' eyes only

14   category so that Mr. Lurie and his colleagues can look

15   at this stuff, but I'm having a hard time

16   understanding why the documents given to DOJ, the

17   folks that brought the prosecution, writ large ought

18   not be turned over?

19             MR. RUBIN:  Right.  if I can respond to that,

20   Your Honor, I mean to begin, we agree with Your

21   Honor's inclination that within the DOJ, the DOJ

22   construct should be the focus.  One thing we tried to

23   do with plaintiff to I think allay the concern that

24   Your Honor has just raised about framing out what

25   exactly within the DOJ productions is concerning
```

```
 1                         PROCEEDINGS                    17
 2  Ramchandani, is that we've sought to try to engage in
 3  search term protocols where we could try to come to some
 4  sort of agreement to frame out what exactly it is that Mr.
 5  Lurie would be looking for within the total population of
 6  what was given to the Department of Justice.
 7           We never, at first we thought we were making some
 8  headway and we were going to see such proposal, but we never
 9  did. And to this point the, and prior to this proposal that
10  is included in the draft that we got on the day it was due,
11  Mr. Lurie's position has been focused on all investigations,
12  whether they have any nexus to the DOJ or to Ramchandani, to
13  that matter. So I say that by noting that within the DOJ
14  construct that Your Honor just described, we would
15  entertain looking at search term protocols to try to
16  put some precision and agreement around what concerns
17  Ramchandani and what might be considered relevant to
18  the case.  But to this point, that hasn't been an
19  option with Mr. Lurie.
20           THE COURT:  Mr. Lurie, I'm going to give you
21  an opportunity to be heard, you can rest assured about
22  that, okay?
23           MR. LURIE:  Sure.
24           THE COURT:  But here's, having search term
25  protocols, and I am going to order the parties to meet and
```

1                           PROCEEDINGS                    18

2   confer about this, right, I know the responses to the

3   interrogatories aren't due yet where you're going to

4   identify who the witnesses are, you need to, when it comes

5   to e-discovery writ large, as you do in every case, you

6   need to come up with custodian search terms and date

7   ranges. That's to gather documents from ESI sources,

8   primarily emails of folks that are likely to have

9   information that's relevant to the claims or defenses

10  I put that to one side.

11          Here we have a bucket of documents that were

12  given to the prosecutors, to the folks that decided to

13  bring charges against Ramchandani. The problem with

14  search terms in that context is, you know, these were the

15  documents given to the folks that allegedly were, I

16  don't know, and I'm using my word, I'm certainly not

17  using Judge Marrero's, but manipulated by Citi,

18  allegedly, and maybe they refer to Ramchandani as the

19  bad guy and Mr. Lurie doesn't know to look for the

20  words the bad guy.

21          But talking about that universe of documents,

22  it's a discreet universe of documents, 140,000

23  documents, it was given to the prosecutors and, again,

24  I feel differently with respect to ESI writ large,

25  there you need to have search terms obviously, and

```
 1                    PROCEEDINGS                    19
 2   date ranges, and custodians, I'm going to be very
 3   proportional. I can assure you Mr. Lurie is not going
 4   to get 200 custodians, it will probably be more like 6
 5   or 10 because I need to keep in mind all of the
 6   factors that I'm supposed to keep in mind when it
 7   comes to proportionality, but again, the DOJ group of
 8   140,000 documents, certainly isn't burdensome because
 9   I assume you have them on a thumb drive or can put
10   them on a thumb drive, and you have a protective order
11   in place. And as I said, if you're concerned about
12   some level of, I think they're somewhat dated, that's
13   why I said they're ancient history, so presumably
14   don't contain competitively sensitive information, but
15   even if they do, it's something that you can put at
16   attorneys' eyes only restriction on. But I guess what
17   I'm saying is unless you tell me something really
18   convincing, I'm going to order you to produce the
19   documents that were given to DOJ in connection with
20   this investigation, whether they concern Ramchandani
21   or not.
22             MR. RUBIN:  Right.  The only point I'd make,
23   Your Honor, is that we would be reviewing the
24   documents and attorneys would be conducting the
25   review. We also would work with Mr. Lurie to develop
```

