# LAW OFFICE OF DAVID R. LURIE, PLLC

*194 President Street*
*Brooklyn, New York 11231*

*Phone: 347-651-0194*
*E-mail:david@davidlurielaw.com*

May 26, 2022

The Honorable Stewart D. Aaron
United States District Court
 for the Southern District of New York
500 Pearl Street, Room 1970
New York, New York 10007

                                         Re:  <u>Rohan Ramchandani v. Citigroup, Inc., et al.,</u>
                                                 <u>Civil Action No. 1:19-cv-9124 (VM) (SDA)</u>

Dear Judge Aaron:

       On behalf of Plaintiff Rohan Ramchandani, we motion for an Order requiring Citi to: (i) produce the following categories of documents withheld on the privilege grounds: (a) memoranda of meetings with the DOJ; (b) internal records concerning the suspension and termination of Plaintiff; and (c) communications involving public relations personnel and matters; and (ii) explain the reasons for Citi's categorical withholding of virtually all documents concerning Plaintiff's termination.[1]

       <u>DOJ Meeting Memos and Notes</u>.  Citi's DOJ meeting memos are subject to production for several, independent, reasons:

       <u>First</u>, we are seeking solely those portions of the memoranda that purport to recount statements made by parties during DOJ meetings. Per Judge Wood, "not every item which may reveal some inkling of a lawyer's mental impressions, conclusions, opinions, or legal theories is protected as opinion work product."  <u>Rigas v. United States,</u> 2016 U.S. Dist. LEXIS 113914 (S.D.N.Y. 2016). A lawyer's contemporaneous notes of a witness's statements (or in this case, a colleague's statements) "do not rise to the level or opinion work product." <u>Id</u>. at *8.

       <u>Second</u>, Plaintiff has a very substantial need for the documents at issue. Mr. Ramchandani's claim is grounded on allegations that in "early 2014, that Citi began a campaign to use him as a scapegoat in both the press and with government investigators." <u>Ramchandani v. CitiGroup, Inc.</u>, 2021 U.S. Dist. LEXIS 45984 (S.D.N.Y. 2021). Accordingly, Citi's statements to the DOJ regarding Mr. Ramchandani's conduct are highly significant.

       For example, in denying Citi's motion to dismiss, Judge Marrero ruled that Mr. Ramchandani's allegations that Citi purported to "decode" chatroom communications during meetings with the Government support Plaintiff's contention that Defendants culpably "procured" the indictment, a key element of the malicious prosecution tort.  Id. at *25-26. Accordingly, notes reflecting Citi's statements about, and characterizations of, the chat records during DOJ meetings are potentially highly probative.

---

[1] The Parties met and conferred on May 20 and 23, 2022 without success.

Page 2

<u>Third</u>, Citi has waived its privilege regarding the notes at issue. The Citi Stip., prepared in connection with the prior OCC case, was the product of an interview with lawyer Jonathan Kolodner, an institutional witness for Citi, who purported to provide detailed accounts of every meeting that Citi had with the DOJ concerning Mr. Ramchandani's conduct. That account included details such as the names of each participant, and item-by-item accounts of the subject matters addressed, in each meeting.

It is all but certain that, in providing these details, Mr. Kolodner drew directly from the contents of the very meeting memoranda that Citi is now attempting to shield under a cloak of privilege.  Pursuant to the sword-shield doctrine, a party cannot use "the work product doctrine as a sword and a shield by selectively using [] privileged documents to prove a point but then invoking [] privilege to prevent an opponent from challenging the assertion." <u>Chevron Corp. v. Donziger</u>, 2013 U.S. Dist. LEXIS 113050 (S.D.N.Y. 2013) (quotation omitted). This Court has held that the doctrine prevents a litigant from asserting privilege over work product materials that the party has permitted a witness to utilize in connection with their prior testimony.  <u>See</u> Id.

<u>Finally</u>, it is also all but certain that the DOJ memoranda, and other materials, that Mr. Kolodner reviewed refreshed his recollections in advance of his interview. It defies credulity to suppose that Mr. Kolodner retained a detailed memory of the dates, participants in, and contents of, each of the several meetings that occurred years ago detailed in the interview. Furthermore, Mr. Kolodner will be testifying under oath in the instant action, and will be questioned regarding each of the meetings recounted in the Citi Stip.

