UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Rohan Ramchandani,

                Plaintiff,

-against-

CitiBank National Association et al.,

                Defendants.

1:19-cv-09124 (VM) (SDA)

**OPINION AND ORDER**

**STEWART D. AARON, United States Magistrate Judge:**

Pending before the Court is a Letter Motion by Plaintiff Rohan Ramchandani ("Plaintiff" or "Ramchandani") for an Order requiring Defendants Citigroup Inc., Citicorp LLC and Citibank, N.A. (collectively, "Defendants" or "Citi") "to: (i) produce the following categories of documents withheld on . . . privilege grounds: (a) memoranda of meetings with the [U.S. Department of Justice ('DOJ')]; (b) internal records concerning the suspension and termination of Plaintiff; and (c) communications involving public relations personnel and matters; and (ii) explain the reasons for Citi's categorical withholding of virtually all documents concerning Plaintiff's termination." (Pl.'s 5/26/22 Ltr. Mot., ECF No. 100.)[1]

For the reasons set forth below, Plaintiff's Letter Motion is GRANTED IN PART and DENIED IN PART.

**BACKGROUND**

The relevant Complaint allegations are set forth in the prior Decision and Order by District Judge Victor Marrero denying Defendants' motion to dismiss Plaintiff's Complaint, *see*

---

[1] Plaintiff's Letter Motion initially was filed on May 26, 2022 at ECF No. 95, but due to a filing error later was refiled at ECF No. 100.

*Ramchandani v. Citigroup, Inc.*, No. 19-CV-09124 (VM), 2021 WL 930627, at *1-5 (S.D.N.Y. Mar. 11, 2021), and are summarized below.

Ramchandani, who began his employment at Citi in 2002, worked between 2004 and 2013 in Citi's London offices, as the European head of Citi's foreign exchange spot market ("FX Spot Market") trading desk. He was responsible for trades in euros and U.S. dollars. Ramchandani's trading involved frequent communication with traders at other financial institutions in chatrooms, often hosted by Bloomberg. These online discussions facilitated trading in the FX Spot Market. In December 2007, he joined an informal chatroom comprising traders in the euro and U.S. dollar FX Spot Market at a number of other large financial institutions. While Ramchandani asserts that the conversations in the chatroom were all above board, he acknowledges that the language used was often colorful, and employed an idiosyncratic nomenclature that only other traders would understand. The DOJ and Citi later pointed to these chatrooms as channels in which participants illegally coordinated trades, which Ramchandani denies.

Around June 2013, rumors began to spread in the press about widespread manipulation of foreign exchange rates in the FX Spot Market. The DOJ and the United Kingdom's Financial Conduct Authority ("FCA") both commenced investigations into the alleged manipulation. Citi began its own internal investigation and, as part of that investigation, on October 15, 2013, Ramchandani was interviewed by representatives of Citi, including in-house counsel and outside counsel from Cleary Gottlieb Steen & Hamilton LLP ("CGSH"). At the meeting, Ramchandani answered questions regarding his trading activities, including his chatroom communications.

A few weeks after his interview, Ramchandani was suspended from Citi. The following month, Citi provided the FCA with copies of virtually all of the Bloomberg chats in which Ramchandani had participated and informed the FCA that it had not made any specific finding as to whether Ramchandani had engaged in misconduct. Meanwhile, press reports began to make clear that criminal charges against financial institutions participating in the FX Spot Market were imminent. Ramchandani alleges that it was then, in early 2014, that Citi began a campaign to use him as a scapegoat with government investigators.

In January 2014, Ramchandani's supervisor, Jeff Feig ("Feig"), who was a highly experienced FX Spot Market trader, told Ramchandani that certain portions of his chatroom communications were grounds for termination. Despite Ramchandani's repeated requests, Feig declined to identify and discuss any of the particular communications at issue. A letter from a Citi representative that same day also failed to identify the specifically problematic communications, but stated that Citi had found a number of Ramchandani's communications to be wholly unacceptable.

