M6d2RamC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------x

ROHAN RAMCHANDANI,

                    Plaintiff,                    New York, N.Y.

              v.                                  19 Civ. 9124 (VM)

CITIBANK NATIONAL ASSOCIATION,
*et al.,*

                    Defendants.

-------------------------------x          Remote Conference

                                          June 13, 2022
                                          2:00 p.m.

Before:

                    HON. STEWART D. AARON,

                                          Magistrate Judge


                         APPEARANCES


GARY H. GREENBERG
     Attorney for Plaintiff


SALTO SORENSON LURIE, LLP
     Attorneys for Plaintiff
BY:  DAVID R. LURIE


GOODWIN PROCTER, LLP
     Attorneys for Defendants
BY:  MARSHALL H. FISHMAN
     LINDSAY E. HOYLE
     SAMUEL J. RUBIN
     WILLIAM J. HARRINGTON

M6d2RamC

1          THE COURT:  Good afternoon.  This is Magistrate

2    Judge Aaron.

3          This is the matter Ramchandani v. Citibank National

4    Association, 19 Civ. 9124.  I would like to please have the

5    parties identify themselves for the record, starting with

6    counsel for the plaintiff.

7          MR. LURIE:  David Lurie for the plaintiff.

8          MR. GREENBERG:  And this is Gary Greenberg for the

9    plaintiff.

10         MR. FISHMAN:  Marshall Fishman, from Goodwin Procter,

11   for the Citi defendants, and with me are Samuel Rubin, William

12   Harrington, and Lindsay Hoyle from Goodwin Procter.

13         THE COURT:  Good afternoon.

14         What we are going to be addressing in this conference

15   are a couple of things.  One, the letter motion that was filed

16   by the plaintiff, it originally had been filed at ECF 95 and

17   the Clerk's Office bounced that due to a filing error.  The

18   letter motion was refiled at ECF 100.  There is also the letter

19   motion to seal that I will be granting.  In addition, I had

20   issued an order to show cause on June 4, at ECF 102, which the

21   parties have made submissions about.

22         The way that I want to proceed is I have some

23   questions about specific *in camera* documents, and obviously

24   since folks are at their computers I am hoping that the Goodwin

25   lawyers can pull these up as we go, and then I am going to give

M6d2RamC

1   the parties an opportunity to make whatever remarks they wish

2   to make about the motions pending before the Court.

3          The first issue I have, the first thing I want to

4   discuss is document no. 3, and this is from appendix A.  These

5   were the documents that were selected by the plaintiff for *in*

6   *camera* review.  And what I am focusing on in document no. 3,

7   which is the very first e-mail in the chain, and it's an e-mail

8   sent from Jeffrey French on Tuesday, and given -- it says

9   15/10/2013, which I assume means October 15, 2013, and it's

10  basically forwarding a *Wall Street Journal* article.

11         I assume Citi isn't -- I guess it's a question.  Is

12  Citi seeking to argue that that -- I'm not talking about the

13  e-mail that's earlier in the chain but, rather, I am talking

14  about the most recent e-mail, the one that was sent at 8:59:46

15  a.m.  is Citi taking the position that that e-mail is

16  privileged?

17         MR. RUBIN:  Judge, this is Sam Rubin for the

18  defendant.

19         I am trying to pull up the exact document that your

20  Honor referenced right now.  But my understanding is that with

21  those types of documents, based on what you described, we

22  produced the forwarding of the news article portion but

23  redacted out the lower portion of the chain.  And I am trying

24  to pull up the one I think you referenced, no. 3, which is the

25  October 14, 2013, 16:22 portion of it I believe is the portion

M6d2RamC

1    that's redacted.  I'm trying to pull up the image.  But we

2    would be able to confirm that and identify by Bates number the

3    redacted portion where the news article itself is produced but

4    the privileged discussion below it is not.

5            THE COURT:  Okay.  So in some of the documents that

6    you have provided to me for *in camera* review, you gave me the

7    unredacted and redacted.  This one, it was just this document,

8    which indicates to me that the document was withheld in toto.

9    To the extent that this particular e-mail was produced

10   elsewhere, that is not transparent to me, so I am just going to

11   be ruling that this document no. 3 should be -- that e-mail

12   should be unredacted.

13           MR. RUBIN:  Understood, your Honor.  I believe it has

14   been produced, but we will reproduce it consistent with that

15   order.  Thank you, your Honor.

16           THE COURT:  All right.  My next is document no. 14,

17   and what that is is an individual named Paul Ferguson on

18   October 31, 2013, sends an e-mail to Rohan Ramchandani, and

19   then I think realizes that -- and it is marked "FX

20   Investigations Privileged and Confidential."  I believe there

21   is another individual who has the name Rohan, and what's

22   happened here is that this individual inadvertently sent the

23   e-mail to the plaintiff himself.

24           And my question for you is, is Citi seeking to assert

25   privilege over that Ferguson to Ramchandani October 31, 2013?

