**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ROHAN RAMCHANDANI,<br><br>               Plaintiff,<br><br>       v.<br><br>CITIGROUP, INC., CITICORP, and CITIBANK,<br>N.A.,<br><br>               Defendants. | No. 1:19-cv-9124 (VM) (SDA) |

**MEMORANDUM OF LAW IN SUPPORT**
**OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**GOODWIN PROCTER LLP**

Marshall H. Fishman
Samuel J. Rubin
Elizabeth M. Zito
Lindsay E. Hoyle
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Tel. (212) 813-8800
Fax (212) 355-3333
mfishman@goodwinlaw.com

*Attorneys for Defendants Citigroup Inc.,*
*Citicorp, and Citibank, N.A.*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................ 1

FACTUAL BACKGROUND ........................................................................................... 3

    Ramchandani's Employment with Citi ..................................................................... 3

    The DOJ's Initiation of the FX Investigation ........................................................... 3

    Ramchandani's Termination ..................................................................................... 4

    Citi's Cooperation and Exculpatory Explanations of Ramchandani's Chats to DOJ ........ 5

    The Banks' Guilty Pleas Regarding the EUR/USD Chatroom ........................................ 6

    The Grand Jury's Indictment of Ramchandani and the Other EUR/USD Chatroom
        Members ............................................................................................................. 7

    The DOJ's Prosecution of Ramchandani and the Other EUR/USD Chatroom
        Members ............................................................................................................. 9

    The UK Employment Tribunal Judgment ................................................................ 10

ARGUMENT ............................................................................................................... 11

THE MALICIOUS PROSECUTION CLAIM FAILS  AS A MATTER OF LAW AND
    UNDISPUTED FACT ............................................................................................ 11

    A.    The Unrebutted Presumption of Probable Cause Established by the Grand
            Jury's Indictment is a Complete Defense to Plaintiff's Malicious
            Prosecution Claim. ..................................................................................... 12

    B.    The Indisputable Record Demonstrates that Citi Did Not Initiate The
            Prosecution. ............................................................................................... 16

    C.    The Indisputable Record Demonstrates that Citi Did Not Act with Malice. ....... 20

CONCLUSION ............................................................................................................ 22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ackridge v. New Rochelle City Police Dep't*,
   No. 09 CIV 10396 CS LMS, 2011 WL 5082421 (S.D.N.Y. Sept. 26, 2011)........................21

*Alvarado v. City of New York*,
   482 F. Supp. 2d 332 (S.D.N.Y. 2007)......................................................................................12

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986).................................................................................................................11

*Bermudez v. City of New York*,
   No. 11 CIV. 750 (LAP), 2014 WL 11274759 (S.D.N.Y. Mar. 25, 2014) ...............................18

*Bernstein v. City of New York*,
   No. 06 Civ. 895(RMB), 2007 WL 1573910 (S.D.N.Y. May 24, 2007) ..................................18

*Bertuglia v. City of New York*,
   133 F. Supp. 3d 608 (S.D.N.Y. 2015), *aff'd sub nom. Bertuglia v. Schaffer*,
   672 F. App'x 96 (2d Cir. 2016) ...............................................................................................18

*Bertuglia v. Schaffler*,
   672 F. App'x 96 (2d Cir. 2016) ...............................................................................................15

*Blanton v. Educ. Affiliates, Inc.*,
   No. 21-1221-CV, 2022 WL 1505124 (2d Cir. May 12, 2022) .................................................11

*Dantas v. Citigroup*,
   779 F. App'x 16 (2d Cir. 2019) ...............................................................................................16

*Frederick v. New York City*,
   No. 11 CIV. 469 (JPO), 2012 WL 4947806 (S.D.N.Y. Oct. 11, 2012)...................................15

*Fuchsberg & Fuchsberg v. Galizia*,
   300 F.3d 105 (2d Cir. 2002).....................................................................................................21

*Gilman v. Marsh & McLennan Cos.*,
   868 F. Supp. 2d 118 (S.D.N.Y. 2012)......................................................................................17

*Harrison v. Cnty. of Nassau*,
   804 F. App'x 24 (2d Cir. 2020) ...............................................................................................21

*Hill v. Melvin*,
   No. 05 CIV. 6645 (AJP), 2006 WL 1749520 (S.D.N.Y. June 27, 2006), *aff'd*,
   323 F. App'x 61 (2d Cir. 2009) ...............................................................................................15

*Jessamy v. Jakasal*,
  No. 21-214, 2022 WL 1669512 (2d Cir. May 26, 2022) ........................................16

*Kanciper v. Lato*,
  718 F. App'x 24 (2d Cir. 2017) ..........................................................................15

*Kavitz v. Int'l Bus. Mach. Corp.*,
  09 Civ. 5710 (CM), 2010 WL 11507447 (S.D.N.Y. Aug. 27, 2010) .....................11

*McGrier v. City of New York*,
  849 F. App'x 268 (2d Cir. 2021) .........................................................................15

*Nunez v. Diedrick*,
  No. 14-CV-4182 (RJS), 2017 WL 2257350 (S.D.N.Y. May 19, 2017), *aff'd*
  *sub nom. Nunez v. City of New York*, 735 F. App'x 756 (2d Cir. 2018)...........11, 15

*Rothstein v. Carriere*,
  373 F.3d 275 (2d Cir. 2004)...............................................................12, 13, 15, 16

**Other Authorities**

Federal Rule of Civil Procedure 56 ..........................................................................1, 22

Federal Rule of Criminal Procedure 6(e)....................................................................2

Defendants Citigroup Inc., Citicorp, and Citibank, N.A. (collectively, "Citi") respectfully submit this memorandum of law, together with Defendants' Local Rule 56.1 Statement of Undisputed Material Facts ("SOF") and the December 9, 2022 Declaration of Marshall H. Fishman, in support of their motion for summary judgment dismissing the Complaint of Plaintiff Rohan Ramchandani ("Ramchandani") in its entirety pursuant to Federal Rule of Civil Procedure 56.