```
1                          PROCEEDINGS                    20
2   the search terms to make sure we weren't missing
3   anything. And the objection that we raised to
4   producing the entirety of what was given to the DOJ is
5   only that the case is, the case is focused on the
6   DOJ's, you know, allegedly false information provided
7   to the DOJ concerning Ramchandani, that's the, that's
8   I think the second sentence of the motion to dismiss
9   decision. So that was the basis for the position and
10  we'd certainly be willing to confer with Mr. Lurie if
11  we could try to achieve some of that structuring and
12  streamlining.
13        THE COURT:  Okay, well I'm going to order that
14  the production that was given, the 140,000 documents
15  that were given by Citi to the DOJ in connection with
16  the FX spot market investigation be produced to
17  plaintiff reasonably promptly. I mean I gave, I moved
18  the deadline only to November 15th understanding it's
19  going to be moved again once we get our arms around
20  the rest of discovery. So is thirty days enough time
21  for you to produce that stuff or can you do it faster?
22        MR. RUBIN:  I think thirty days should be
23  sufficient, Your Honor, I don't want to commit to
24  doing it faster without conferring with a few people
25  on our end, but I think that should be sufficient,
```

```
 1                         PROCEEDINGS              21
 2  Your Honor.
 3          THE COURT:  Okay. Now I want to turn to other
 4  governmental or self-regulatory agencies.  What other
 5  governmental or self-regulatory agencies conducted
 6  investigations concerning FX, the FX spot market?
 7          MR. RUBIN:  I'm sorry, could you repeat the
 8  question?
 9          THE COURT:  Of course.  What other
10  governmental or self-regulatory agencies conducted
11  investigations of Citi concerning the FX spot market?
12          MR. RUBIN:  Sure.  Your Honor, there were
13  extensive investigations worldwide, I believe there
14  were approximately 19 different investigations, some
15  larger than others, but where information was provided
16  to government regulators.
17          THE COURT:  And the one that I saw mentioned
18  was in London, is it the FCA, SFA, is that one of the
19  larger ones?
20          MR. RUBIN:  Correct, FCA, Financial Conduct
21  Authority, correct.
22          THE COURT:  And then did the SEC conduct an
23  investigation?
24          MR. RUBIN:  There was correspondence with the
25  SEC, I don't believe that the SEC conducted an
```

```
 1                         PROCEEDINGS                22
 2   investigation, or if there was, it wasn't, there
 3   wasn't a significant one.
 4            THE COURT:  Was it the CFTC, sorry?
 5            MR. RUBIN:  There were productions made to the
 6   CFTC.
 7            THE COURT:  Right.
 8            MR. LURIE:  And the OCC, Mr. Rubin, am I
 9   correct?
10            MR. RUBIN:  Correct.
11            THE COURT:  Could you say that again, Mr.
12   Lurie?
13            MR. LURIE:  Certainly, the OCC, Your Honor.
14   There is a list, there is a list, I cannot represent
15   that it is complete because I didn't prepare it, but
16   there is a list of agencies that Citibank has
17   represented in related arbitration conducted
18   investigations. And Citibank actually has argued that
19   Mr. Ramchandani is responsible for various settlements
20   and penalties that the, that Citibank or its
21   affiliates paid in connection with the FOREX matter.
22   So the way that I got that list was that Citibank
23   listed it and said we were investigated by all these
24   agencies and Mr. Ramchandani is responsible for the
25   various penalties that the bank paid.
```