Given the near certainty that Mr. Kolodner's recollections of those meetings have already been refreshed by the DOJ memoranda, we submit that justice requires their production under Fed R. Evid. 612(a)(2), even assuming arguendo that the Citi's privilege claim has not otherwise been vitiated. <u>Aviles v. S&P Global, Inc.</u>, 2022 U.S. Dist. LEXIS 20639 (S.D.N.Y. 2022) (interest of justice required production of notes relied on in testimony re events that occurred years ago).

<u>Documents re the Employment Termination Process</u>.  Citi has purported to cloak <u>the entirety</u> of the documents in its possession custody and control related to the decisions to discipline and ultimately fire Mr. Ramchandani under a cloak of privilege. As Judge Marrero recognized, those events are of great significance to Plaintiff's allegation that that Citi targeted Mr. Ramchandani to be a scapegoat from the outset of the governmental investigations into FX Spot market trading.

In this case, Citi has reproduced the production it made in a prior employment litigation before a UK court (the "UK Action"). But as Citi's counsel in the UK Action explained in a Witness Statement, Citi did not produce "a significant number [out of "approximately 10,000 responsive communications"] of documents related to the decision making process that underpinned the termination of [Mr. Ramchandani's] employment" (Exh. A hereto, at ¶ 21). In fact, the production we have received includes virtually no such documents. Citi's UK counsel explained that Citi made a blanket assertion of privilege because lawyers were "heavily involved" in the decision to fire Plaintiff and because the DOJ and other agencies were conducting investigations at the time of the firing.

The fact that the government investigations were going on, does not establish any basis for a categorical assertion of privilege under U.S. law. Furthermore, the fact that such investigations were occurring goes to establish the very substantial probativity of the documents to Mr. Ramchandani's scapegoating allegations.

Furthermore, the apparent fact that Citi made a blanket assertion of privilege in the UK proceeding simply on the ground that lawyers "were involved" raises substantial questions as to whether the privilege assertion is valid under the standards at issue before this Court. As discussed below, it is well established that simply making lawyers party to communications regarding non-legal matters does not make the communications privileged. Yet the statement of Citi's UK lawyer indicates that is just what Citi did here.

Given the fact that Citi has attempted to cloak the entirety of the discipline and termination process in a cloak of privilege, we submit Citi should be required to provide a detailed account of what role(s) its lawyers played in each element and stage of the discipline and termination process, and how and why that involvement purportedly permits Citi to assert a privilege over every document created in connection with that process, including the communications of lawyers and non-lawyers alike.

Communications with Public Relations ("PR") Personnel. As Judge Marrero explained, Plaintiff alleges Citi's PR department was part of "'a calculated scheme' to deflect the blame for any wrongdoing onto" Mr. Ramchandani through press communications. 2021 U.S. Dist. LEXIS 45984, at *5. Citi withheld hundreds of documents constituting communications with PR personnel on privilege/work product grounds. From the meager descriptions in Citi's logs[2], it appears the communications largely concern the formulation of an account of Plaintiff's firing to share with the DOJ and the press. We submit that the presence of PR personnel strongly suggests that attorneys were present, not for providing legal advice, but to facilitate the scapegoating scheme. The documents should be produced. Calvin Klein Trademark Tr. v. Wachner, 198 F.R.D. 53, 55 (S.D.N.Y. 2000) ("as a general matter public relations advice, even if it bears on anticipated litigation, falls outside the ambit of [work product] protection"); De Espana v. Am. Bureau of Shipping, 2005 U.S. Dist. LEXIS 33334 (S.D.N.Y. 2005) (emails between executives and in-house attorney containing "non-legal discussions of business-related issues" including "public relations strategies," not privileged particularly where employees outside legal department were recipients and "legal issues do not predominate"); Robbins & Myers, Inc. v. J.M. Huber Corp., 274 F.R.D. 63, 87 (W.D.N.Y. 2011) (Documents not privileged where counsel's role limited to questions of clarity and technical matters in the text of a Public Service Announcement that was intended to achieve "specific business objectives." This included suggested revisions by counsel to aid in an attempt to scapegoat defendants in the litigation before the Court, i.e., to make it "even more explicit that Defendants (and, by implication, not Plaintiff) were responsible for the supposed problem.").

We respectfully request an opportunity to file a reply and that the Court hold a hearing on this motion.

---

[2] We are submitting, under seal via overnight mail, complete copies of Citi's logs, as Exhibits B-D hereto.

                                              Respectfully submitted,

                                                        /s/

                                              David R. Lurie

cc:  Counsel to Defendants (Via ECF)