Ramchandani alleges that during this time, Citi began to contact regulators as part of a calculated scheme to deflect the blame for any wrongdoing onto him. Ramchandani contends that Citi could not go to trial on any criminal charges because the trial would significantly interrupt its business, so Citi had no choice but to plead guilty. It was in Citi's interest to plead guilty to only limited charges, so as to avoid significant liability, the risk of regulatory consequences, the loss of licenses and the filing of charges against numerous senior employees. Ramchandani argues that Citi therefore attempted to limit the scope of its liability to a single culpable employee: him.

Ramchandani alleges that Citi repeatedly implicated him in communications with regulatory agencies investigating the purported conspiracy. For example, Ramchandani contends that Citi contacted the FCA on the date of his dismissal, stating Ramchandani was to be fired. Citi told the FCA that it did not feel comfortable with Ramchandani's conduct after reviewing his chatroom communications. Given that the DOJ investigation also was ongoing at the time, Ramchandani argues that Citi likely made the same disclosure to the DOJ.

Ramchandani insists that, to manage its potential exposure and limit the negative consequences that could result, Citi ultimately pled guilty to a completely fabricated crime, grounded on the purported wrongdoing of just Ramchandani. The sentencing memorandum the DOJ submitted in connection with Citi's guilty plea stated that it relied on the cooperation of insiders more than in other antitrust conspiracy investigations given the complexity and volume of chatroom records. Thus, Citi assisted the DOJ in identifying the most appropriate chatrooms and currencies and decoding the relevant communications. Ramchandani concludes from the statements made in the sentencing memorandum that the DOJ relied upon Citi to build a case focused exclusively upon his conduct.

On January 10, 2017, the DOJ announced Ramchandani had been indicted along with two other chatroom participants from other financial institutions. Ramchandani insists that he was indicted because of Citi's false statements putting him at the center of the case. Ultimately, after trial in October 2018, Ramchandani was acquitted.

**PROCEDURAL HISTORY**

On October 2, 2019, Ramchandani commenced this action by filing his Complaint. (Compl., ECF No. 1.)[2] The Complaint alleges a single cause of action against Citi for malicious prosecution. (*See id*. ¶¶ 197-98.)

Citi moved to dismiss the Complaint and, on March 11, 2021, Judge Marrero denied Citi's motion. *See Ramchandani*, 2021 WL 930627, at *9. In his Decision and Order, Judge Marrero addressed the elements of a malicious prosecution claim under New York law: (1) the initiation of an action by the defendant against the plaintiff, (2) begun with malice, (3) without probable cause to believe it can succeed, (4) that terminates in favor of the plaintiff. *See id*. at *6-9.

With respect to the element of initiation of the action, *i.e.*, in this case, furnishing false information to law enforcement authorities, Judge Marrero stated that "Citi considered Ramchandani's chatroom communications problematic, and Citi cooperated with the DOJ by identifying relevant chatroom communications and decoding them." *Id*. at *7. Judge Marrero then held, as follows:

> Affording Ramchandani the benefit of all reasonable inferences and resolving any doubts in his favor, the[] [Complaint] allegations suggest that when Citi told the DOJ that Ramchandani had engaged in wrongdoing, it knew this information was false and so acted in order to serve its interest in minimizing liability and public exposure. Especially at this stage, when the Court is assessing only the legal feasibility of Ramchandani's claim, and not the weight of the evidence, the[] [Complaint] allegations constitute enough to sustain the first element of a malicious-prosecution claim.

*Id*. at *8.

---

[2] Due to a filing error, the Complaint later was refiled at ECF No. 17.

By Order, dated April 26, 2022, the Court directed that Citi provide a document-by-document privilege log for, among other things, outside counsel's notes and memoranda of discussions with the DOJ. (4/26/22 Order, ECF No. 78, ¶ 2.) The April 26 Order also provided that, if the parties could not resolve any disputes regarding assertions of privilege, they could identify up to 50 documents for the Court's *in camera* review. (*Id*. ¶ 4.)