M6d2RamC

```
1    It is document no. 14.  It is the third to last e-mail in the
2    chain.  There are other ones that come before it that
3    Mr. Ramchandani, assuming he received this e-mail, would have
4    seen.  I am not suggesting that the later two e-mails, which
5    appear to be sent to lawyers, are producible, but I want to
6    hear Citi's position on the e-mail that was sent to Ramchandani
7    himself.
8        MR. RUBIN:  Our position is that that is privileged.
9    It was -- as your Honor has identified, there was an
10   inadvertent -- not a production during discovery, but an
11   inadvertent transmission contemporaneously, because the general
12   counsel of Citigroup also had the name -- at the time had the
13   name Rohan, and this was inadvertently sent to Rohan
14   Ramchandani when it was intended for Rohan Weerasinghe, the
15   general counsel of Citigroup.
16       It was, to my understanding, also I believe
17   technologically clawed back.  I don't believe the transmission
18   ever made its way entirely to Mr. Ramchandani, so I don't
19   believe the information was disseminated.  But in any event, it
20   was an inadvertent disclosure and, yes, we are asserting
21   privilege over it.
22       (Court reporter confers)
23       THE COURT:  For the sake of the court reporter if
24   everyone could please identify themselves before they speak
25   each time that would be helpful.
```

M6d2RamC

1          So, Mr. Rubin, what I am going to be ruling on this

2     is, I am going to give you a week to set forth what your

3     position is and then I am going to give plaintiff an

4     opportunity to respond to it.  I obviously understand what you

5     are saying, but the reason I am giving plaintiff an opportunity

6     to respond is perhaps his client will indicate that he received

7     this e-mail and somehow relied on -- I don't know what he will

8     claim, but I want to give him the opportunity to take a

9     position.

10          And just so plaintiff's counsel is aware, I am

11     obviously not going to disclose its contents just because I may

12     in fact find that it is properly privileged.  It was an e-mail

13     sent on October 31, 2013, at 2:10 p.m., from Paul Ferguson to

14     Mr. Ramchandani, with the subject "FX Investigations Privileged

15     and Confidential."

16          All right.  I'm now going to move on to document no.

17     16.  I assume that the explanation that was given with respect

18     to document 3 would apply to this as well.  It's essentially

19     that same *Wall Street Journal* article that's being forwarded in

20     the first two e-mails in this chain, once by Mr. French and

21     once by Mr. Forese.  So I am going to order that those two

22     e-mails in the chain be unredacted.

23          And by the way, all of this is going to be in an order

24     that I issue, so you don't need to be -- obviously feel free to

25     take whatever notes you wish to take, but the order that I

M6d2RamC

1    issue will have this in there in addition to my legal analysis.

2                The last two documents I want to address before I turn

3    the floor over to the parties, document no. 35 contains --

4    there is one e-mail at the top where merely something is being

5    forwarded without any content.  That, to me, obviously, isn't

6    privileged.  But the earlier ones in the chain——and these are

7    from June 10 and June 11 of 2013——this doesn't appear to be

8    inadvertent.  Mr. French is forwarding a Bloomberg story about

9    front-running around the WMR FX rate, and he is sending it to a

10   number of individuals, including Rohan Ramchandani.  So

11   obviously I am happy to hear if Citi wishes to take the

12   position that it is privileged, but I think that this likely

13   was listed as privilege without seeing that Mr. Ramchandani was

14   a recipient.

15                MR. GREENBERG:  Judge, I want to think about this a

16   little further, but my understanding was that this is at a time

17   when Mr. Ramchandani was still employed at the company, and

18   this was an e-mail that was being sent by Mr. French, who is in

19   the press communications department, to a number of business

20   individuals, including Mr. Ramchandani, who was still employed

21   at the company at the time, as well as a number of folks in

22   legal.  So I don't think it is the same situation before, but I

23   don't necessarily think it destroys the privilege merely

24   because Mr. Ramchandani was on it at the time.

25                THE COURT:  Well, you can't keep secret -- although it

M6d2RamC

1    may very well be if Citi were to be involved in litigation

2    with, I will call it, party X, that Citi could claim privilege

3    against party X.  But you can't claim privilege against Rohan

4    Ramchandani if Rohan Ramchandani, as you admit, was a recipient

5    of the document.  I will give you an opportunity -- I will put

6    this in the same bucket, for lack of a better term, as document

7    14 and give you an opportunity.  Obviously what I would

8    strongly suggest you do is accede to my analysis, but I will

9    give you an opportunity to address why you think this document

10   should be kept confidential from Mr. Ramchandani himself in

11   circumstances where he was a recipient of it.

12            MR. LURIE:  Your Honor --

13            MR. GREENBERG:  There -- David, just let me finish.  I

14   just want to mention --

15            MR. LURIE:  Okay.

16            MR. GREENBERG:  -- I believe the lowest e-mail in the

17   chain, on the June 10, 2013, 16:37 e-mail, your Honor, has been

18   produced at a different Bates number, but we will confirm that

19   as well, your Honor, and appreciate the opportunity to be able

20   to respond, and we may not need to respond on this one, but

21   thank you.

22            THE COURT:  All right.  Was that Mr. Greenberg or

23   Mr. Lurie?

24            MR. LURIE:  David Lurie, your Honor.  I just wanted to

25   add a query, and that is Citi -- I think we are entitled to

M6d2RamC

1    know whether Citi has withheld other documents that were sent

2    to Mr. Ramchandani, because that really came as quite a

3    surprise to me, and I would object to withholding of any

4    documents that were sent to him while he was at Citibank.

5          THE COURT:  So this will not be -- because I am

6    putting the finishing touches on my opinion and order, this

7    will not be addressed -- this point will not be addressed in my

8    opinion and order.  But the parties are ordered to order a copy

9    of this transcript and split the cost, and I am ordering

10    Citibank to disclose to plaintiff whether or not there are

11    other documents to which Mr. Ramchandani was a party that have

12    been withheld on privilege grounds and you should meet and

13    confer after those are identified, if any, and any disputes

14    obviously can be brought to me.

15          There is another document that actually falls within

16    this bucket, but what's different about this document, it's

17    document 42, is the first e-mail in the chain is actually from

18    Mr. Ramchandani himself.  On January 15, he sent an e-mail that

19    is -- the subject of which is "A Few Questions" and that -- let

20    me ask.  Is Citi claiming privilege as to e-mails sent by the

21    plaintiff himself?

22          MR. RUBIN:  Your Honor, I do not believe that we are.

23    I think this is another circumstance where the lower e-mail in

24    the thread I believe has been produced or we would be

25    producing; and the top e-mail, which is the one where it is

M6d2RamC

1    forwarded to legal counsel, Ms. Nelson is an in-house attorney

2    in the -- at Citi, is what was intended to be withheld here.