## PRELIMINARY STATEMENT

Plaintiff's malicious prosecution claim is based on misstatements of fact and omissions, and it ignores the well-established Second Circuit requirement that a plaintiff prove fraud, perjury, or other misconduct in the grand jury in order to overcome the presumption of probable cause established by an indictment.  This Court's decision denying dismissal at the pleading stage (ECF No. 24 (the "Dismissal Decision")) was based on the Complaint's false allegations (accepted as true) that have now been rebutted by the incontrovertible grand jury record, testimony by the United States Department of Justice ("DOJ"), and by Ramchandani's own admissions that ██ ████████████████████████████████████████.  The Complaint is a house of cards brought down by the irrefutable facts developed in discovery.

*First*, Plaintiff has entirely failed to rebut the presumption of probable cause established by the grand jury indictment.  In January 2017, the DOJ obtained an indictment from a Southern District of New York grand jury (the "Grand Jury") against Plaintiff, a former Citi trader, and two other traders at competing banks, for an alleged conspiracy in the Euro/U.S. Dollar currency market in violation of the Sherman Act (the "Indictment").  The Indictment was based on the traders' "chats" in a chatroom they referred to as the "Cartel," the "Mafia," and the "Bandit's Club" (the "Chatroom" or "EUR/USD Chatroom").

Plaintiff notably admitted at his deposition that ███████████████████████

████████████████████████████████████████████████████████

█████████████████   As demonstrated herein, the Court need go no further:  Dismissal is

required given Plaintiff's ██████████ failure to prove Grand Jury irregularity.  Moreover, the

Grand Jury record Citi developed demonstrates that ███████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████.[1]

*Second*, there is no factual basis for the outrageous allegation that Citi "initiated"

Ramchandani's prosecution by the DOJ.  For a civilian defendant (*i.e.* a non-law enforcement

defendant like Citi) to initiate a criminal prosecution, it must affirmatively induce the prosecution

to the point where the prosecution is no longer acting of its own volition.  That showing is

foreclosed by the unrebutted DOJ testimony that ████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████.[2]

*Third*, the indisputable facts are that Citi did not act with malice towards Ramchandani and

did not "scapegoat" him to reduce its own liability.  To the contrary, Ramchandani conceded at his

deposition  that, ████████████████████████████████████████████████

---

[1]  Citi obtained from the Court a Federal Rule of Criminal Procedure 6(e) Order for Gardiner's Grand Jury testimony and the DOJ's testimony about the Grand Jury proceedings.  *See* Oct. 8, 2021 Order, ECF No. 44.

[2]   The Indictment was signed by ten prosecutors, subject to applicable internal DOJ approvals, and, as the DOJ testified, ████████████████████████████████████████.

██████████████████████████████████████████. Further negating malice, the record demonstrates that ████████████████████████████████ ████████████████████████████. As further discussed herein, in a United Kingdom employment proceeding that Ramchandani commenced against Citi, the UK Tribunal specifically found that Ramchandani had breached his obligations to Citi by engaging in his Chatroom conduct, that Citi had a valid basis for dismissing him based on his conduct, and that Citi did not make him a scapegoat in ongoing regulatory investigations.

The record conclusively establishes Plaintiff's failure to rebut the presumption of probable cause established by the Grand Jury Indictment, which alone compels dismissal. The record also confirms that there are no material facts in dispute by which Plaintiff could prove that Citi initiated the DOJ's prosecution of him or that Citi acted with malice. Summary judgment dismissing the Complaint should be granted.

## FACTUAL BACKGROUND

### Ramchandani's Employment with Citi

From 2004 to 2014, Ramchandani was employed by Citi as a London-based foreign exchange ("FX") trader. SOF ¶ 1. Ramchandani's FX trading focused on the Euro/U.S. dollar ("EUR/USD") currency pair. *Id.* In 2010, Ramchandani was promoted to Managing Director and became the Head of Citi's G10 Spot FX Trading Desk in London. *Id.* ¶¶ 2-3.[3]

### The DOJ's Initiation of the FX Investigation

In September 2013, the DOJ commenced an investigation into potential antitrust violations by FX traders at banking institutions, ████████ (the "FX Investigation"). SOF ¶¶ 7-9. The

---

[3] In 2011, Ramchandani was also designated as a "Code Staff" employee at Citi. SOF ¶ 4. Under the United Kingdom Financial Conduct Authority's ("FCA") and Prudential Regulation Authority's ("PRA") regulations, Code Staff designations apply to certain employees who have a significant impact on the bank's risk profile. *Id.* ¶ 5.

DOJ's FX Investigation began after another bank (UBS) self-reported potential evidence of collusion it had identified involving its own FX traders through the use of online chatrooms. *Id.* The DOJ's FX Investigation ███████████████████████████████████████████████ ████████████████████████████████████████████████. *Id.* ¶ 21.