```
 1                        PROCEEDINGS                    23
 2            If I could, Your Honor, I would like to
 3   address, if this is an appropriate time, why --
 4            THE COURT:  You want to talk me out of what
 5   I've already ruled in your favor on, I'm not sure what
 6   you're addressing?
 7            MR. LURIE:  Yeah, well I was going to, I know
 8   you haven't ruled and, yes, I'd like to address your
 9   tentative view on the relevance of these other
10   investigations, okay. And as a precis I wanted Your
11   Honor to be aware of the fact that Citibank has argued
12   that they are very relevant. And, in fact, Citibank
13   asked us to produce documents related to one of these
14   proceedings until it, until it terminated in Mr.
15   Ramchandani's favor. And I know that Your Honor has
16   had the opportunity to take a look at the motion to
17   dismiss rule, so I don't want to rehearse the entire
18   contents, but the premise of our case as alleged is
19   that Citibank made Mr. Ramchandani into a scapegoat,
20   folks at Citibank affirmatively knew --
21            THE COURT:  No, I understand that.  Here's
22   what I'm going to order with respect to the other
23   governmental or self-regulatory agencies using the
24   words from your proposed resolution (B)(1).  The
25   parties need to meet and confer. I am not going to
```

1                          PROCEEDINGS                    24

2    order Citibank to turn over every document produced to

3    those 19 entities. Because what it's going to be, of

4    course, is emails and other documents that probably

5    will overlap to some extent with those that were given

6    to DOJ.  What you should meet and confer about is

7    communications with those agencies with regard to

8    resolution of, or with regard to the investigation,

9    however it is you worded it, certainly, there is

10   nothing attorney-client privilege about them because

11   those agencies were obviously adverse. Because if

12   there are communications in there that either implicate

13   or point a finger at Ramchandani, I think that goes to

14   mental state, that goes to, you know, whether Citi was out

15   to get him, for lack of a better term.  Similarly, if

16   there are communications in there that point the finger at

17   someone else, then potentially those could be relevant to

18   the claims or defenses.

19          But in terms of the document production writ

20   large made by Citi to these various agencies, first of

21   all, I don't think it's relevant in and of itself, those

22   productions, to the claims or defense, but certainly it's

23   not proportional to the needs of the case given that I've

24   ordered Citi to produce that which was produced to the

25   prosecuting agency where you claim the malicious

1

2     prosecution. So the parties should meet and confer about

3     those communications, and as to how to search those, I

4     think that will be a fruitful area to be utilizing search

5     terms to try to come up with things that are going to

6     capture things that relate to Ramchandani. But I am not

7     going to order at the moment that Citi turn over all

8     communications with all 19 entities. If it's limited to

9     Ramchandani I'd feel differently, by the way, if there are

10    communications that are specific to Ramchandani and what

11    Ramchandani did, that, to me, is, those communications are

12    relevant to claims and defenses because it goes to Citi's

13    state of mind. Again, repeating, not the actual documents

14    that were produced to these agencies, rather, communications

15    with them trying to convince them not to bring charges, in

16    resolution of charges, things of that kind, Ramchandani gets

17    to see whether Citi was trying to throw him under the bus,

18    for lack of a better term with other agencies, as

19    Ramchandani alleges occurred with respect to the DOJ.

20              But, again, the parties need to meet and confer

21    about the scope of what's required to be produced vis-à-vis

22    the communications with these other governmental or self-

23    regulatory agencies.  I'm happy to hear any questions or

24    comments about what my order, my order is going to say

25    something along those lines about what you're meeting and

```
 1                          PROCEEDINGS                    26
 2   conferring about, but I'm happy to hear any questions or
 3   comments about that.
 4           MR. LURIE:  Your Honor, this is David Lurie,
 5   if I could respond briefly?
 6           THE COURT:  Yes.
 7           MR. LURIE:  First of all, that, in concept,
 8   everything that Your Honor stated is entirely, you
 9   know, makes sense to me as a protocol.  And, in fact,
10   it's what I've been trying to, you know, over the past
11   several weeks, to reach agreement with plaintiff on.
12   That is a way to get into these materials that focuses
13   on the relevant material. As Your Honor stated, if
14   it's material related to, excuse me, concerning, I
15   don't want to use the (indiscernible) from the Federal
16   Rules, concerning Ramchandani, as Your Honor just
17   stated, it's all presumptively relevant and, you know,
18   should be produced.
19           It is also relevant, as Your Honor stated,
20   potentially highly relevant if it's material that
21   concerns other alleged wrongdoers. And it is relevant
22   both on the malice prong, as Your Honor just stated,
23   but also on the related scienter prong that the Court
24   identified in its ruling. That is Judge Marrero
25   properly stated that we have to, we will have to show
```

1                           PROCEEDINGS                    27

2    that Citibank knew that Ramchandani did not engage in

3    wrongs and that Citibank was motivated to focus the

4    government on Ramchandani because it was aware of other

5    wrongdoing by individuals elsewhere in the bank.

6              So we are entirely agreeable with that.  We

7    will, if Your Honor so orders we will, you know,

8    negotiate in good faith with Citibank in an effort to,

9    you know, come up with a practicable way to get that

10   material identified and produced.

11             THE COURT:  Any comments from Citi?

12             MR. RUBIN:  No, Your Honor, we understand and

13   we will proceed in good faith, meet and confer with

14   Mr. Lurie on that issue.

15             THE COURT:  Okay.  Now with respect to

16   category two of the proposed resolution, this is

17   another area where you need to meet and confer. First

18   of all, it's not ripe because the deadline to respond

19   to the interrogatories hasn't even come, but what the

20   parties need to meet and confer about is what I said

21   regarding emails and other ESI writ large. And that is

22   come up with a reasonable number of custodians, a

23   reasonable number of search terms, and a reasonable date

24   range. And you're going to apply those two those custodians,

25   date ranges and search terms and try to come up with a

1                        PROCEEDINGS                    28

2   compromise.

3            I will tell you that, given that Mr. Ramchandani

4   is getting the DOJ production and is going to be getting

5   communications with the governmental and self-regulatory

6   agencies concerning him and his conduct and the conduct of

7   other alleged wrongdoers, I think that's where the beef

8   is, for lack of a better term, and I'm going to be viewing

9   the proportionality issues vis-à-vis what I'll refer to as

10  fresh emails. I mean in my experience the DOJ is a very

11  thorough agency and doesn't, I'm trying to think of the

12  right word, so the documents and emails that they

13  received I think are the set of the most, what's

14  likely most relevant. I'm not foreclosing you, Mr.

15  Lurie, from going on, from seeking fresh documents

16  from emails, I think you're going to find, obviously,

17  after you engage in this exercise, that many of the

18  emails that you turn up using your custodians, date

19  ranges and search terms are going to be duplicative of

20  that which is in the production which was made to DOJ,

21  but I think you are entitled to a proportional and

22  reasonable set of search terms, custodians and date

23  ranges. But I'm going to leave it to you after you get

24  responses to the interrogatories to negotiate with Citi as

25  to what those parameters are.