Following receipt of Citi's privilege log, by letter dated May 23, 2022, Ramchandani identified 50 documents for *in camera* review. (Pl.'s 5/23/22 Ltr., Schedule A, ECF No. 93-1.) According to Ramchandani, the documents selected by him included, among others, "fact [memoranda] containing a narrative of meetings between Citi and the DOJ" and "emails/memos of meetings/communications at which public relations personnel were present." (Pl.'s 5/23/22 Ltr., ECF No. 93.) On May 24, 2022, the Court received from Citi a thumb drive containing the documents identified by Plaintiff (*see* 5/24/22 Text Only Order, ECF No. 94), and the Court subsequently reviewed them.

On May 26, 2022, Plaintiff filed the instant motion seeking, among other things, to compel Citi to produce documents withheld on the basis of the attorney-client privilege and work product doctrine, including (a) memoranda of meetings with the DOJ; (b) internal records concerning the suspension and termination of Plaintiff; and (c) communications involving public relations personnel and matters. (*See* Pl.'s 5/26/22 Ltr. Mot. at 1-3.) On June 1, 2022, Citi filed its opposition. (Citi 6/1/22 Opp., ECF No. 96.) On June 3, 2022, Plaintiff filed his reply. (Pl.'s 6/3/22 Reply, ECF No. 101.)

On June 4, 2022, the Court entered an Order for Citi to show cause why it did not waive any privilege or work product protection associated with the annotated chats that CGSH walked

6

through during a meeting with the DOJ. (6/4/22 Order, ECF No. 102.) On June 8, 2022, Citi filed its response to the Court's June 4 Order. (Citi 6/8/22 Ltr., ECF No. 104.)[3] On June 10, 2022, Plaintiff filed his opposition to Citi's June 8 letter. (Pl.'s 6/10/22 Ltr., ECF No. 108.)

## LEGAL STANDARDS

### I. Attorney-Client Privilege

Under New York law,[4] there is statutory protection for attorney-client communications set forth in Article 45 of the New York Civil Practice Law and Rules:

> Unless the client waives the privilege, an attorney or his or her employee, or any person who obtains without the knowledge of the client evidence of a confidential communication made between the attorney or his or her employee and the client in the course of professional employment, shall not disclose, or be allowed to disclose such communication, nor shall the client be compelled to disclose such communication . . ..

N.Y. C.P.L.R. § 4503(a)(1). For the privilege to apply, the communication from the attorney to the client must be made "for the purpose of facilitating the rendition of legal advice or services, in the course of a professional relationship." *Rossi v. Blue Cross & Blue Shield of Greater N.Y.*, 73 N.Y.2d 588, 593 (1989). The communication itself must be "primarily or predominantly of a legal character." *Id*. at 594. "The critical inquiry is whether, viewing the lawyer's communication in its full content and context, it was made in order to render legal advice or services to the client."

---

[3] The version of Citi's June 8 letter filed at ECF No. 104 was redacted. On June 9, Citi filed a motion to seal its June 8 letter (ECF No. 105), and also filed under seal an unredacted version of its June 8 letter (ECF No. 106).

[4] New York law governs the assertion of the attorney-client privilege since Plaintiff is asserting a claim under New York law for malicious prosecution. *See* Fed. R. Evid. 501.

*Spectrum Sys. Int'l Corp. v. Chem. Bank*, 78 N.Y.2d 371, 379 (1991); *accord Shih v. Petal Card, Inc.*, No. 18-CV-05495 (JFK) (BCM), 2021 WL 4655921, at *4 (S.D.N.Y. Oct. 6, 2021).