3          THE COURT:  Yes.  My ruling on this one is going to be

4    that I am just ordering that that bottom e-mail be unredacted

5    and produced.

6          MR. RUBIN:  Understood, your Honor.  It may already

7    have been, but I would need to double check that.

8          THE COURT:  Again, all I can go by is I was given

9    documents to review for *in camera* review, and this one was not

10   indicated that it was redacted.  This one was merely withheld.

11         MR. RUBIN:  Understood, your Honor.

12         THE COURT:  Okay.  All right.  So that is all that I

13   had.  Let me turn the floor over.  And by the way, I assure you

14   I carefully read everything, the parties' submissions, the *in

15   camera* submissions, so you do not need to repeat yourselves.

16   But I wanted to give both sides an opportunity to highlight

17   anything they wanted to highlight or make any remarks that they

18   wish to make.  So I am going to start by turning the floor over

19   to plaintiff's counsel.

20         MR. LURIE:  Thank you, your Honor.  This is David

21   Lurie, and my colleague Gary Greenberg will be addressing the

22   employment-related documents, but I am going to first address,

23   with the Court's permission, the notes and memoranda related to

24   meetings with the government, the government and Citibank.

25         I understand you have carefully reviewed the

M6d2RamC

1    correspondence and my first purpose here would be to address

2    any questions that you might have.  But in the absence of any

3    questions that you have at the moment, I would like to

4    highlight one point that has become clear as a through line,

5    through all of the letter briefs, including the letter briefs

6    about the annotated chats, communications, and that is, that

7    Citibank is determined to withhold documents that reflect the

8    actual statements that were made by Citibank on the one hand

9    and DOJ on the other hand in its meetings.  Those statements

10   are, for all the reasons set forth in our letter briefs and

11   also all the reasons stated in Judge Marrero's opinions, highly

12   probative.  As we have stated, the argument that those

13   materials, that is, accounts of what was said by the parties in

14   the meetings, are opinion work product are exceedingly weak for

15   the reasons that Judge Wood has explained.

16        But beyond that, Citibank has expressly not only

17   waived any claims of confidentiality with respect to those

18   materials, but they entered into an agreement to disclose

19   their -- the content of their records of what was said during

20   those meetings.  So the claim that Citibank is advancing that

21   it can withhold from the Court and from their adversaries, from

22   plaintiff, written records of what was said during these

23   meetings simply doesn't hold water, and the materials are

24   highly probative.

25        So that is the sum and substance of what we are

M6d2RamC

1    seeking.  The notes of the meetings and to the extent that

2    these annotated chats do in fact reflect what was said by

3    Citibank's lawyers during the meetings that they held with the

4    government, for the same reason, our position is that they

5    should be disclosed.  One could debate whether any opinion work

6    product component of those documents was withheld, but we are

7    not seeking opinion work product if it does exist, if it is in

8    the materials.  We are simply seeking the portions of the

9    documents that reflect what was said by the parties during the

10   meetings, and that is the sum and substance of our position on

11   this.

12             One additional point is that there has been a

13   suggestion that Citibank entered into a no-waiver agreement

14   with Mr. Ramchandani's lawyers in the OCC proceeding in which

15   the Citi's lawyer Mr. Kolodner provided a proffer.  That is

16   simply not the case.  The agreement was attached to

17   Mr. Kolodner's declaration.  We previously provided it to the

18   Court in connection with our earlier correspondence, and there

19   was no such agreement.  Citibank didn't seek it and

20   Mr. Ramchandani's counsel in the OCC proceeding certainly

21   didn't agree to it.

22             The issue in that case was a simple one.

23   Mr. Ramchandani's counsel had subpoenaed a number of Citi

24   witnesses, including its outside counsel and in-house counsel,

25   for testimony.  Citibank preferred to be able to avoid having

M6d2RamC

those witnesses testify.  They had a lot of reasons to want to

avoid their testimony, including because this case was pending

in the Southern District and they certainly knew they were

likely to be subpoenaed here, and they entered into a

strategically informed decision to make Mr. Kolodner available

for a proffer session.  But in no way did Mr. Ramchandani agree

that that would work as a -- that would constitute a no-waiver

agreement.

Unless the Court has any questions, I think I will

turn the floor over to Mr. Greenberg to address the employment

issues, employment documents.

MR. GREENBERG:  May I proceed, Judge?

THE COURT:  I don't have any questions, so go ahead,

Mr. Greenberg.

MR. GREENBERG:  Okay.  Madam Reporter, this is Gary

Greenberg speaking now.

I wanted to address the issue of documents concerning

the facts and circumstances underlying Citi's decision to

suspend and then terminate Mr. Ramchandani.

THE COURT:  Sorry.  This is Judge Aaron.  Apologies

for doing this to you, but in order for me to keep the

arguments straight and fresh in my mind, what I would like to

do is ask Citi to respond to what Mr. Lurie just said and then,

Mr. Greenberg, I will let you start over.  Okay?  Apologies for

that, but just in case Citi raises things about what Mr. Lurie

M6d2RamC

1    just said, I want to make sure I have everything fresh in my

2    mind.

3            MR. GREENBERG:  No problem, your Honor.

4            THE COURT:  So let me hear from Citi with respect to

5    just the issues that Mr. Lurie discussed.

6            MR. FISHMAN:  Thank you, your Honor.  Marshall Fishman

7    for the Citi defendants.