As the DOJ testified at its deposition, ██████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████████████████. *Id.* ¶ 9. The DOJ testified that ███████████████████████████████████████ ███████████████████████████████████. *Id.* ¶¶ 9-10. Ramchandani similarly admitted that ████████████████████████████████████████████████ ████████████. *Id.* ¶ 12.[4]



████████████ *Id.* ¶ 10. ████████████████████████████████ ████████████████████████████████████████████████████████████ ███████████████████████. *Id.*

### Ramchandani's Termination

On October 30, 2013, after the commencement of the DOJ's FX Investigation, Citi placed Ramchandani on paid leave after conducting a preliminary review of his Chatroom communications. *Id.* ¶ 16. On January 10, 2014, Citi terminated Ramchandani based on his

---

[4] As set forth in public filings submitted in connection with the DOJ's criminal proceedings against UBS, UBS self-disclosed "evidence of potential collusion" involving numerous other banks. SOF ¶ 8. The DOJ and UBS stated, in a joint court submission in those proceedings, that UBS conducted "scores of significant in-person or telephonic meetings[], [and] synthesized factual information" for the DOJ. *Id.* As the DOJ and UBS submitted, the information provided by UBS "led to prosecutions of several other financial institutions" with respect to the FX Investigation. *Id.* ¶ 9.

violations of Citi's Code of Conduct. *Id.* ¶ 17.[5]

**Citi's Cooperation and Exculpatory**
**Explanations of Ramchandani's Chats to DOJ**

After UBS reported on the Chatroom to DOJ, the DOJ launched a ███████ investigation of the FX market and allegations of collusion in that market.  SOF ¶¶ 9, 21.  Citi cooperated in the DOJ's FX Investigation by producing approximately one hundred thousand documents related to its FX trading business, including multiple FX traders (other than Ramchandani), currency pairs (other than EUR/USD), chatrooms (other than the EUR/USD Chatroom) and its FX sales and trading practices generally.  *See id.* ¶ 20.  ████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████.  *Id.* ¶ 22.

Based on both the DOJ's and Ramchandani's testimony, it is undisputed that, ██████████

████████████████████████████████████████████████

████████████████████████████████████████.  *Id.* ¶¶

23-24.  It is undisputed that ███████████████████████

████████████████████████████████████████████████

███████.  *Id.* ¶¶ 23-27.[6]  It is undisputed that ██████████████

---

[5] As discussed further herein, following his termination, Ramchandani commenced a separate unfair dismissal action against Citi in London before a United Kingdom Employment Tribunal (the "UK Tribunal").  SOF ¶ 96.  On July 14, 2020, the UK Tribunal issued a 42-page judgment (the "UK Judgment") analyzing Ramchandani's Chatroom communications and finding, among other things, that Ramchandani had committed multiple acts of misconduct in those communications in violation of Citi's Code of Conduct and Ramchandani's employment agreement.  *See infra* at 11 (citing SOF ¶ 99).  The UK Judgment further states that Citi terminated Ramchandani due to his chatroom conduct and not as a scapegoat due to press coverage and regulators' FX investigations.  SOF ¶¶ 99, 102.

[6] ████████████████████████████████████████████████

███████.  SOF ¶ 25.

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████.

*Id.* ¶ 26.

      As conceded by Ramchandani during his deposition in this action (and also set forth in a separate stipulation he entered into with the Office of the Comptroller of Currency ("OCC")), ███

████████████████████████████████     SOF ¶ 27 (emphasis added).   At his deposition, Ramchandani ████████████████████████████████

████████████████████████████████     *Id.* ¶¶ 33-35.  The DOJ testified that, ███

███████████████████████████████████████████████████████████

██████████.  *Id.* ¶¶ 36, 78.

**The Banks' Guilty Pleas Regarding the EUR/USD Chatroom**

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

█████████████████████████████.  *Id.* ¶ 28.  ████████████████████

███████████████████████████████████████████████████████████

████████.  *Id.* ¶¶ 29-31.  ████████████████████████

███████████████████████████████████████████████████████████

████████████████████   *Id.*

      On May 20, 2015, ██████████████████████████████████████████

████████, Citi pled guilty to one count of violating the Sherman Antitrust Act based on charged conduct concerning the EUR/USD Chatroom in which Ramchandani was the sole Citi participant.

*Id.* ¶ 27.[7]   In connection with Citi's plea agreement (the "Citi Plea Agreement"), the DOJ represented, and Citi agreed that, "[h]ad this case gone to trial, the United States would have presented evidence sufficient to prove" the charged antitrust conspiracy concerning the conduct in the EUR/USD Chatroom. *Id.* ¶¶ 40-41.   And at the guilty plea hearing for Citi (as well as Barclays, JPMorgan and RBS), the DOJ represented to the court that, were the case to proceed to trial, "[t]he government would prove, between both witnesses and documentary evidence," that "the Banks and their corporate coconspirators entered into and engaged in [an antitrust conspiracy] for the Euro/Dollar currency pair . . ." and that "[t]he Banks did this through one of its Euro/Dollar traders." *Id.* ¶ 41.   The Citi Plea Agreement further states that, separate and apart from the crime charged against Citi, the DOJ also investigated Citi regarding "other relevant conduct," including but not limited to, other currencies, sales practices and traders unrelated to Ramchandani, but the DOJ did not charge Citi in connection with the other relevant conduct. *Id.* ¶¶ 13-14.[8]

### The Grand Jury's Indictment of Ramchandani and the Other EUR/USD Chatroom Members

Approximately two years after Citi and the other banks entered into guilty pleas, on January 10, 2017, the Grand Jury determined that there was probable cause for the charged offense and issued the Indictment of Ramchandani and the other members of the EUR/USD Chatroom.  SOF ¶¶ 37, 46. ███████████████████████████████. *Id.* ¶ 72.   The DOJ's Grand Jury presentation ███████████████████████████████████████████████████ ███████████████████████████████. *Id.* ¶¶ 73-75. ███████████████████

---

[7]  At the same time, JPMorgan, Barclays, and RBS also pled guilty to the conduct in the same EUR/USD Chatroom based on the participation of their employees, Ashton and Usher, in the Chatroom with Ramchandani.  SOF ¶ 38. UBS pled guilty to a breach of its December 18, 2012 non-prosecution agreement with the DOJ (related to benchmark interest rates) based on the same conduct by its FX trader (Gardiner) with respect to the EUR/USD currency pair.  *Id.* ¶ 39.