```
 1                        PROCEEDINGS                   29
 2            The other thing I'll say is there is nothing wrong
 3    with starting with, you know, for lack of a better term, the
 4    low hanging fruit. The folks whose names are mentioned in
 5    pleadings, for example, and in Judge Marrero's decision, you
 6    know, and then having a second wave, for lack of a better
 7    term, and also once you look at the DOJ production there may
 8    be certain names that stand out over others but there is
 9    nothing to preclude you from trying to get a couple of more
10    custodians if you can show, based upon the documents you've
11    been provided, that there's a basis to get those documents
12    and perhaps you can even target in on a specific date range
13    or specific set of search terms with respect to one or two
14    additional custodians.
15            So I do not think that you are going to be
16    foreclosed by whatever your initial set of custodians is,
17    but I would encourage you, Mr. Lurie, to be, to be
18    reasonable, I guess.
19            MR. LURIE:  Sure.
20            THE COURT:  And the goal is not to impose burden
21    here, the goal is to get what you need in order to prove
22    your case.
23            MR. LURIE:  I can assure Your Honor that we'll
24    take that approach.  I want to put a little meat on
25    the bones about the purpose for these interrogatories
```

1

2 that we propounded and what materials we are going to

3 be seeking in part based on the response that I hope

4 to receive from them.

5        Citibank (indiscernible) person to person

6 meetings with the DOJ. We know about certain of those

7 meetings because one of Citibank's lawyers gave an

8 account of several of the meetings that has been

9 reduced to writing in connection with the OCC

10 proceeding that I mentioned earlier. So it's kind of

11 an unusual circumstance, one of Citibank's lawyers,

12 and they were the ones who took the lead in these

13 meetings, gave an account of a number of the meetings.

14        What we have learned, including as a result of

15 Citibank's recent request, Touhy request to the

16 government, is that there were additional meetings with

17 the government that we were not aware of. And I'm not

18 accusing, I want to be very clear, Citibank's lawyers of

19 not disclosing these other meetings, there are various

20 reasons why they may not have believed that they were

21 required to disclosed them previously in connection with

22 the OCC proceeding. But we're trying to identify those

23 meetings because, as Your Honor stated, there might not

24 have been communications, we don't know, you know,

25 fulsome communications like emails, but there were fulsome

PROCEEDINGS                    31

communications orally in these meetings, some of which
were with very high level people at the DOJ, some of which
were (indiscernible) level people at the DOJ, and some of
which included both categories.  So we're trying to get,
identify those meetings, so that we can identify the
relevant custodians at Citibank as you suggested, Your
Honor, and also focus our discovery requests on
getting materials related to those meetings.

          THE COURT:  No, I understand, and I anticipate
that Citi is in good faith going to be responding to
these. In all candor, I haven't studied the breadth of
all of them. I mean certainly, Mr. Lurie, what you're
suggesting as you want to know what the meetings were
and who was in them so you can identify custodians,
that seems to me to be a reasonable approach. And
obviously I'm happy to hear from Citibank if, this is
not intended to box you in by any means, because you
have the right to respond and object to these
interrogatories, but maybe Citibank could just
comment, high level, not committing yourself, as to
whether you think the approach being suggested by Mr.
Lurie of identifying custodians based upon who
attended various meetings is a fair approach.

          MR. RUBIN:  Sure, I can respond to that, Your

1                              PROCEEDINGS                    32

2    Honor, and thank you for the caveats, because we are

3    still, we only received these on September 18th and

4    we're still, we're still working on the response. But,

5    generally speaking, the interrogatories break into

6    similar, break along a similar line of demarcation to

7    the issue that we've been discussing previously in

8    that there are requests that ask for identification of

9    the dates and participants of meetings between

10   Citibank and the DOJ, and then the identification of

11   all documents concerning those meetings with regard to

12   meetings between Citibank and the DOJ. And then

13   there's sort of a mirror image of those two

14   interrogatories for everyone else, other, all other

15   governmental authorities and self-regulatory

16   organizations.

17          I think it becomes somewhat more complicated

18   and potentially more burdensome to, for lack of a

19   better word, put the cart before the horse on these

20   discussions about what are the search terms and the types

21   of proposals that Mr. Lurie would make to us with regard to

22   the other regulatory questions.  Particularly because, and I

23   think these issues somewhat come together because there's

24   a bit of a gating issue here with the production of

25   the DOJ grand jury materials, as well.