"A corporation's communications with counsel, no less than the communications of other clients with counsel, are encompassed within the legislative purposes of CPLR 4503, which include fostering uninhibited dialogue between lawyers and clients in their professional engagements, thereby ultimately promoting the administration of justice." *Rossi*, 73 N.Y.2d at 592. "The privilege applies to communications with attorneys, whether corporate staff counsel or outside counsel." *Id*. Nonetheless, because in-house counsel may have "mixed business-legal responsibility . . . their day-to-day involvements in their employers' affairs may blur the line between legal and nonlegal communications." *Id*. Accordingly, given that "privilege obstructs the truth-finding process and its scope is limited to that which is necessary to achieve its purpose . . . the need to apply it cautiously and narrowly is heightened in the case of corporate staff counsel, lest the mere participation of an attorney be used to seal off disclosure." *Id*. at 593 (citation omitted); *accord Coventry Capital US LLC v. EEA Life Settlements Inc.*, No. 17-CV-07417 (VM) (SLC), 2021 WL 4312026, at *3 (S.D.N.Y. Sept. 22, 2021).

"[D]isclosure of attorney-client communication to a third party or communications with an attorney in the presence of a third party, not an agent or employee of counsel, vitiates the confidentiality required for asserting the privilege." *Allied Irish Banks, P.L.C. v. Bank of Am., N.A.*, 252 F.R.D. 163, 168 (S.D.N.Y. 2008) (quoting *Delta Fin. Corp. v. Morrison*, 13 Misc. 3d 441, 444-45 (Sup. Ct., Nassau County, 2006)). Under New York law, "the burden of establishing any right to protection [under the attorney-client privilege] is on the party asserting it; the protection claimed

must be narrowly construed; and its application must be consistent with the purposes underlying the immunity." *Spectrum Sys.*, 78 N.Y.2d at 377 (citation omitted).

**II.     Work Product Doctrine**

"Federal law governs the applicability of the work-product doctrine in all actions in federal court." *Wultz v. Bank of China Ltd.*, 304 F.R.D. 384, 393 (S.D.N.Y. 2015) (citing *Allied Irish Banks, P.L.C.*, 252 F.R.D. at 173). Federal Rule of Civil Procedure 26(b)(3) codifies the doctrine in part, providing that "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)," unless "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3).

"[T]he work-product doctrine is distinct from and broader than the attorney-client privilege." *In re Grand Jury Proc.*, 219 F.3d 175, 190 (2d Cir. 2000) (citation omitted). The work product doctrine is designed "to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries." *United States v. Adlman*, 134 F.3d 1194, 1196 (2d Cir. 1998) (quoting *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947)). The doctrine protects "factual material, including the result of a factual investigation" — commonly referred to as fact work product — as well as material that "reveals the 'mental impressions, conclusions, opinions, or legal theories of an attorney or other representative'" — commonly referred to as opinion work product. *In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d 180, 183 (2d Cir. 2007). The party asserting work product protection must demonstrate that the material at issue "(1) [is] a document or a tangible

9

thing, (2) that was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by his representative." *Allied Irish Banks, P.L.C.*, 252 F.R.D. at 173 (citation omitted).

"The Second Circuit has interpreted the 'in anticipation of litigation' requirement broadly." *Nat'l Cong. for Puerto Rican Rts. v. City of New York*, 194 F.R.D. 105, 108 (S.D.N.Y. 2000). "In anticipation of litigation" means that "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Adlman*, 134 F.3d at 1202 (citation omitted).

A substantial need exists "where the information sought is essential to the party's defense [or, in the case of a plaintiff, by logical extension, the party's prosecution], is crucial to the determination of whether the defendant could be held liable for the acts alleged, or carries great probative value on contested issues." *Gucci Am., Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 74-75 (S.D.N.Y. 2010) (internal quotation marks and citations omitted). The burden to demonstrate substantial need is on the party seeking production. *See Obeid v. La Mack*, No. 14-CV-06498 (LTS) (MHD), 2015 WL 5581577, at *3 (S.D.N.Y. Sept. 16, 2015).

If a document reflects mental processes of an attorney, even a showing of "substantial need" and "undue hardship" may not suffice to set aside the presumptive immunity of the material from disclosure. *See, e.g.*, *Adlman*, 134 F.3d at 1197, 1204 (discussing opinion work product). Opinion work product receives higher protection so that litigation strategy is not revealed, and a party seeking to discover it must show "extraordinary justification." *Strougo v. BEA Assocs.*, 199 F.R.D. 515, 521 (S.D.N.Y. 2001) (citation omitted).