8            What we are talking about with respect to Cleary's

9    notes are the notes of criminal defense counsel, which deserves

10   heightened standard of protection.  Okay?  They have failed to

11   meet their burden to show both substantial need and without

12   undue hardship that they can obtain substantial equivalent

13   otherwise.  They cannot.  Because here we produced or the DOJ

14   produced, and your Honor has them, the detailed notes of the

15   June 11 meeting.  DOJ notes are 11 pages.  They go chat by

16   chat.  That is in fact the best recording of Cleary's

17   presentation, the best recording of what was important to the

18   DOJ, which is at the heart of plaintiff's claim that Citi

19   somehow misled DOJ to bring a criminal antitrust case.

20           The DOJ also gave testimony on their notes of the June

21   11 meeting, detailed testimony on these notes.  We don't hear

22   anything about that.  As we know, the plaintiff elected not to

23   ask the DOJ a single question.  This is much like the *Arias*

24   case where government notes were available and the Court held

25   that interview memoranda, then, were not since——without undue

M6d2RamC

hardship and there was no substantial need——they used the

government notes in that case.  Very similar situation.

Moreover, the DOJ notes are completely consistent with

the stipulation that Mr. Ramchandani himself entered into as to

what was said at these meetings.  The first ten pages of that

stipulation are dedicated to the June 11, 2014, meeting.  And

again, to remind the Court, Mr. Ramchandani's counsel declined

to ask the DOJ a single question.  And we know, by the way,

that the DOJ did not rely upon what Citi said before the grand

jury since Citi indisputably did not testify before the grand

jury, did not decode the chats, and Citi did not decode the

chats at trial.  So the whole argument is really a red herring.

But we have the actual notes of the Department of

Justice which set out in detail what was said, what was

important to the DOJ, and what the chats meant.  We have those.

You don't hear anything from plaintiff's counsel about those

because they can't meet a standard and the burden to show

substantial need and without undue hardship.

There is no waiver here also with respect to the OCC

stipulation.  We have a detailed declaration, which is

unrebutted, from Mr. Kolodner, and he says in that declaration

that plaintiff specifically agreed not to seek Cleary's memos

or notes or other privileged materials in exchange for Cleary's

proffer.  Again, this is unrebutted.  There is no declaration

from Ramchandani's counsel who handled that stipulation.  It is

M6d2RamC

only speculation as to what went into Cleary preparing that

declaration.  Indeed, the declaration was given explicitly

contingent upon Ramchandani's agreement not to seek production

of Cleary's work product, notes, or memos, and that's Kolodner

declaration at paragraph 11.

So there is no basis here for a finding that there is

substantial need and that without undue hardship the plaintiff

can't by equivalent means obtain the information that's in

Cleary's work product memorandum.  The notes and memoranda,

including the annotated chats, are work product of criminal

defense counsel that get a heightened standard, and indeed the

annotations that the judge has seen, your Honor has seen, are

not factual, they are not based on a witness interview.  They

are based on thoughts, impressions, and argument anticipating

what the government was going to say and also what Cleary was

going to say.  They were not verbatim transcripts, and there

has, again, been no showing that there has been any waiver

whatsoever, particularly here where there is a confidentiality

agreement between Cleary and the Department of Justice.  So

unlike the *Terra Nova* case that your Honor had cited in the

order to show cause, here we have a confidentiality agreement

which should protect any allegation of waiver.

Thank you.

THE COURT:  All right.  Mr. Lurie, I am not soliciting

any further comments, but I will give you an opportunity to

M6d2RamC

1    make --

2                  MR. LURIE:  Thank you.

3                  THE COURT:  -- you would like to make.

4                  MR. LURIE:  Thank you very much, your Honor, and I

5    would like to respond.

6                  First of all, as Judge -- as to the relevance and need

7    of these documents, we have made the showing and the showing

8    was made simply based on our complaint and Judge Marrero's

9    ruling.  What was said in those meetings goes to the heart of

10   the case.  And as Judge Wood recognized, getting one set of

11   notes is not a substitute for others.

12                  Now, if -- and let's look at what exists right now.

13   There are the DOJ notes, and we will definitely be using them

14   in this case, and there is Mr. Kolodner's -- the summary of

15   Mr. Kolodner's proffer.  Now, plaintiff's current position is

16   that we cannot use that proffer in this case.  Now the script

17   has been flipped and we are told that the proffer documents,

18   the stipulation not only can be used, we are now hearing that

19   it is an argument for why we can't get the notes.

20                  That raises an interesting question, and that is, will

21   Citi stipulate to the accuracy of the DOJ's statements about

22   what occurred during these meetings and communications?  Will

23   Citi stipulate that all the DOJ's notes are accurate and

24   complete accounts of the meetings at issue?  Will Citi

25   stipulate that the government's account, given in its

M6d2RamC

1    sentencing memo in the DOJ's case against Citibank, which we

2    cite and rely upon and the Court cited and relied upon in its

3    motion denying Citi's motion to dismiss, will they stipulate

4    that the government's account of what Citi said and did in each

5    one of these meetings is accurate and complete?  Because if

6    they do so stipulate, again, stipulate that the sentencing memo

7    is accurate and complete, stipulate that the notes are accurate

8    and complete and will not be derogated or challenged by Citi,

9    stipulate that the account of Mr. Kolodner's proffer, given in

10   the OCC case can be admitted in this case and will not be

11   challenged that its accuracy will be stipulated to by Citi,

12   then maybe we can forego getting these notes.

13          So in the absence of such a stipulation, Citi's

14   contention that it can choose to withhold the notes on which

15   Mr. Kolodner based his proffer session simply doesn't hold

16   water.  Yes, we will be using the DOJ notes, but that doesn't

17   mean that we shouldn't be entitled to the documents that formed

18   the basis for Mr. Kolodner's statements and that are about the

19   issues that are at the heart of the parties' dispute, what Citi

20   did and didn't say about Mr. Ramchandani's conduct, did and

21   didn't say.