[8]  In connection with its FX investigation, the DOJ charged another Citi trader, Christopher Cummins, with violating the Sherman Antitrust Act based on his communications regarding other currency pairs.  SOF ¶ 43.



*Id.* ¶ 73.

*Id.* ¶¶ 53-54, 58-63.

*Id.* ¶¶ 56, 71, 72.

*Id.* ¶¶ 58-63, 72.[9]

- SOF ¶¶ 56, 71.

- *Id.* ¶¶ 64-65.

- *Id.* ¶¶ 63, 66.

- *Id.* ¶¶ 67-68.

-

---

[9] Ramchandani's trial counsel (who had received the Grand Jury record as part of criminal discovery) represented to the Court at Ramchandani's criminal trial that it was Gardiner, not Citi, "who the government [] truly relied on in terms of bringing [its] case." *Id.* ¶ 76. ███████████████████████████████ (SOF ¶¶ 71, 90-91, 93), Plaintiff failed to disclose those facts in the Complaint and misled the Court to believe that Citi caused the DOJ's prosecution and the Indictment (*see, e.g.*, Compl. ¶¶ 1, 179, 186, 187, ECF No. 17).



SOF ¶ 60.

*Id.* ¶ 61.

*Id.* ¶ 62.[10]

The DOJ testified at its deposition that ███████████████████████

████████████████████████████.  SOF ¶¶ 48-51.  ███

█████████████████████████████████████████████

█████████████████████████████████████████████

███.  *Id.*  ████████████████████████████████.  *Id.*

¶ 50.  The Indictment was signed by ten prosecutors, including the heads of the Antitrust Division

and Preet Bharara, then the United States Attorney for the Southern District of New York.  *See id.*

¶ 47.[11]

### The DOJ's Prosecution of Ramchandani and the Other EUR/USD Chatroom Members

Following the Indictment, Ramchandani and the other EUR/USD Chatroom members were

---

[10]  ████████████████████████████████████████████
██████████████.  *See* SOF ¶¶ 58-63.  As set forth therein, ██████████
█████████████████████████████████████████████
███████████████████  *See id.*

[11]  Among those prosecutors was Carrie Syme (the lead DOJ Antitrust Division trial attorney ██████
██████████████████ prosecuted that case at trial).  SOF ¶¶ 47, 53, 81.  Ms. Syme served
as the DOJ's representative for its deposition in this action.  *Id.* ¶ 7, n.1.  ████████████████
███████████████████.  *Id.*

tried for criminal violation of the Sherman Act in the Southern District of New York before Judge Berman (the "Criminal Trial"). *Id.* ¶ 79. The Criminal Trial commenced on or about October 10, 2018 and concluded, with an acquittal of the defendants, on October 26, 2018. *Id.* ¶¶ 79, 95.

███████████████████████████, the DOJ principally relied upon Gardiner to support its case during the Criminal Trial. *Id.* ¶¶ 81-91. Gardiner testified for six trial days. *Id.* ¶ 81. Gardiner testified that he and the other Chatroom members had "an agreement not to deliberately trade to each other's disadvantage, to share information open and honestly, and, where possible help each other to avoid losses and make profits." *Id.* ¶ 82. Gardiner decoded the Chatroom communications at the Criminal Trial. *Id.* ¶ 86.

Ramchandani's Criminal Trial counsel argued that the DOJ had predicated its "entire case" on its "star witness" (Gardiner) who Ramchandani's counsel argued was a "deeply flawed witness." *Id.* ¶¶ 88-90. Contrary to the Complaint's allegations that the DOJ attempted to prove its case before the jury relying upon Citi's decoding of the chats (*see* Compl. ¶¶ 186-187, ECF No. 17), Ramchandani admitted at his deposition in this action that ██████████████████████████ ██████████████████████████████████. *Id.* ¶¶ 91, 93. The DOJ testified that ██████████████████████████████████. *Id.* ¶ 92.

### The UK Employment Tribunal Judgment

In March 2014, Ramchandani commenced an unfair dismissal action against Citi in the United Kingdom before the UK Tribunal. *See* SOF ¶ 96. After a nine-day evidentiary hearing, including cross examinations and a 3,500 page documentary record, the UK Tribunal issued the UK Judgment on July 14, 2020. *Id.* ¶¶ 98-99.

The UK Judgment concluded that Ramchandani had committed multiple culpable acts of misconduct in breach of his contract of employment and Citi's Code of Conduct through his Chatroom communications. *Id.* ¶ 99. The UK Judgment stated that there was "clear and objective

evidence of [Ramchandani's] culpable conduct" and that Ramchandani had engaged in "foolish, blameworthy behaviour which caused his dismissal." *Id.*  The UK Judgment further stated that Ramchandani "was not dismissed as a scapegoat because of the unwelcome press coverage" and that "the principal reason for dismissal was the conduct in the chats." *Id.* ¶ 102.