```
 1                    PROCEEDINGS                  33

 2            You know, as we noted in our letter, our view

 3    is that the scope of relevance here is solely about

 4    the DOJ's prosecution of Mr. Ramchandani based on

 5    allegedly false information that was supplied to Citi

 6    and we expect and hope, once Your Honor is able to

 7    look at the DOJ production in camera, that we'll be

 8    able to perhaps streamline some of what is necessary

 9    here. And I only mention that in the context of the

10    interrogatory because it's one thing to consider some

11    targeted search terms that Mr. Lurie might propose to us in

12    good faith and with reasonableness, it's another thing to

13    try to identify in an interrogatory response every meeting,

14    every person, every document that might evidence a meeting

15    between Citibank and any other regulator that was looking at

16    FX when, as we've said in our letter and I think it's worth

17    noting here again, we think that the focus should be on the

18    DOJ, the prosecution, the information that was supplied to

19    the grand jury. And we think some of that may, may

20    streamline what's really relevant in this case.

21            MR. LURIE:  This is Mr. Lurie, if I could respond,

22    Your Honor, if that would be helpful to the Court?

23            THE COURT:  Briefly.

24            MR. LURIE:  Yeah, sure.  What really concerns

25    me, with all due respect, about that response, Your
```

1                          PROCEEDINGS                    34

2   Honor, is that it indicates, you now, a reticence to

3   comply with the direction that Your Honor gave just a

4   few minutes ago.  For example, Judge Marrero made

5   clear (indiscernible) he said to other regulatory

6   agencies, including and especially about Mr.

7   Ramchandani, as well as other potential targets, is

8   relevant here.

9          If Citibank is going to persist in arguing

10  that it, for example, as I just heard, that it's going

11  to come back to the Court to argue that it doesn't

12  have to produce materials related to what it said to

13  the FCA, what it said to the FCA is cited and relied

14  upon, that is what we know to date about what they

15  said about, you know, to the FCA, was cited and relied

16  upon by Judge Marrero.  And so because it goes to

17  Citibank's knowledge and malice, as Your Honor stated.

18         So as long as we can proceed along the route

19  that Your Honor suggested, it will be productive, but

20  it is important, it seems to me, not to deviate from

21  that.  And if we're going to be faced with continued

22  arguments that Citibank had edited this to only

23  materials that they deem to concern Mr. Ramchandani,

24  and only materials they deem to concern the DOJ, you

25  know, we're going to have a problem because we'll just

```
 1                        PROCEEDINGS                    35

 2    be back, you know, in front of the Court soon.