"When materials are disclosed to a governmental authority to forestall prosecution or to obtain lenient treatment, the purpose of such a disclosure is 'foreign to the objectives underlying

10

the work-product doctrine.'" *Bank of Am., N.A. v. Terra Nova Ins. Co.*, 212 F.R.D. 166, 172 (S.D.N.Y. 2002) (quoting *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1429 (3d Cir. 1991)). "In such a situation, work product protection is waived not only as to the governmental authority but also as to all other adversaries." *Id*.

## DISCUSSION

I. **Memoranda (And Emails) Of Meetings With The DOJ**

The documents of meetings with the DOJ that Plaintiff seeks are memoranda and emails authored by CGSH, which acted as outside counsel to Citi (*e.g.*, Documents 19 through 33, 49 and 50 of Plaintiff's Schedule A). Based upon its careful review of the parties' submissions, including the Court's *in camera* review of the documents provided, and the June 1, 2022 Declaration of CGSH partner, Jonathan S. Kolodner ("Kolodner") (Kolodner 6/1/22 Decl., ECF No. 96-3), the Court finds that CGSH's memoranda and emails containing the content of what was discussed at meetings with the DOJ are subject to the work product doctrine. These documents plainly were prepared by CGSH in anticipation of litigation. *See* Fed. R. Civ. P. 26(b)(3); *see also United States v. Jacques Dessange, Inc.*, No. 99-CR-01182 (DLC), 2000 WL 310345, at *3 (S.D.N.Y. Mar. 27, 2000) (applying work product doctrine to documents prepared by criminal defense counsel). In order for Plaintiff to obtain production of these work product documents, Plaintiff must show that he has a substantial need for the documents to prepare his case and cannot, without undue hardship, obtain their substantial equivalent by other means. *See* Fed. R. Civ. P. 26(b)(3).

Plaintiff contends that he has a substantial need for these documents because "Citi's statements to the DOJ regarding Mr. Ramchandani's conduct are highly significant," stating that "notes reflecting Citi's statements about, and characterizations of, the chat records during DOJ

11

meetings are potentially highly probative." (*See* Pl.'s 5/26/22 Ltr. Mot. at 1.) To be sure, the outcome of this case turns, in part, on what Citi told DOJ about Plaintiff's chatroom communications. However, the Court finds that Plaintiff failed to show that he cannot obtain, or could not have obtained, without undue hardship, substantially equivalent information of what the DOJ was told during its meetings with Citi from sources other than the CGSH memoranda and emails for the following reasons:

First, Plaintiff already has been provided with DOJ's notes of meetings with CGSH.[5] (*See* Citi 6/1/22 Opp. at 2.)

Second, on April 4, 2022, a deposition was taken in this case of a DOJ witness, Carrie Syme ("Syme"), who was present at certain meetings that CGSH had with the DOJ, including the June 11, 2014 meeting where Plaintiff's chats were addressed. (*See* Syme Dep. Tr., ECF No. 74-5; Syme Dep. Ex. 13.) During this deposition, Citi's lawyer questioned Syme about the notes that were taken of meetings with CGSH, and about Plaintiff and his chats. (*See*, *e.g.*, *id*. at 67-77.) Plaintiff had the opportunity to ask Syme at the deposition questions regarding the notes taken by DOJ and regarding what CGSH said about Plaintiff and his chats, but chose not to ask any questions. (*See id*. at 117.)

Third, Plaintiff can take the deposition of a CGSH witness as to what CGSH told the DOJ about Plaintiff and his chats.[6] (*See* 4/26/22 Order, ECF No. 78, ¶ 7.)

---

[5] One example of such notes were the notes taken at a June 11, 2014 meeting where CGSH and representatives of the DOJ were present. (Syme Dep. Ex. 13, ECF No. 106-2.) These notes reflect what DOJ took away about Plaintiff's chats that were addressed by CGSH at the meeting. (*See id*.)