22          THE COURT:  Mr. Lurie, I will let you continue.  I

23   want to remind you, and I am sure you recall, because it was a

24   contested issue, Citi had opposed your ability to use the OCC

25   stipulation of examined witnesses during discovery and I had

M6d2RamC

1   given you leave in a written order that hasn't been appealed to

2   use that document in questioning -- in the course of discovery.

3   I did reserve because it isn't my -- I am staying in my lane,

4   for lack of a better term, I'm leaving it --

5          MR. LURIE:  Right.

6          THE COURT:  -- up to Judge Marrero as to the issue of

7   admissibility.  But you are free to use the OCC stip, as you

8   know, in discovery in this case.

9          MR. LURIE:  No, I understand that, your Honor, and I

10  appreciate it.  But with respect, I am making a different

11  point, right?  It remains Citi's legal position, so far as I

12  know, that we cannot use the stipulation, for example, in

13  summary judgment or at trial, and Citibank certainly has not

14  stipulated, again, that that is an accurate and complete

15  account of what Mr. Kolodner said.  And Citi has not stipulated

16  that it will not challenge the accuracy and completeness of the

17  account that the DOJ provided, not only of the meeting that was

18  just referenced, which was very important, the June 24 meeting

19  in which, contrary to statements Citibank has made in the past,

20  it decoded Mr. Ramchandani -- or purported to decode, that is,

21  explain the meaning of Mr. Ramchandani's chat in detail to the

22  government, but there are other --

23         MR. FISHMAN:  Judge, this is --

24         MR. LURIE:  If I may finish?  If I may finish,

25  Marshall?  May I finish, Marshall?

M6d2RamC

1          There are other meetings in which there are notes that

2     have been provided by the government.  And again, if Citi is

3     willing to stipulate to the accuracy of the government's

4     account in its various notes, then maybe this, maybe this

5     dispute can be resolved without further ruling from the Court.

6          I'm done.  I didn't want mean to interrupt you,

7     Mr. Fishman, but I wanted to make my issue clear.

8          MR. FISHMAN:  Your Honor, Marshall Fishman.  May I

9     respond very briefly?

10          THE COURT:  Yes.

11          MR. FISHMAN:  Just to clarify, Citi is not opposed and

12     did not oppose on the merits utilizing the OCC stipulation.  We

13     were concerned that there was a protective order in place and

14     we were asking for guidance and a representation that the OCC

15     stipulation could be used in this case because it was not clear

16     to us that it could.  But we have no beef with using it as long

17     as confidentiality provisions are adhered to.  We used it at

18     length with Mr. Ramchandani at his deposition, so we have no

19     issue with that, and I just wanted to clarify the record.

20          In terms of Mr. Lurie proposing a stipulation, this is

21     the first that we are hearing of it.  We would be happy to look

22     at and perhaps something can be worked through in terms of a

23     written stipulation that would obviate any need to go further

24     on considering any production of Cleary's work product.  But we

25     would be happy to look at a proposed stipulation.  This is the

M6d2RamC

1    first we are hearing of this.

2          MR. LURIE:  Well, it is something that I am raising

3    for the first time because of the questions the Court has

4    raised and that you have raised, Mr. Fishman.

5          But to turn back to the issue, unless Citi is willing

6    to enter into such a stipulation regarding all of the

7    government's statements and not just the notes, but also the

8    government's representations to the Court in which it explained

9    what role Citi played in quote/unquote decoding

10   Mr. Ramchandani's chats, unless Citi is willing to stipulate to

11   the accuracy of the government's account, we need to see Citi's

12   notes in order to determine what was and wasn't said in these

13   meetings.

14         Now, as to -- there are -- there are a couple of other

15   things.

16         MR. FISHMAN:  May I?  May I respond to that briefly?

17   It is Marshall Fishman.

18         THE COURT:  Okay.

19         MR. LURIE:  Well --

20         MR. FISHMAN:  And that is we are putting the cart

21   before the horse.  If there is a stipulation to be proposed

22   here, let's see that stipulation.  It very well may be that we

23   can stipulate to all or most of the dispute here.  Let's see

24   it, and we can then again obviate the need for your Honor's

25   ruling on work product documents, again --

M6d2RamC

1        MR. LURIE:  Well --

2        (Indiscernible crosstalk)

3        MR. FISHMAN:  And let's see that stipulation.  Your

4   Honor, I would ask your Honor to direct Mr. Lurie to prepare

5   that stipulation, get it over to us, we will look at it ASAP

6   tomorrow, and it may be that we can be done with some of this

7   dispute, if not all of them.

8        MR. LURIE:  Well, okay, well, the stipulation will be

9   very simple.  It will be that the -- that Citibank will not

10  challenge the accuracy or completeness of any representations

11  made by the DOJ in their notes or court filings regarding --

12        MR. FISHMAN:  Your Honor, if Mr. Lurie can get us that

13  stipulation tonight, we will review it and we will review it

14  with our client tonight or tomorrow morning and we would hope

15  to get it back to the Court if it's that simple.

16        MR. LURIE:  Okay.

17        THE COURT:  I am ready to issue my ruling, so if you

18  folks want to work it out, my fear is tomorrow you are going to

19  get back to me and say we need a little more time and then I am

20  going to be asked to extend the discovery guidelines, which I

21  am loath to do.  But if you want me to give you a brief period

22  of time to try to work it out, I will do that, but reluctantly

23  I might add.

24        MR. LURIE:  I am happy to provide the stipulation

25  draft to my opposing counsel.

M6d2RamC

1          THE COURT:  Okay.  When are you going to give them the

2     draft?

3          MR. LURIE:  By 9 a.m. tomorrow, your Honor.

4          THE COURT:  Okay.  And when are the parties going to

5     tell me whether they are going to agree to it or not?  Tomorrow

6     close of business?