## ARGUMENT

### THE MALICIOUS PROSECUTION CLAIM FAILS AS A MATTER OF LAW AND UNDISPUTED FACT

"A party is entitled to summary judgment where the record reveals no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Blanton v. Educ. Affiliates, Inc.*, No. 21-1221-CV, 2022 WL 1505124, at *2 (2d Cir. May 12, 2022) (quotation omitted).  The relevant substantive law determines "which facts are critical and which facts are irrelevant." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  It is only those "disputes over facts that might affect the outcome of the suit under the governing law [that] will properly preclude the entry of summary judgment." *Id.*

At summary judgment, the movant "has the initial burden of demonstrating the absence of a disputed issue of material fact," at which point the non-movant "must present specific facts showing a genuine issue for trial." *Kavitz v. Int'l Bus. Mach. Corp.*, 09 Civ. 5710 (CM) (RLE), 2010 WL 11507447, at *5 (S.D.N.Y. Aug. 27, 2010) (quotation omitted).  The non-movant must show "hard evidence" demonstrating the existence of a material fact in dispute and "may not rely on conclusory allegations or unsubstantiated speculation." *Id.*; *see Nunez v. Diedrick*, No. 14-CV-4182 (RJS), 2017 WL 2257350, at *2 (S.D.N.Y. May 19, 2017), *aff'd sub nom. Nunez v. City of New York*, 735 F. App'x 756 (2d Cir. 2018) ("to show a genuine dispute, the nonmoving party must provide hard evidence from which a reasonable inference in its favor may be drawn").

Germane here, "the law places a heavy burden on malicious prosecution plaintiffs."

*Rothstein v. Carriere*, 373 F.3d 275, 282 (2d Cir. 2004) (quoting *Smith-Hunter v. Harvey*, 95 N.Y.2d 191, 195 (2000)).  It imposes "important limits" on "such claims by requiring a malicious prosecution plaintiff to do more than simply prevail in a credibility contest with his accuser." *Id.* at 295.

To prevail on a malicious prosecution claim, the plaintiff <u>must</u> establish each of four independently dispositive elements: "First, the plaintiff must prove that the defendant initiated a criminal proceeding.  Second, the proceeding must have been terminated favorably to the plaintiff.  Third, the plaintiff must prove that there was no probable cause for the criminal charge.  Finally, the defendant must have acted maliciously." *Rothstein*, 373 F. 3d at 282 (citations omitted).

### A.   The Unrebutted Presumption of Probable Cause Established by the Grand Jury's Indictment is a Complete Defense to Plaintiff's Malicious Prosecution Claim.

As this Court held in the Dismissal Decision, an "indictment by a Grand Jury creates a presumption of probable cause" that can "be rebutted <u>only by evidence</u> that the indictment was procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *See* Dismissal Decision at *8 (emphasis added; citations omitted).[12]

The "burden of rebutting the presumption of probable cause requires the plaintiff to establish what occurred in the grand jury, and to further establish that those circumstances warrant a finding of misconduct sufficient to erode the premise that the Grand Jury acts judicially." *Rothstein*, 373 F.3d at 284 (internal quotation omitted).  As the Second Circuit held in *Rothstein*:

> A central issue in this case was whether the prosecution in question was initiated in the absence of probable cause to believe the crimes charged were committed by Rothstein.  The grand jury's . . . indictment presumptively established that probable cause.  Rothstein [the plaintiff] was required to rebut that presumption by proving

---

[12]   *See also Alvarado v. City of New York*, 482 F. Supp. 2d 332, 338 (S.D.N.Y. 2007) (Marrero, J.) (granting summary judgment dismissing malicious prosecution claim holding that, "[u]nder New York Law, 'the existence of probable cause is a complete defense to a claim of malicious prosecution'" and that a "grand jury indictment creates 'a presumption of probable cause' on a malicious prosecution claim that 'may only be rebutted by evidence of fraud, perjury, suppression of evidence or other police conduct undertaken in bad faith.'" (citation omitted).

fraud, perjury, suppression of evidence or other misconduct <u>in the grand jury</u>. His failure even to attempt to make that showing requires the dismissal of his claim.

*Id.* 283-84 (emphasis added). Under *Rothstein* and other Second Circuit precedent, "unless the plaintiff can demonstrate that the proceedings before the grand jury were tainted, an indictment <u>extinguishes</u>" the malicious prosecution claim. *Id.* at 290 (emphasis added).

Ramchandani <u>admitted</u> at his deposition ███████████████

███████████████████ *Id.* ¶ 77 (citing Ramchandani Dep. Tr. at 102:8-13 █

███████████████████████████████

███████████████████████████████

███████████



In addition to Plaintiff's ███████ failure to prove grand jury irregularity, it is undisputed that ██████████████████. As the DOJ testified:

*See* SOF ¶ 72 (emphasis added).[13]

The record evidence developed by Citi shows that ████████████████████

---

[13] ███████████████████████████████
████████████████████████████ SOF ¶¶ 73-75), which contained the various alleged false statements Plaintiff claimed were used to single him out for prosecution as set forth in the Complaint (*see* Compl. ¶¶ 12, 14-16, 156-159, 161-176) and discussed in the Dismissal Decision (Dismissal Decision at *5-8).



██████████████████████. *Id.* ¶¶ 53-72. ████████████████████████████

████████████████████████. *Id.* ¶¶ 58-63. ████████████████████████

██████████████████████████████████████████████. *Id.* ¶¶ 56-57,
67-70.[14]

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████. *Id.* ¶ 54. ████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████ *Id.* ¶ 56. █████████████████████████████████

███████████████████████████████████████████████. *See id.* ¶¶ 59-63.

Against this unrebutted factual record, Plaintiff has pivoted to advance a new (albeit
unsupportable) legal argument that he need not make any such showing of fraud, perjury, or bad
faith <u>in the grand jury</u>, based on his misguided conclusion that this Court "expressly rejected" that
requirement in its Dismissal Decision.  *See* ECF No. 74 at 6 ("Citi relies on a legal argument *i.e.*,
that Ramchandani must prove that Citi defrauded the grand jury to win this case, that the District
Court expressly rejected when it ruled against Citi's motion to dismiss.").