 3              THE COURT:  All right.  So just to, I'm not

 4    making any rulings on this, but just to preview some

 5    observations about the interrogatories.  Three and

 6    four are troublesome to me because of the burden they

 7    impose.  First of all, they are outside the scope of

 8    33.3 of our local civil rules because they're not

 9    asking for, one and two ask for witnesses, they also

10    ask for dates which I think makes sense in context,

11    but it asks for essentially the identity of witnesses,

12    participants in certain meetings. Three and four are a

13    step removed, you want a document to be identified

14    that states the dates and the participants and that,

15    to me, is just a burden, it's an undue burden. And if,

16    as a way to answer one and two, Citi wants to produce

17    documents sufficient to show, in other words, three

18    and four want to identify documents sufficient to show

19    the answers to one and two, that kind of thing.  But I

20    would look favorably upon objections to three and four

21    under grounds of burden. On the other hand, if it's

22    not burdensome, you have these documents laying

23    around, for lack of a better term, that's fine.

24              My comment on one is, you know, it's limited

25    to DOJ and that seems to be targeted. And as I
```

2    indicated, for the same reason why in the production

3    made to DOJ I don't think that Citi should be slicing

4    and dicing.  In terms of meetings that were held with

5    DOJ, I think you should give the list of people who

6    attended these meetings, and I don't know how many

7    there are, it may be that if Mr. Lurie, if there's

8    dozens and dozens and Mr. Lurie tries to get all of

9    them as custodians, I'm going to cabin those, but

10   giving the names of who met with DOJ regarding this

11   investigation obviously is not going not going to get

12   lawyers. I suppose they could talk about what they

13   said to DOJ, but it's certainly not going to get

14   anything that they said to folks at Citi.

15              But, two, what I'd be sensitive to is a

16   proportionality argument for arguing that you don't

17   need, Mr. Lurie doesn't need all 19. Certainly, FTA,

18   OCC, FRB, those are, for lack of a better term, the

19   big players, I assume, and what one off comment was

20   made in a meeting to the Brazilian Administrative

21   Court for Economic Defense, again, Mr. Lurie, you'll

22   have the opportunity if they object to that to come

23   back and explain to me, oh, Brazil is all important

24   here. But it seems to me there comes a point where you

25   don't need all 19.

```
 1                         PROCEEDINGS                    37
 2              MR. LURIE:  No.
 3              THE COURT:  If Citi was going to through
 4    Ramchandani under the bus, they wouldn't have done it
 5    only with the Brazilians, they would have done it with
 6    the big fish, the FTA, the OCC and the FRB, and that's
 7    where, that would be enough for you in order, if it
 8    happened, in order to make out your scienter and
 9    malice case.  And you don't need to --
10              MR. LURIE:  Could I respond to that -- oh, I'm
11    sorry, apologize.
12              THE COURT:  You don't need to literally turn
13    over every stone. I will let you briefly respond, Mr.
14    Lurie.
15              MR. LURIE:  Oh, sure, I apologize, I didn't
16    mean to interrupt Your Honor, and I understand where
17    you're going, obviously, conceptually.  One thing
18    that's important, and it has to do with the relative
19    information deficit that we have on our side of the
20    table, okay, is that our understanding, including
21    based on at least one, at least one guilty plea and
22    one indictment of other Citibank personnel, is that
23    the wrongdoing that Citibank was concerned with, as I
24    said in one case it led to a guilty plea in the
25    Southern District, concerned actually developing and,
```

1

2   you know, small country currencies, primarily.  For

3   example, the South African was the subject matter, in

4   part, of one of the criminal, as I understand it, a

5   guilty plea in the Southern District.

6           So, you know, I just hesitate to agree with

7   the proposition that, quote-unquote, "the small

8   players are irrelevant," because if it so happens that

9   what we believe is the very serious wrongdoing that

10   Citibank was attempting to divert attention from

11   involved those small currencies. Parenthetically, the

12   reason it did is because those are currencies that,

13   unlike the dollar and the Euro, are actually

14   susceptible to manipulation.

15           So there was -- so I, you know, I'm interested

16   and willing and have been from the beginning to have a

17   dialog with Citibank about limiting the scope, but I

18   am saying that in order to capture what we want, which

19   is knowledge by Citibank of wrongdoing by others, it

20   may go beyond the FCA.

21           THE COURT:  Yes, so there's two different

22   concepts, actually there's many concept in the Federal

23   Rules of Civil Procedure, two relevant concepts here,

24   one is relevance and one is proportionality. And the

25   devil is in the details and proportionality actually

1                       PROCEEDINGS                    39

2   has five or six different elements. Obviously, if you

3   can show that with respect to some small country or

4   some small regulator there's a smoking pistol where,

5   and, therefore, you absolutely need to have that,

6   okay.  But, otherwise, just to say that things that

7   were said to the 19th regulator are relevant, we need

8   to draw a line somewhere and proportionality is a very

9   subjective thing, I'm speaking about it before the

10  Sedona Conference, for better or for worse, in a

11  couple of weeks.  And there are people who spend their

12  lives now since 2015, and it was in the penumbra

13  before 2015, I suppose, trying to figure out what

14  proportionality means. But I think it's very

15  discretionary in my judgment and I am not going to

16  deprive the plaintiff of information that he needs to

17  prove his case, certainly.

18            MR. RUBIN:  Understood.

19            THE COURT:  But on the other hand, I'm not

20  going to subject Citibank to an undue burden. And I

21  expect both sides to, in good faith, negotiate and

22  compromise. We no longer, not that the Federal Rules

23  ever permitted the turning over of every stone, but

24  now we don't turn over every stone, we search for

25  where information is likely to be and, as you know,