[6] "Courts in this Circuit have found that 'substantial need' and 'undue hardship' do not exist where the information sought can be obtained through depositions or other discovery methods." *Government Employees Ins. Co. v. Saco*, No. 12-CV-05633 (NGG) (MDG), 2013 WL 5502871, at *2 (E.D.N.Y. Oct. 2, 2013).

Fourth, on March 4, 2021, Plaintiff's counsel in the enforcement action brought by the Office of the Comptroller of the Currency ("OCC") was provided an oral proffer by CGSH of what was discussed during seven meetings with the DOJ on June 11, 2014, October 22, 2014, November 12, 2014, February 4, 2015, February 19, 2015, March 9, 2015 and April 19, 2015. (*See* Kolodner 6/1/22 Decl. ¶ 8.)

Fifth, a written Stipulation was prepared by the OCC and Plaintiff's counsel in the OCC action containing what Citi told the DOJ during the seven meetings held in 2014 and 2015 (*see* OCC Stip., ECF No. 74-4),[7] and the Court already has held that Plaintiff may ask questions about the OCC Stipulation at the CGSH deposition. (*See* 4/26/22 Order ¶ 11.)[8]

Thus, Plaintiff had the opportunity to obtain, has obtained and/or still may obtain information that is substantially equivalent to the information contained in the CGSH work product documents. Accordingly, the Court finds that Citi need not produce Documents 19 through 33, 49 and 50 of Plaintiff's Schedule A.[9]

---

[7] One of the signatories to the OCC Stipulation was Grant Swanson ("Swanson"), an OCC enforcement counsel. (*See* OCC Stip. at 24.) Swanson himself attended the June 11, 2014 meeting that CGSH attorneys had with the DOJ, at which Plaintiff's chats were discussed, so had knowledge of what the DOJ was told about the chats. (*See* Syme Dep. Ex. 13 at GOV0075.)

[8] Plaintiff's argument that Citi waived the work product protection of CGSH's documents due to the OCC Stipulation (*see* Pl.'s 5/26/22 Ltr. Mot. at 2) is baseless. Plaintiff's counsel in the OCC proceeding agreed not to seek production of CGSH documents in exchange for the proffer that formed the basis for the OCC Stipulation. (*See* Kolodner 6/1/22 Decl. ¶ 7 & Ex. 1.)

[9] The Court also separately finds that, since Plaintiff was not discussed during the meetings/calls that are covered in Documents 29, 32, 33 and 50, Plaintiff would not have a need for these documents, in any event.

II.  **Communications With Public Relations Personnel**

In seeking the disclosure of communications between Citi's counsel and internal public relations ("PR") personnel, Plaintiff "submit[s] that the presence of PR personnel strongly suggests that attorneys were present, not for providing legal advice, but to facilitate the scapegoating scheme." (Pl.'s 5/26/22 Ltr. Mot. at 3.) The Court carefully has reviewed the PR documents selected by Plaintiff for *in camera* review and finds that, in the main, they are subject to the attorney-client privilege since they reflect communications made for the purpose of facilitating the rendition of legal advice.[10] "Courts have recognized that attorneys who have advised their clients on public relations matters continued to render legal advice where '[t]he legal ramifications and potential adverse use of such communications were material factors in the development of the communications.'" *Leber v. Citigroup 401(K) Plan Inv. Comm.*, No. 07-CV-09329 (SHS) (DF), 2015 WL 6437475, at *3 (S.D.N.Y. Oct. 16, 2015) (citations omitted).

At bottom, the Court finds that Citi is entitled to withhold from production privileged communications with its PR personnel. The Court makes the following rulings with respect to the documents that it reviewed *in camera*:

**Documents 1, 2, 4, 8, 11, 17, 18, 34, 36, 37, 38 and 43**

These documents (or the redacted portions thereof) are privileged in their entirety.

**Document 3**

The most recent email in the chain (sent "Tue 15/10/2013 8:59:46 AM") should be unredacted and produced, since it merely transmits a newspapers article.