7          MR. FISHMAN:  Your Honor, this is Marshall Fishman.

8     We will make every effort to do that.  We do have clients to

9     speak to about whatever the stipulation says, and we will do

10     everything we can to get it to the Court by close of business

11     tomorrow if we get Mr. Lurie's stip by 9 a.m. tomorrow morning.

12          THE COURT:  Okay.  So that deals with the issue of

13     the -- and, by the way, does this deal with the issue of both

14     the memoranda and the annotated chats or is this just the

15     memoranda?  In other words, Cleary's memoranda about the

16     meetings, is that what this stip is about or does it also

17     include the annotated chats?

18          MR. LURIE:  It would be both, your Honor.

19          THE COURT:  That was Mr. Lurie speaking?

20          MR. LURIE:  Correct.  That was David Lurie speaking.

21          THE COURT:  All right.  So you need to file a letter

22     to the ECF docket by tomorrow at 5:00 indicating whether there

23     is a deal with respect to the Cleary memoranda and the Cleary

24     annotated chats.  And if there is a deal, I obviously will not

25     rule on that issue because you will have a deal.  It is going

M6d2RamC

```
1    to cause me major agita because I need to rework this document

2    which deals in substantial part with that, but I will deal with

3    it.  So what you may get is a very shortened thing that just

4    gives my rulings with respect to the other issues which we are

5    about to discuss.  But I guess I have to deal with that issue,

6    you don't.

7              So let's turn to the other issues, please.  So

8    Mr. Greenberg were you going to be speaking about -- why don't

9    you pick up where you had -- why don't you just start over on

10   your part, Mr. Greenberg.

11             MR. GREENBERG:  Okay.  Thank you, your Honor.

12             It's Gary Greenberg, Madam Reporter.

13             Yes.  I want to address the issue about documents

14   relating to Citi's -- the facts and circumstances underlying

15   Citi's decision to suspend and then terminate Mr. Ramchandani.

16   As Judge Marrero understood in denying Citi's motion to

17   dismiss, those documents are very significant to plaintiff's

18   theory that Citi made Mr. Ramchandani a scapegoat.  So we

19   requested those documents, and Citi in fact agreed to produce

20   them.  And when it started making its rolling production, I

21   looked through the documents produced and I could not find

22   documents relating to that issue.  I'm not talking about a

23   letter to -- or an e-mail to Mr. Ramchandani announcing he was

24   suspended or a letter -- or a press release saying that he had

25   been suspended.  I am talking about the decision-making
```

process, and I couldn't find any.  I raised it with Citi.  They

said two things.  One, either -- well, just wait and see, it's

coming; or it's in there, just keep looking you will find it.

Finally on March 15 we filed a letter motion, that's

ECF 60, and we said those documents are relevant, they are

material, we haven't gotten them, and we need them.  Now Citi's

response on March 18, that's ECF 61, is really important, so I

am going to quote it, and it is just a sentence.  Here's what

Citi said in its response:  "Citi has provided substantial

discovery on all issues concerning plaintiff's leave and

termination from employment at Citi."

Judge, at a minimum, that was a misleading statement

because they hadn't produced those documents.  We produced a

statement from Citi's U.K. counsel that conceded that Citi had

withheld many documents, thousands of documents in the U.K.

proceeding because essentially of a blanket privilege.  There

was an attorney present, then the document wasn't produced.

And so now it is three months later and we still don't have

those documents, those critical documents, but what we have is

a privilege log, and it looks to us from the privilege log,

although it's hard to tell, Judge, because it is so barebones,

that Citi is again asserting a blanket privilege.  Just because

an attorney was present, the documents themselves don't have to

be produced.

I think Citi's failure to tell the Court three months

M6d2RamC

1    ago that there were many such documents that were all being

2    withheld on the grounds of privilege and it said, misleading

3    the Court, that they had been produced, to me the Court would

4    be entitled to just say you waived the privilege, produce all

5    documents relating to the decision.  But at a minimum, Judge,

6    they should be required to provide a detailed account of what

7    role its attorneys played in every stage of the discipline and

8    termination process and how it constituted legal advice so as

9    to permit Citi to assert a privilege over every document in

10   this category.  So either they should all be produced or they

11   have to do a lot more to meet their burden of showing that they

12   are somehow privileged.  That's all.

13           That's all I have, Judge.

14           THE COURT:  Who is going to speak on behalf of Citi?

15           MR. FISHMAN:  Yes.  Marshall Fishman again, your

16   Honor.

17           There has never been a misrepresentation to the Court,

18   first off, as Mr. Greenberg has insinuated.  Citi has produced

19   all nonprivileged documents concerning the termination.  But I

20   would like to point out at the beginning that termination here

21   is a nonissue.  Judge Marrero did not know because it was not

22   in the complaint that Ramchandani had commenced a U.K.

23   proceeding for wrongful termination.  Nor did Judge Marrero

24   know that that action was dismissed based on findings that

25   Mr. Ramchandani's acts of misconduct were in breach of his

M6d2RamC

employment contract and his foolish, blameworthy behavior in
the chats was a cause for termination.  So that's sets the
stage here.

  But in any event, Citi did produce hundreds of
documents concerning the termination of Mr. Ramchandani.  Many
were withheld on privilege, as we have set forth.  Documents
were re-reviewed by my firm in connection with the production,
and indeed we did find some documents that we did ultimately
produce based on privilege calls that had been made in the U.K.
So this was redone here in large part.  Legal advice was given
concerning plaintiff's termination, where he started a wrongful
termination action merely two months after he was terminated in
January 2014, and given the ongoing multiple regulatory
proceedings that were happening, the investigation of the chat
room conduct and an analogy whether Mr. Ramchandani had
violated Citi policies led to the decision to terminate.  And
there were lawyers involved in these termination discussions,
and privilege was properly invoked in the U.K. and its been
properly invoked here.  And I can say that the nonprivileged
documents have been produced.  They have been produced for a
while.  And we keep hearing the same argument, and that's why
we gave you a detailed privilege log after first giving the
categorical log.  So there is just no basis for further
discovery on this issue.