But that argument cannot be reconciled with the Dismissal Decision, which acknowledged
the presumption of probable cause afforded by the Grand Jury's Indictment and held that the
"presumption may be rebutted only by evidence that <u>the indictment was procured by</u> fraud, perjury,
the suppression of evidence or other police conduct undertaken in bad faith."  Dismissal Decision
at *8 (emphasis added).  Plaintiff's argument also is irreconcilable with Second Circuit law which

---

[14]  As Ramchandani's Criminal Trial counsel represented during his criminal proceedings, it was Gardiner "who the
government [] <u>truly relied on in terms of bringing [its] case.</u>"  *Id.* ¶ 76 (emphasis added).

requires an evidentiary showing that fraud, perjury, or other misconduct occurred <u>in the grand jury</u> sufficient to erode the presumption of probable cause established by a grand jury's indictment. *See Rothstein*, 373 F.3d at 284 ("The burden of rebutting the presumption of probable cause requires the plaintiff to establish <u>what occurred in the grand jury</u>, and to further establish that those circumstances warrant a finding of misconduct sufficient to erode the 'premise that the Grand Jury acts judicially.'" (emphasis added; citations omitted); *see also McGrier v. City of New York*, 849 F. App'x 268, 271 (2d Cir. 2021) (Summary Order) (to rebut the presumption of probable cause created by a grand jury indictment, "the plaintiff [must] establish <u>what occurred in the grand jury,</u> and . . . further establish that those circumstances warrant a finding of misconduct" (emphasis added; citing *Rothstein*)); *Kanciper v. Lato*, 718 F. App'x 24, 28 (2d Cir. 2017) (Summary Order) (affirming summary judgment dismissal of malicious prosecution claim where plaintiff adduced "no evidence showing that the grand jury that indicted her was presented with, much less relied upon, evidence that was wrongfully obtained, misrepresented or otherwise improper" (citing *Rothstein*)).[15]

    As a matter of law and undisputed fact, Plaintiff has failed to rebut the presumption of probable cause, and summary judgment dismissing the Complaint is therefore warranted.

---

[15] *See also Bertuglia v. Schaffler*, 672 F. App'x 96, 99-100 (2d Cir. 2016) (Summary Order) (affirming summary judgment dismissal of malicious prosecution claim where plaintiffs failed to establish that misleading statements actually "<u>reached the grand jury</u>" and finding that the grand jury indictment created a "presumption of probable cause that is fatal to [plaintiffs'] malicious prosecution claims" (emphasis added)); *Nunez*, 2017 WL 2257350, at *7 (holding that "the existence of probable cause is a complete defense to a claim of malicious prosecution" and granting summary judgment where plaintiff offered no evidence concerning "<u>the content of [defendant's] grand jury testimony</u>" and relied on "rank speculation" regarding the defendant's involvement in grand jury proceedings (emphasis added)); *Frederick v. New York City*, No. 11 CIV. 469 (JPO), 2012 WL 4947806, at *9 (S.D.N.Y. Oct. 11, 2012) ("*Rothstein* sets a high bar for malicious prosecution claims in cases where a grand jury issued an indictment. In effect, it requires plaintiffs to prove <u>what happened before the grand jury</u> to negate probable cause." (emphasis added)); *Hill v. Melvin*, No. 05 CIV. 6645 (AJP), 2006 WL 1749520, at *15 (S.D.N.Y. June 27, 2006) (granting summary judgment where plaintiff "ha[d] not supplied the Court with *any* grand jury testimony" to rebut the presumption of probable cause (emphasis in original)), *aff'd*, 323 F. App'x 61, 62 (2d Cir. 2009).

**B.      The Indisputable Record Demonstrates that Citi Did Not Initiate The Prosecution.**

While Plaintiff's failure to rebut the presumption of probable cause is all that is needed for

dismissal, the record demonstrates that Citi did not initiate the prosecution as alleged.  A plaintiff

advancing a malicious prosecution claim must prove that "the defendant <u>initiated</u> the criminal

proceeding."  *Rothstein*, 373 F.3d at 293 (emphasis added).  The initiation element requires the

plaintiff to establish that the defendant "played an 'active role in the prosecution, such as giving

advice and encouragement or importuning the authorities to act.'"  *Id*. at 294.

Furthermore, in malicious prosecution cases brought against civilian defendants (*i.e.* non-

law enforcement, private party defendants like Citi), "initiation" requires a further showing that

the defendant affirmatively induced law enforcement to act, to the point where law enforcement is

no longer acting of its own volition.  *See, e.g.*, *Dantas v. Citigroup*, 779 F. App'x 16, 23 (2d Cir.

2019) (Summary Order).  As the Second Circuit explained in *Dantas*:

> In order for a civilian defendant to be considered to have initiated the criminal
> proceeding, it must be shown that defendant played an active role in the
> prosecution, such as giving advice and encouragement or importuning the
> authorities to act.  The defendant <u>*must*</u> <u>have affirmatively induced the officer to act,</u>
> <u>such as taking an active part in the arrest and procuring it to be made or showing</u>
> <u>active, officious and undue zeal, to the point where the officer is not acting of his</u>
> <u>own volition.</u>

*Id.* (emphasis added; quoting *Lupski v. County of Nassau*, 32 A.D.3d 997, 998, 822 N.Y.S.2d 112

(2006)); *see also Jessamy v. Jakasal*, No. 21-214, 2022 WL 1669512, at *3 (2d Cir. May 26, 2022)

("To establish a malicious prosecution claim against a private party, . . . <u>the private party</u> must

have 'affirmatively induced the officer to act, such as taking an active part in the arrest . . . <u>to the</u>

<u>point where the officer is not acting of his own volition.</u>'" (emphasis added; quoting *Moorhouse*

*v. Standard, N.Y.*, 997 N.Y.S.2d 127, 132 (1st Dep't 2014)).