```
1                         PROCEEDINGS                40
2    Mr. Lurie, whatever is produced in discovery, should
3    you go to trial and not settle this case, you'll use
4    one-tenth and maybe one one-hundredth of those
5    documents that you're going to put before the jury and
6    the jury is going to, it's going to be a few witnesses
7    and a few documents that they hone in on. So let's be
8    sensible as we move forward and let's be cooperative
9    with one another, please.
10             MR. LURIE:  Understood, Your Honor.
11             THE COURT:  So that's all, I mean so the
12   parties, with respect to discovery, need to meet and
13   confer in good faith, and if there are disputes you're
14   going to come back to me.  But, so the only ruling I'm
15   making at the moment is that Citi shall produce the
16   140,000 documents that were produced to the DOJ and
17   shall do so within 30 days, and the parties should met
18   and confer, come back to me if they have disputes
19   regarding, as I said, the communications with the
20   various agencies, as well as search terms and
21   custodians and date ranges. And once the parties have
22   had a chance to talk, come up with a reasonable
23   extension of the discovery cutoff, because obviously
24   November 15th isn't going to cut it, but we need to get
25   a date in place so that this case doesn't drift.
```

```
 1                        PROCEEDINGS                  41
 2           MR. RUBIN:  Understood, Your Honor.
 3           THE COURT:  So I'm going to ask for a joint
 4   status letter probably 45 days out.  If I hear from
 5   you sooner, fine, but otherwise I'll set a date for a
 6   joint letter from both sides telling me kind of where
 7   things stand. I did received, just so the parties are
 8   aware, as long as we're on the phone, an email from
 9   Mr. Oestericher in camera sending me the transcript of
10   the grand jury testimony of Matthew Gardner, and which
11   I obviously will review and make a ruling on as
12   previously discussed.
13           All right, with that, since Mr. Lurie's been
14   doing a lot of speaking, I'll give Mr. Rubin or
15   whoever wants to speak on behalf of the defendants an
16   opportunity to raise any other issues they want to raise
17   before I turn it back to Mr. Lurie?
18           MR. RUBIN:  Thank you, Your Honor.  I guess the
19   one thing that I would hope to raise is whether there,
20   and maybe the answer is Your Honor requesting a status
21   update in 45 days, but some of this, some of what
22   we've discussed here does seem somewhat related to the
23   grand jury developments that Your Honor has just
24   received in camera.  And on our side, from where we're
25   standing, where wondering whether there could be any
```