---

[10] As set forth below, the Court finds that certain public information contained in these documents shall be produced, as well as information that previously was provided to Plaintiff himself.

14

**Document 16**

The most recent two emails in the chain (sent "Tue 15/10/2013 9:45:31 AM" & "Tuesday, October 15, 2013 03:59 AM") should be unredacted and produced, since they merely transmit a newspaper article.

**Document 35**

Plaintiff himself is copied on the two emails in this document that contain text. If Citi wishes to continue to assert privilege as this document, it shall show cause in writing within seven days as to why such this document should be withheld from Plaintiff.

**III.   Documents Concerning Suspension And Termination Of Plaintiff**

Plaintiff complains that Citi "has purported to cloak" all the documents related to the suspension and termination of Plaintiff "under a cloak of privilege." (*See* Pl.'s 5/26/22 Ltr. Mot. at 2.) Citi states that it "has produced hundreds of non-privileged documents on this topic." (*See* Citi 6/1/22 Opp. at 2.) Regardless, the Court carefully has reviewed the subject documents selected by Plaintiff for *in camera* review and finds that, in the main, they are subject to the attorney-client privilege since they reflect communications made for the purpose of facilitating the rendition of legal advice.[11] *See Miteva v. Third Point Mgmt. Co.*, 218 F.R.D. 397, 397-98 (S.D.N.Y. 2003) (privilege applied to communications with attorney relating to reasons for employee's termination).[12]

---

[11] As set forth below, the Court finds that an email sent by Plaintiff himself shall be produced.

[12] To the extent that Plaintiff requests in its Letter Motion an explanation from Citi of "the reasons for Citi's categorical withholding of virtually all documents concerning Plaintiff's termination" (*see* Pl.'s 5/26/22 Ltr. Mot. at 1), such request is denied as moot, given the explanation provided in Citi's opposition. (*See* Citi 6/1/22 Opp. at 2-3.)

15

At bottom, the Court finds that Citi is entitled to withhold from production privileged communications regarding the suspension and termination of Plaintiff. The Court makes the following rulings with respect to the subject documents that it reviewed *in camera*:

**Documents 6, 7, 13 and 15**

These documents (or the redacted portions thereof) are privileged in their entirety.

**Document 14**

In this email chain, the email that was sent on Thursday, October 31, 2013 at 2:10 PM appears to have been inadvertently sent to Plaintiff himself. If Citi wishes to continue to assert privilege as to the portion of this document that was sent to Plaintiff, it shall show cause in writing within seven days as to why such portion of this document should be withheld from Plaintiff.

**Document 42**

The email from Ramchandani (sent "Wed 15/01/2014 6:13:32 PM") should be unredacted and produced.

IV.   **Other Documents Reviewed *In Camera***

The Court makes the following rulings with respect to the remainder of the documents submitted for its *in camera* review:

**Documents 5, 9, 10, 12, 39, 40, 41, 44, 45, 46, 47 and 48**

These documents (or the redacted portions thereof) are privileged in their entirety.

**Annotated Chats**

During the Court's *in camera* review of CGSH's memoranda regarding meetings with the DOJ, the Court observed that one of the memoranda identified as Document 19 on Plaintiff's Schedule A (ECF No. 93-1), referred to "annotated chats" that were discussed by CGSH with the

DOJ, and stated that, at a meeting at which DOJ was present, which meeting occurred on June 11, 2014, CGSH "walked the group through the annotations" for many of the chats. (*See* 6/4/22 Order at 1.) Thus, the Court ordered that Citi show cause why any privilege and/or work product protection associated with the annotated chats had not been waived. (*See id*. at 2.) The Court also ordered that Citi provide the Court with the annotated chats for *in camera* review. (*See id*.)