  Thank you.

M6d2RamC

1                MR. GREENBERG:  Judge --

2                THE COURT:  Anything else from you, Mr. Greenberg?

3                MR. GREENBERG:  Yes, Judge, just a brief point.

4           I didn't say that Citi had misrepresented the fact.  I

5      said that what they said was misleading.  Even now, Mr. Fishman

6      says, well, we said that we have produced all documents that

7      were nonprivileged, but that's not what they wrote to you, your

8      Honor.  What they said is we have provided substantial

9      discovery on all issues concerning plaintiff's leave and

10     termination from employment at Citi.  If they had told the

11     Court and us three months ago that they were all being withheld

12     on privilege grounds, which he is now saying, we could have

13     litigated this issue three months ago and we could have had the

14     documents either produced or nonproduced and the case wouldn't

15     be delayed.  We are still waiting for those documents, Judge.

16          That's all.

17                MR. FISHMAN:  Your Honor, Marshall Fishman, if I

18     might.

19                THE COURT:  Okay.

20                MR. FISHMAN:  May I follow up?  Yes.  Again, many

21     documents have been produced that are not privileged on the

22     subject of Mr. Ramchandani's termination.  There has not been

23     an assertion of a blanket privilege.  There just has not.

24     Documents have been reviewed, analyzed, both in the U.K.

25     proceeding and here, and documents that we have determined that

M6d2RamC

1    are not privileged have been produced.

2            MR. LURIE:  If I might——this is Mr. Lurie——I just

3    wanted to address two points that Mr. Fishman made that are

4    inaccurate, and it is important for the Court to recognize

5    that.

6            First of all, U.K. counsel stated that virtually no

7    documents related to the process of deciding whether or not to

8    discipline or fire Mr. Ramchandani were produced.  That remains

9    the case.  We have asked Citi to identify even one document in

10   their production that relates to the decision-making process.

11   That's the way it was put in the U.K. lawyers' affidavit.  They

12   haven't pointed us to any.  I am aware of about two or three.

13   They simply haven't been produced.

14           And Mr. Fishman's suggestion that it is a nonissue is

15   simply not accurate.  No, Mr. Ramchandani's case was not

16   dismissed by the U.K. Court and it is -- the Court can read the

17   decision and reach your own conclusions, but that is a

18   mischaracterization of that decision.  And it is not a reason

19   for Citibank to withhold these documents or to give -- cut them

20   any slack regarding their decision to withhold virtually all of

21   them.

22           THE COURT:  All right.  I think there is one other

23   category.  I didn't know whether plaintiff wanted to address

24   those or not.  That is the press-related documents.

25           MR. LURIE:  Yes, your Honor.  This is David Lurie

M6d2RamC

1    speaking.

2         If I may, on those documents, now, again, these are a

3    category of documents that, like the materials related to

4    Mr. Ramchandani's dismissal, and in fact some of them do relate

5    to Mr. Ramchandani's dismissal, that Judge Marrero recognized

6    are highly probative and relevant in this case and they are

7    probative because -- and I do want to address only for one

8    minute the factual background, because it is highly relevant

9    because when he was fired, Mr. Ramchandani was expressly

10   instructed not to speak to the press because there were ongoing

11   government investigations, and Citibank's HR department told

12   him that he should not speak to the press and that Citi would

13   not be speaking to the press.  But in fact, and this is

14   detailed in our complaint based on the few documents we have

15   received on this, and we received them through the equivalent

16   of a FOIA request in the U.K.  Citibank's PR department, and

17   specifically Ms. Apsilos and Mr. French—so those are some

18   names with which you are familiar your Honor—embarked on what

19   they called a no-fingerprints plan to get material into the

20   press about Mr. Ramchandani's firing, and specifically to

21   identify him as a wrongdoer and as the sole wrongdoer at

22   Citibank.  That story, that no-fingerprint story is at the

23   heart of the parties' dispute because it is the very same claim

24   that Citibank made to the government in connection with the

25   investigation that ultimately led to Citibank's guilty plea,

M6d2RamC

1    that is, that Mr. Ramchandani was a wrongdoer and he was the

2    sole wrongdoer.

3           Now, Citibank's claim is that the materials that they

4    have withheld——and there are many of them——were withheld

5    because they reflected communications between Citibank's

6    counsel on the one hand and the PR people instructing them not

7    to communicate with the press about the subject matter of the

8    then ongoing government investigation, and that is in

9    Citibank's June 1 submission to the Court, that is, that these

10   were communications about Citibank putting the kabash on the PR

11   people and telling them not to go to the press and speak to

12   them about the subject of the government investigations.  We

13   know not only were the PR people speaking about the government

14   investigations, they did so repeatedly, over a multiyear

15   process, and they did so by means of talking points that they

16   shared with the lawyers.  So the proposition that these

17   communications were for a strictly legal purpose of telling the

18   PR people not to speak to the press, it is not only not

19   credible, it is just not true.  And as your Honor identified --

20   stated in a telephonic conference we had two months ago and as

21   the precedents recite, if there is a nonlegal purpose for

22   communications with PR people, including in-house PR people,

23   specifically as one Court put it, to burnish the reputation of

24   the corporate defendant and potentially tarnish the reputation

25   of other parties, then we are in the heart of a nonlegal

M6d2RamC

1    purpose for the communications, and that is in fact what was

2    going on here based on the information that we had, that is,

3    that the Citibank communications were part of this effort to

4    get this information out to the press.