The reason for the additional requirement in civilian defendant contexts is that "New York

law imposes a presumption that a prosecutor exercises his own independent judgment in deciding

-16-

to prosecute a criminal defendant." *See, e.g.*, *Gilman v. Marsh & McLennan Cos.,* 868 F. Supp. 2d 118, 128-29 (S.D.N.Y. 2012) (dismissing malicious prosecution claim and holding that to advance a malicious prosecution claim against a civilian defendant, the plaintiff "must allege that Defendants 'affirmatively induced the [Attorney General] to act . . . to the point where the [Attorney General was] not acting of his own volition.'" (emphasis added)).

The record is undisputed that Citi did not initiate the prosecution against Ramchandani (or the other traders who were indicted along with him). The FBI testified at the Criminal Trial that the FX investigation "began in September 2013 when UBS bank contacted the Department of Justice and the FBI to voluntarily report that based on their own internal investigation, that they found evidence of their FX traders talking with other traders at other banks." SOF ¶ 7. The DOJ testified at its deposition in this action that ████████████████████████████████

████████ :



SOF ¶ 10. Ramchandani similarly admitted at his deposition that ████████████████

████████████████████████████████████████████████████████

████ . Ramchandani testified:



*Id.* ¶ 12.

Accordingly, there is no basis to support the assertion that Citi initiated the prosecution of Ramchandani or that Citi "'directly induc[ed]' the DOJ to base its case on [Ramchandani's] purported wrongdoing." Dismissal Decision at *5 (citing ECF No. 21). To the contrary, the DOJ testified that ███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████:



SOF ¶ 50 (objection omitted).[16]

Nor is there any evidence to suggest that Citi made an allegedly false statement to the DOJ that caused the DOJ to seek an indictment of Ramchandani and the other traders. Dismissal Decision at *5-8. At his deposition, Ramchandani ████████████████████████████████

█████████ SOF ¶ 33. To the contrary, Ramchandani admitted that ██████████████████

████████████████████████████████████████████████████████████ *Id.* (emphasis

added). *Id.* ¶ 27. The DOJ also testified that █████████████████████████████████

████████████████████████████████████████████████████████████████████

---

[16] *Cf. Bertuglia v. City of New York*, 133 F. Supp. 3d 608, 630, 653 (S.D.N.Y. 2015) (granting summary judgment dismissing malicious prosecution claim where prosecutor "decided to prosecute the plaintiffs based on her independent examination of witnesses and the evidence"), *aff'd sub nom. Bertuglia v. Schaffer*, 672 F. App'x 96 (2d Cir. 2016); *Bermudez v. City of New York*, No. 11 CIV. 750 (LAP), 2014 WL 11274759, at *8 (S.D.N.Y. Mar. 25, 2014) (granting summary judgment dismissing malicious prosecution claim because prosecutor's independent decision to charge the plaintiff broke the "chain of causation"); *Bernstein v. City of New York*, No. 06 Civ. 895(RMB), 2007 WL 1573910, at *6 (S.D.N.Y. May 24, 2007) (dismissing malicious prosecution claim because the "District Attorney's 'intervening' decision to pursue a criminal charge against Plaintiff broke the chain of causation between the alleged unlawful arrest and Plaintiff's subsequent prosecution" (citations omitted)).

███████████████████████████████████████████████████████████

███████████████████████████████████. *Id.* ¶¶ 25-26.

In the absence of any alleged effort to falsely identify Ramchandani for prosecution, Plaintiff relies on Citi's guilty plea, the Citi Plea Agreement, and Citi's related submissions to argue that Citi made false statements to the DOJ.  *See* Compl. ¶¶ 14, 16, 78, 153, 160, 176, 181, 195; *see also* Dismissal Decision at *3, 5, 8.  But in the Citi Plea Agreement, the DOJ represented, and Citi agreed that, "[h]ad the case gone to trial, the United States would have presented evidence sufficient to prove the following facts" which included that Citi, "through one of its EUR/USD traders, participated in the conspiracy from at least as early as December 2007 and continuing until at least January 2013."  *See* SOF ¶ 40.  It is undisputed that the DOJ represented to the court at Citi's guilty plea hearing that, were the case to proceed to trial, the DOJ would "prove, between both witnesses and documentary evidence," that "the Banks and their corporate coconspirators entered into and engaged in [an antitrust conspiracy] for the Euro/Dollar currency pair . . ." and that "[t]he Banks did this through one of its Euro/Dollar traders."  *Id.* ¶ 41.  It is undisputed that the Citi Plea Agreement further states that, separate and apart from the crime charged against Citi, the DOJ also investigated Citi regarding "other relevant conduct," including but not limited to, other currencies, sales practices and traders unrelated to Ramchandani.  *Id.* ¶¶ 13-14.  It is also undisputed that the conduct charged in the Citi Plea Agreement was limited to the EUR/USD chatroom, of which Plaintiff was the <u>only</u> Citi participant.  *Id.* ¶¶ 40-41.  And it is undisputed that the DOJ had a cooperating witness in the Chatroom (Gardiner) who would testify that the Chatroom members had an agreement to coordinate their trading.  *Id.* ¶¶ 13-14, 29-30, 37, 56-57.