```
 1                         PROCEEDINGS                 42
 2   type of gating of some of these issues, particular
 3   with regard to non-DOJ related discovery.
 4             You know, as we laid out in our letter, we do
 5   think under the Second Circuit's Rothstein decision,
 6   that we're entitled to a presumption of probable cause
 7   which is, itself, a complete defense to the claim, and
 8   that Mr. Lurie will be required to show bad faith,
 9   fraud, perjury, in the grand jury. That was one of the
10   things that Judge Marrero cited on page 26 of his
11   decision that he was giving a plausible inference that
12   Citi decoded communications from Ramchandani in
13   procuring the indictment. That's how Judge Marrero
14   ruled on the probable cause element. And we're
15   submitting that perhaps we could stage some of this
16   with regard to the other regulatory aspects of this
17   and focus in on the DOJ, particularly since the
18   Department of Justice has provided the testimony that
19   we've requested to Your Honor.
20             THE COURT:  Yes, it seems to me you're trying
21   to argue in discovery the merits of your position. I
22   get your position and I'm obviously not passing on the
23   merits of your position. It may be that Citi is
24   absolutely right. But what Judge Marrero stated was
25   that malice is an element that the plaintiff has the
```

1                          PROCEEDINGS                    43

2    burden to prove. And communications with other

3    regulators, again, I'm not making you turn over the

4    production given to them, but rather communications

5    with them about Ramchandani and potentially, and I'll

6    use this term, other wrongdoers, can be probative of

7    that.

8            The other thing I'll note is that Judge

9    Marrero cited Citi's communications with the SEC and

10   the FCA in his decision denying the rule 12(B)(6)

11   motion, pages 4, 7, 18, 27. So I am not going to limit

12   in discovery, as you suggest. It may be that Citi

13   gets, when all the dust settles, Citi gets summary

14   judgment because there's no there there but, again,

15   I'm trying to be proportional. I'm not saying that the

16   plaintiff ought to get communications with all 19

17   regulators. As I indicated, I think there ought to be

18   some compromise there and you should go after the,

19   provide the big fish, for lack of a better term, and

20   if you're right that there is no there there, then

21   perhaps Mr. Lurie will not be interested in pursuing

22   the others. It seems to me, if you weren't throwing

23   Ramchandani under the bus with the FCA, then you

24   wouldn't have been doing it with the Brazilians

25   because you would have much more incentive to throw

```
 1                        PROCEEDINGS                44

 2   him under the bus with the FCA by way of example. But

 3   just because, and I haven't read this transcript at

 4   all, but let's say I were, that, you know, what you're

 5   saying is correct, that it aligns with your theory of

 6   the case, this testimony, that doesn't mean since the

 7   plaintiff has the burden of proof he's not entitled to

 8   see what was said to the other regulators,

 9   particularly in circumstances where Judge Marrero,

10   himself, makes reference to those communications.

11           So, again, I'm not --

12           MR. RUBIN:  Understood, Your Honor.

13           THE COURT:  I'm not making any rulings at this

14   point, but I'm signaling if a dispute is brought

15   before me about communications with regulators, how

16   I'm likely to rule.

17           With respect to the larger, more important

18   regulators, I don't see how you, how I stop plaintiff

19   from getting access to those, so he gets to test the

20   waters and see whether, what Citi is saying is true.

21   He doesn't need to take your word for it, I suppose,

22   is what I'm saying.

23           MR. RUBIN:  Understood, Your Honor, thank you.

24           THE COURT:  All right.  Anything else from

25   Citi's side?
```

```
 1                        PROCEEDINGS                    45

 2              MR. RUBIN:  No, Your Honor.

 3              THE COURT:  Okay.  And, Mr. Lurie, anything

 4    else on your end?

 5              MR. LURIE:  No, Your Honor.

 6              THE COURT:  All right, so you can expect a

 7    ruling.  Given our schedule this afternoon, it may

 8    not, I typically do things the same day, it may not go

 9    out until tomorrow, but you already know pretty much

10    what it's going to say.

11              So I thank the parties for their participation

12    and this matter is adjourned.  Thank you.

13              MR. RUBIN:  Thank you, Your Honor.

14              MR. LURIE:  Thank you, Your Honor.

15                   (Whereupon, the matter is adjourned.)

16

17

18

19

20

21

22

23

24

25
```

46

1

2

3

4                    C E R T I F I C A T E

5

6          I, Carole Ludwig, certify that the foregoing

7    transcript of proceedings in the case of Ramchandani versus

8    Citibank National Association, et al., Docket #19cv9124,

9    was prepared using digital transcription software and is a

10   true and accurate record of the proceedings.

11

12

13

14   Signature_____*Carole Ludwig*_____

15                    Carole Ludwig

16   Date:    October 11, 2021

17

18

19

20

21

22

23

24

25