In response, Citi filed a June 9, 2022 Declaration from Kolodner (*see* Kolodner 6/9/22 Decl., ECF No. 106-1), and sent to the Court a thumb drive containing the annotated chats. In his June 9 Declaration, Kolodner explained that, "[i]n order to prepare [themselves] for the meeting with the DOJ, [the CGSH attorneys] drafted annotations on a copy of each chat to record [their] mental impressions of and potential explanations and messaging about the chat language." (*See id*. ¶ 5.) He further explained that, "in walking the DOJ attorneys through the chat language at the June 11, 2014 meeting," the CGSH attorneys "did not utilize each of the annotations made on each chat," and that, "for the annotations that [they] did consult, [they] did not treat the annotations as a script and did not read them verbatim." (*See id*. ¶ 6.) Moreover, Kolodner stated that "[i]n addition to the annotations interpreting the chat language, [CGSH] attorneys also included on [their] internal annotated versions longer analyses of the chats, which include summaries of [CGSH's] key mental impressions of the chats and [CGSH's] opinions concerning each chat as a whole." (*See id*. ¶ 6.) Finally, of relevance to the issue of waiver, Kolodner stated that CGSH "did not show the annotated chats to the DOJ or any other regulator," and that CGSH did not "produce the annotated chats to the DOJ or to anyone else." (*See id*. ¶ 9.)

Based upon its careful review of the parties' submissions, including the Court's *in camera* review of the annotated chats, and review of Kolodner's June 9, 2022 Declaration, the Court finds

that the annotated chats are subject to the work product doctrine. These documents plainly were prepared by CGSH in anticipation of litigation. *See* Fed. R. Civ. P. 26(b)(3). Moreover, since they reflect mental impressions of CGSH attorneys, they are opinion work product and thus are entitled to heightened protection.

Based upon Kolodner's sworn statements, the Court finds that Citi did not waive work product protection. The annotated chats themselves were not produced or shown to the DOJ. (*See* Kolodner 6/9/22 Decl. ¶ 9.) Rather, the annotated chats were used as a guide by the CGSH attorneys in their oral presentations in which they explained the meaning of the terms used and/or significance of the statements made to pertinent issues in the investigation (*See id*. ¶¶ 8-9.) In these circumstances, CGSH's statements to the DOJ about the chats did not effect a waiver of work product protection with respect to the annotated chats. *See United States v. Treacy*, No. 08-CR-00366 (JSR), 2009 WL 812033, at *2 (S.D.N.Y. Mar. 24, 2009) ("[T]he Court . . . concluded that the overwhelming bulk of the statements made by [attorneys] to the Government were summaries, impressions, and conclusions that did not effectuate any general waiver").

The facts in *Terra Nova* (*see* Pl.'s 6/10/22 Ltr. at 2 (citing *Terra Nova*, 212 F.R.D. at 174-75)) are distinguishable from the facts in this case. In *Terra Nova*, waiver of work product protection was found in circumstances where a representative of a consulting firm retained by defense counsel could not "remember the specifics of his presentation to the governmental authorities but concede[d] that his presentation disclosed to them the full scope of what he had learned" and, in any event, the defendant was not compelled to produce opinion work product. *Terra Nova*, 212 F.R.D. at 175. Here, based upon Kolodner's sworn statements, the annotated chats were not shared with the DOJ. Moreover, based upon the Court's review of the annotated

chats, they contain opinion work product, and the Court finds that Plaintiff has not shown "extraordinary justification" for production of the annotated chats. *See Strougo*, 199 F.R.D. at 521.

## CONCLUSION

By reason of the foregoing, Plaintiff's Letter Motion (ECF No. 100) is GRANTED IN PART and DENIED IN PART. Citi need only produce Documents 3, 16 and 42 in partially unredacted form. In addition, if Citi wishes to continue to assert privilege as to Document 14 and 35, it shall show cause in writing within seven days as to why these documents should be withheld from Plaintiff.

Citi's motion to seal filed at ECF No. 105 is GRANTED since the Court finds that the reasons stated by Citi for sealing the redacted portions of Citi's June 8, 2022 letter and accompanying exhibits filed at ECF 104, which were designated "Highly Confidential" under the Protective Order entered in this case, are valid reasons for sealing.

**SO ORDERED.**

Dated:   New York, New York
         June 15, 2022

_____
STEWART D. AARON
United States Magistrate Judge