5            And I want to -- one time period that is highly

6    relevant is the time period we were dealing with a few minutes

7    ago, the time period of Mr. Ramchandani's firing.  Because,

8    again, Citibank's PR people -- human resources people told

9    Mr. Ramchandani don't speak to the press.  They then went out

10   to the press, they were identified as the source of the

11   information in a press report.  And then that caused a lot of

12   *agita* at Citibank because Mr. Ramchandani's former boss was

13   upset because he is the one who had told Mr. Ramchandani that

14   you shouldn't be speaking to the press and Citibank wouldn't.

15   And he felt that he had been used as a mechanism for

16   misrepresentations to Mr. Ramchandani and because Citibank

17   didn't want the world to know that they were using their PR

18   people to advance this argument that, again, is the very same

19   argument that they were advancing before government regulators,

20   including the DOJ, what Judge Marrero called the scapegoating

21   of Mr. Ramchandani.

22           So that's the relevance of these documents and the

23   reason that we question Citibank's contention that in many,

24   many documents that they withheld involving communications with

25   Citibank, people solely related to efforts that tell -- ensure

M6d2RamC

1    that the PR people wouldn't be speaking to the press about

2    Mr. Ramchandani.

3              THE COURT:  All right.  Who is going to speak on

4    behalf of Citi?

5              MR. FISHMAN:  It is Marshall Fishman.  Thank you, your

6    Honor.

7              There is no doubt that Citi's employees in its own PR

8    department, not an outside PR firm, unlike many of the cases,

9    such as, *Signet*, consulted with in-house lawyers to ensure that

10   public statements did not impact Citi's litigation strategy

11   regarding ongoing regulator investigations and also to comply

12   with regulator directions not to disseminate information.  So

13   it was very different from hiring an outside PR firm to

14   quote/unquote burnish a company's image and run a PR strategy

15   independent of legal strategy.

16             Here, there was always a litigation purpose; ensuring

17   that public statements would have no impact on the

18   investigation by multiple regulators, including DOJ.  They

19   wanted to comply with the regulators' continuing directives not

20   to disseminate information about the investigation.  This is

21   akin to the situation in *Universal Standard* and unlike the

22   situation in *Signet*.

23             For these reasons, your Honor, the documents that have

24   been designated as privileged and confidential between

25   attorneys and folks, employees in the PR department are deemed

M6d2RamC

 1  to be privileged, and nothing Mr. Lurie has said seeks to

 2  vitiate that privilege or in any way undercuts the claim of

 3  privilege.

 4          Thank you.

 5          MR. LURIE:  If I may, if I may just briefly?

 6          THE COURT:  Go ahead.

 7          MR. LURIE:  If it is the case that a particular

 8  communication had the following purpose, right, that Citi said,

 9  they each involved instruction to PR people not to disclose

10  information, right?  To the extent that these communications

11  are instructions to the PR people not to disclose information

12  to the press, we are not seeking that material.  I understand

13  that that would be potentially privileged, and it is certainly

14  not something that I am particularly interested in for -- from

15  a -- as a party to this case, getting an instruction from an

16  e-mail instructing PR people not to communicate to the press.

17  But simply asserting that that was -- that that was going on,

18  right, doesn't transform all of these communications into

19  privilege and it is -- this is where we have a problem that's

20  very similar to that with the employment materials.  Citi's

21  articulated a potentially valid basis to withhold the

22  communications, but it's described that basis to numerous

23  communications that, even based on the limited information that

24  we have seen in the privilege log, just doesn't square with

25  their account, and it doesn't square with the activity of the

M6d2RamC

```
1    PR people who were actively involved over a period of years in
2    disseminating Citi's account of facts that were under
3    investigation by the government and specifically not just
4    burnishing Citi's reputation, but tarnishing Mr. Ramchandani's
5    reputation and suggesting in no uncertain terms that he was a
6    wrongdoer to the press.  To the extent the representations fit
7    into the category I just described and don't fit into the
8    narrow category that Mr. Fishman has described, then I submit
9    they should be produced.
10            THE COURT:  All right.  So I think that was all of the
11   buckets that were addressed in plaintiff's motion, am I right?
12            MR. LURIE:  Yes, your Honor.
13            THE COURT:  All right.  So I am going to be putting up
14   a text-only order shortly that says the plaintiff is to send a
15   draft stipulation to the defendants by 9 a.m. tomorrow with
16   respect to the Cleary memoranda about meetings with the
17   Department of Justice and the Cleary annotated chats and by 5
18   p.m. tomorrow the parties are to file a letter to the ECF
19   docket indicating whether or not agreement has been reached.
20   Only if agreement has been reached with respect to those
21   memoranda and the annotated chats will I refrain from
22   publishing my opinion and order.  Otherwise, I will publish my
23   opinion and order dealing with all of the issues.
24            If agreement has been reached with respect to the
25   Cleary memoranda -- there are also a couple of e-mails in
```

M6d2RamC

1   there.  When I refer to "memoranda," I am also referring to the

2   e-mails that were done in lieu of a formal memorandum.

3   Otherwise, my ruling will merely be confined to the last two

4   topics we have discussed, which are the communications

5   involving Mr. Ramchandani's termination and the communications

6   with the press department, for lack of a better term.

7           With that, I believe the parties are aware of how to

8   order a transcript using the Southern District Reporters

9   website, am I right?

10          MR. FISHMAN:  Yes, your Honor.

11          THE COURT:  All right.  So I will leave the parties to

12  do that.

13          Do you need to stay on the line for that purpose or

14  you will just -- you will get that in by e-mail somehow?

15          MR. FISHMAN:  We can do it by e-mail, your Honor.

16  This is Marshall Fishman.

17          THE COURT:  Very well.  This matter is adjourned.

18  Thank you.

19          COUNSEL:  Thank you, your Honor.

20          THE COURT:  All right.  So long.

21                              oOo

22

23

24

25