Insofar as Plaintiff argues that Citi's guilty plea was false and caused Plaintiff's prosecution, it is devoid of any legal or factual basis and is contrary to the indisputable evidence

that Gardiner was the DOJ's cooperating witness ███████████ and at trial.  *See id.* ¶¶ 53-73.  The factual record developed in discovery demonstrates beyond peradventure that Citi did not initiate the DOJ's prosecution of Ramchandani.

**C.     The Indisputable Record Demonstrates that Citi Did Not Act with Malice.**

Ramchandani's allegations that Citi had an "'improper motive' in providing information about [him] to the DOJ" and Citi "scapegoated" him (*see* Oct. 5, 2022 Letter Opp. at 3, ECF No. 135; Compl. ¶¶ 3, 85, 105, 119, ECF No. 17) are belied by the record evidence.

First, Ramchandani's "scapegoating" allegations are particularly infirm.  The record establishes that Citi produced approximately one hundred thousand documents to the DOJ relating to multiple FX traders (including traders other than Ramchandani) and several FX chatrooms (including chatrooms other than the EUR/USD Chatroom).  SOF ¶ 20.  Indeed, a complete review of the DOJ's Sentencing Memorandum (selectively quoted by Plaintiff) recounts that Citi brought "conduct in nearly a dozen chat rooms" to the DOJ's attention (other than the EUR/USD Chatroom) and provided "significant and useful assistance by bringing certain evidence to the attention of the United States concerning a potential antitrust conspiracy in the FX Spot Market, separate from the conspiracy charged in the information and involving different currencies."  *Id.* ¶ 44 (emphasis added).

Second, the UK Judgment rejected the identical allegations advanced here that Citi somehow "scapegoated" Ramchandani due to press coverage and regulators' FX investigations. SOF ¶ 102.  The UK Tribunal found that Ramchandani "committed culpable acts of misconduct in breach of his contract of employment in his chats," that he engaged in "foolish, blameworthy behavior which caused his dismissal," and that he "was not dismissed as a scapegoat because of unwelcome press coverage, rather the principal reason for dismissal was the conduct in the chats which then gave rise to regulatory scrutiny and adverse press coverage."  *Id.* ¶¶ 99, 102 (emphasis

added).  Under principles of collateral estoppel, the findings of the UK Tribunal are determinative

on the impropriety of Plaintiff's Chatroom conduct, Citi's decision to terminate him, and Plaintiff's

scapegoating claim.[17]

Finally, contrary to Plaintiff's malice allegations, the record evidence is that ███████

████████████████████████████████████████████████████████

████████████████████████████████████  SOF ¶ 94.

There are no material facts in dispute by which Plaintiff can establish that Citi acted with

malice towards Ramchandani.  *See Harrison v. Cnty. of Nassau*, 804 F. App'x 24, 28 (2d Cir.

2020) (granting summary judgment dismissing malicious prosecution claim where the plaintiff's

assertions that defendants "fabricated evidence [were] unsupported by any evidence and [were]

insufficient to create a question of material fact to overcome summary judgment"); *Ackridge v.

New Rochelle City Police Dep't*, No. 09 CIV 10396 CS LMS, 2011 WL 5082421, at *8 (S.D.N.Y.

Sept. 26, 2011), *report and recommendation adopted*, 2011 WL 5101570 (S.D.N.Y. Oct. 25, 2011)

(granting summary judgment dismissing malicious prosecution claim where there was "no

evidentiary support in the record" for plaintiff's allegations of malice).

---

[17] Under governing New York law, collateral estoppel "may be invoked to preclude a party from raising an issue (1) identical to an issue already decided (2) in a previous proceeding in which that party had a full and fair opportunity to litigate." *Fuchsberg & Fuchsberg v. Galizia*, 300 F.3d 105, 109 (2d Cir. 2002) (quotation omitted).  The factual bases for Ramchandani's termination, including the meaning and import of Ramchandani's chats and whether he was dismissed as a scapegoat, were the centerpiece of the UK proceedings, and the UK Tribunal necessarily decided those issues.  SOF ¶¶ 96-97.  The UK Judgment states that it was "necessary for the Tribunal to form its own view of the content of the chats" that led to Ramchandani's dismissal and "to consider . . . evidence about [the] reasons for dismissal at the time."  SOF ¶ 97.  These facts and issues, and the UK Tribunal's determination that Ramchandani was not dismissed as a scapegoat (SOF ¶¶ 96-97, 102), foreclose Ramchandani's scapegoating allegations in this action, including that he was fired "without cause," that Citi had a "campaign to identify Ramchandani to both government investigators and the press as a uniquely culpable wrongdoer," that Citi "implemented a calculated scheme to dirty up Ramchandani by contacting regulators and the press to suggest that Ramchandani had engaged in serious, and potentially criminal, misconduct," and that "Citi took steps transparently calculated to encourage negative 'leaks' about Ramchandani to the press."  *See* Compl. ¶¶ 3, 85, 105, 119; *see also* Answer and Affirmative Defenses at 3, 26, Sixth Affirmative Defense, ECF No. 28.

## CONCLUSION

For the foregoing reasons, Citi respectfully requests that the Court grant Citi's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 and dismiss Ramchandani's Complaint in its entirety.

Dated:  New York, New York
       December 9, 2022

Respectfully submitted,

**GOODWIN PROCTER LLP**

By:  /s/ Marshall H. Fishman
     Marshall H. Fishman
     Samuel J. Rubin
     Elizabeth M. Zito
     Lindsay E. Hoyle
     The New York Times Building
     620 Eighth Avenue
     New York, New York 10018
     Tel. (212) 813-8800
     Fax (212) 355-3333
     mfishman@goodwinlaw.com

*Attorneys for Defendants Citigroup Inc.,*
*Citicorp, and Citibank, N.A.*